

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 18, 2026

**BY ECF**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

     **Re:**    ***United States v. Daniel Chu & David Goodgame*, 25 Cr. 579 (PKC)**

Dear Judge Castel:

Evidence from Tricolor email accounts and devices is being withheld from the Government's case team due to defendant Daniel Chu's aggressive assertions of personal privilege. The Government seeks an order from the Court authorizing its release.

No one who worked at Tricolor—the company at the center of this massive fraud case—had any reasonable expectation of privacy when using their work emails and computers. The policy in the Tricolor Employee Handbook made that crystal clear. It stated that "users have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems," that is, Tricolor's "communication and computer systems" including its "email and Internet systems." *See* Ex. 1 (Tricolor Employee Handbook at § 5-4). Furthermore, the Policy stated that Tricolor could access communications over company email systems "without notice" when, among other things, "complying with legal and regulatory requests for information." *Id.*

Notwithstanding these clear warnings, Chu—the former Chief Executive Officer of Tricolor—asserts that communications and documents on Tricolor email accounts and devices involving his personal lawyers (not Tricolor's lawyers) were subject to a reasonable expectation of privacy and, therefore, may be protected by the attorney-client privilege. Chu's position flatly contradicts Tricolor policy and has hindered the Government's review of Tricolor evidence, including Chu's Tricolor laptop which Chu willingly handed over to a Tricolor consulting firm.

To facilitate its review of relevant evidence, the Government respectfully requests that the Court issue an order (1) finding that (a) Chu had no reasonable expectation of privacy in his use of Tricolor email accounts and electronic devices, and, therefore, (b) any personal communications and materials on those accounts or devices are not and have never been protected by the attorney-client privilege or work product doctrine, and (2) authorizing the release of such personal communications and materials to the Government's case team. Alternatively, the Government requests that the Court issue an order (1) finding that Chu waived any existing personal privilege he held with respect to any communications or materials on his Tricolor laptop when Chu

Hon. P. Kevin Castel
May 18, 2026
Page 2

voluntarily submitted that laptop to a company consulting firm on September 4, 2025, and (2) authorizing the release of such communications and materials to the Government's case team.[1]

## I.    Background

### A.  The Indictment

On December 15, 2025, a grand jury indicted defendants Daniel Chu and David Goodgame for orchestrating a massive fraud at Tricolor, a subprime auto lender and used car retailer. The Indictment charges Chu, the founder and former CEO of Tricolor, with organizing a continuing financial crimes enterprise, in violation of 18 U.S.C. § 225, and charges both defendants with conspiracy to commit bank fraud and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1349, bank fraud, in violation of 18 U.S.C. § 1344, and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343.

As alleged in the Indictment, from 2018 through September 2025, Chu directed Tricolor executives to defraud the company's lenders through various fraudulent schemes. Indictment ¶ 1. Chief among these was "double pledging" collateral—using the same assets as collateral for multiple loans. *Id.* Chu also directed manipulation of the descriptions and classification of assets pledged as collateral for loans to make ineligible, near-worthless assets appear to meet lender requirements. *Id.* The fraud's scale was extraordinary: Tricolor obtained hundreds of millions in fraudulent advances. *Id.* Its lenders provided over $1 billion based on fabricated data and false statements. *Id.* Chu personally extracted millions, including over $17 million in 2025 alone. *Id.* ¶ 25.

In the summer of 2025, lenders confronted Chu and others at Tricolor with concerns about Tricolor's collateral. Indictment ¶ 2. Chu and his conspirators initially tried to conceal the fraud and to falsely claim that the collateral issues were due to an administrative error. *Id.* Those efforts failed. *Id.* Chu, recognizing that Tricolor was, in his words, "basically history," turned his attention to extracting millions of dollars from the company. *Id.* At Chu's direction, Tricolor transferred over $6 million to Chu after lenders voiced concerns in or about late August 2025. *Id.*

After the fraudulent double-pledging and collateral manipulation schemes orchestrated by Chu unraveled, Tricolor was unable to maintain its access to loans and unable to sustain its business without substantial cash. Indictment ¶ 3. On September 10, 2025, Tricolor filed for Chapter 7 bankruptcy. *Id.* By that time, the company's largest lenders had advanced and were owed more than $900 million because of the defendants' schemes. *Id.*

---

[1] Even if the Court grants the Government's requested relief, the Government will nonetheless deploy a filter team to screen out any communications with Chu's current and former criminal defense attorneys in this case and documents created in anticipation of this criminal case that would have otherwise been protected by the work product doctrine.

Hon. P. Kevin Castel
May 18, 2026
Page 3

### B. Chu Takes Millions of Dollars from Tricolor for Himself as the Company Collapses and More Than 1,000 Employees Go Unpaid.

In 2025, the year of Tricolor's collapse, Chu was paid, in installments, a $15 million bonus. Indictment ¶ 25. As Chu's fraud was unraveling, on August 19 and 20, 2025, Chu received two payments from Tricolor totaling $6.25 million. *Id.* On September 5, 2025, with the company plummeting and unable to pay its workers, counsel for Tricolor, at the direction of the company's Board of Directors, demanded Chu immediately repay the $15 million bonus, noting in its demand letter "[a]s you are aware, the Company is suffering a severe liquidity crisis and is unable to pay accrued wages and trust fund tax obligations." *See* Ex. 2 (Chu Repayment Demand Letter). Chu refused. The next day, September 6, 2025, Tricolor placed more than 1,000 of its employees on unpaid leaves of absence. Indictment ¶ 25. On September 10, 2025, Tricolor filed for Chapter 7 bankruptcy. *Id.*

After the bankruptcy filing, Chu remained focused on shielding his assets from creditors. For example, on September 17, 2025, Chu sent an email to his personal Gmail address, including a link to an article from law firm Adler Law titled "Florida Homestead Law Guide," which "protects a Florida resident's primary home from judgment creditors." *See* Ex. 3 (Tricolor Trustee Adversary Complaint) ¶ 136. Chu's interest in the topic was hardly surprising: in 2022, Chu purchased a penthouse condominium at The Four Seasons Residences in Miami for approximately $18 million. *Id.* at ¶ 126.

### C. The Applicable Tricolor Policy, Email Accounts, and Devices

The Tricolor Employee Handbook set forth the company's policies on the use of company communication and computer systems. It provided in relevant part:

5-4. Use of Communication and Computer Systems

Tricolor Auto Group, LLC communication and computer systems are intended primarily for business purposes; however limited personal usage is permitted if it does not hinder performance of job duties or violate any other Company policy. This includes the voice mail, e-mail and Internet systems. **Users have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems**.

Tricolor Auto Group, LLC may access the voice mail and e-mail systems and obtain the communications within the systems, including past voice mail and e-mail messages, without notice to users of the system, in the ordinary course of business when the Company deems it appropriate to do so. **The reasons for which the Company may obtain such access include**, but are not limited to: maintaining the system; preventing or investigating allegations of system abuse or misuse; assuring compliance with software copyright laws; **complying with legal and regulatory requests for information**; and ensuring that Company operations continue appropriately during an employee's absence.

Hon. P. Kevin Castel
May 18, 2026
Page 4

*See* Ex. 1 (Tricolor Employee Handbook at § 5-4) (emphases added). During his time at Tricolor, Chu used at least two Tricolor email accounts and at least one Tricolor laptop.

### D. Discovery in this Case and Chu's Privilege Assertions

As part of its investigation in this case, the Government has obtained evidence from Tricolor email accounts and devices. For example:

- Ten Tricolor Laptops Produced Pursuant to Grand Jury Subpoena: In late August 2025, Tricolor hired the consulting firm Alvarez & Marsal. As part of its work, on September 4, 2026, Alvarez & Marsal imaged the company laptops of approximately ten Tricolor employees, including Chu, Chu's co-defendant David Goodgame, and cooperating witnesses Jerome Kollar and Ameryn Seibold.[2] After Tricolor filed for bankruptcy, those laptop images became property of the bankruptcy estate. Then, on approximately September 17, 2025, the ten laptop images were produced to the Government pursuant to a grand jury subpoena. Goodgame has not asserted any personal privilege with respect to the image of his company laptop. Accordingly, the Government has produced all ten laptop images to Chu in discovery. The image of Chu's laptop from Alvarez & Marsal has not yet been reviewed by the case team in this matter.

- Chu's iCloud Accounts Seized Pursuant to Search Warrants: In September 2025, the Government obtained a judicially authorized search warrant for two of Chu's iCloud accounts, the contents which include emails from Chu's Tricolor email accounts.

- Chu's Devices Seized Pursuant to Search Warrants: In October 2025, pursuant to judicially authorized search warrants, the Government seized multiple electronic devices from Chu, the contents of some of which include emails from Chu's Tricolor email accounts.[3]

As it often does, the Government has made use of a filter review process in this case to identify and segregate from the case team potentially privileged material. To assist with that review, Chu has provided the Government with a list of 63 attorneys and law firms with whom Chu may have had privileged communications. Seventeen specific attorneys and five law firms on the list are Chu's current or former personal counsel in this criminal case or personal bankruptcy

---

[2] Notably, while these ten Tricolor employees gave consent to the imaging of their Tricolor laptops, they all refused to give consent to the imaging of their cellphones, which were personal devices, not company devices.

[3] The Government has produced copies to Chu of images of ten of his devices seized pursuant to search warrants. The Government has been unable to access yet or has agreed to return the 11 other Chu devices seized pursuant to search warrants.

Hon. P. Kevin Castel
May 18, 2026
Page 5

counsel. Many of the other law firms on the list appear to be counsel for Tricolor, not Chu's personal counsel. For example, the list includes a law firm that Tricolor engaged in 2023 to investigate Chu's improper use of his corporate American Express card. *See* Ex. 3 (Tricolor Trustee Adversary Complaint) ¶¶ 102-107. The Government has requested that Chu identify all the attorneys and law firms on his list, beyond his criminal and bankruptcy counsel, with whom he had personal attorney-client relationships. Chu has expressed a willingness to provide that information to the Government's filter review team.

### E. Chu Asserts that the Tricolor Employee Handbook Applies and then Changes His Mind.

On January 8, 2026, Chu's counsel copied the Government on a letter he sent to counsel for Tricolor's Chapter 7 Trustee in which Chu claimed that the Trustee cited in certain court filings Tricolor emails that contained Chu's attorney-client privileged communications. *See* Ex. 4 (Chu January 8, 2026 Letter). In that letter, Chu's counsel acknowledged that, to be privileged, "attorney-client communications must be made with a reasonable expectation of confidentiality in the communications." *Id.* at 1 (quotation marks omitted). Furthermore, Chu conceded that, "[w]hen analyzing whether an employee has a reasonable expectation of confidentiality in personal e-mail communications transmitted or stored on a company computer, courts … have specifically looked to four factors articulated by" the court in *In re Asia Global Crossing, Ltd.*, 322 B.R. 247 (Bankr. S.D.N.Y. 2005). *Id.* at 1 (citing *United States ex rel. Long v. GSD&M Idea City LLC*, 2012 WL 12925016, at *2 (N.D. Tex. May 15, 2012) and *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154 (S.D.N.Y. 2011)). When discussing the *Asia Global* factors in his January 8 letter, Chu raised and discussed portions of the Tricolor Employee Handbook in support of his arguments. *Id.* at 2.

Notably, however, Chu did not address in his January 8 letter, or in any other written communication that the Government is aware of, the portions of the Handbook which state that "[u]sers have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems" and that Tricolor could access communications over company email systems "without notice" to "comply[] with legal and regulatory requests for information." Ex. 1 (Tricolor Employee Handbook at § 5-4). Before filing this motion, the Government asked Chu to explain his position in light of these provisions in the very same Handbook that Chu relied upon in his January 8 letter. During a meet-and-confer on May 15, 2026, Chu's counsel stated that the Tricolor Employee Handbook likely did not apply to Chu (an about-face from Chu's January 8 letter) and that, as a matter of practice, Tricolor did not enforce the policies in the Handbook (even if true, irrelevant under the applicable caselaw cited in Chu's January 8 letter, as explained below).

The Government has also asked Chu why, even if he had a reasonable expectation of confidentiality in his personal use of Tricolor email and computer systems at the time he was using them, he did not waive any applicable personal privileges on September 4, 2025 when he willingly handed over his Tricolor laptop to a third-party—Alvarez & Marsal, a consulting firm retained by Tricolor that was not part of any personal confidential attorney-client relationship with Chu. During a meet-and-confer on May 15, 2026, Chu's counsel maintained that Chu had not waived

Hon. P. Kevin Castel
May 18, 2026
Page 6

privilege with respect to the contents of his laptop when he handed it over for copying to Alvarez & Marsal.

The Government advised Chu that it would seek rulings from the Court on these issues, which counsel for Chu acknowledged.

**II.     Chu Had No Objectively Reasonable Expectation of Privacy with Respect to His Personal Communications on Tricolor Email and Computer Systems.**

**A.  Applicable Law**

The attorney-client privilege "stands in derogation of the public's right to every man's evidence and as an obstacle to the investigation of the truth." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973).[4] Thus, "[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle," and, "as with all privileges, the person claiming the attorney-client privilege has the burden of establishing all essential elements." *Id.* at 81-82.

It is axiomatic that one essential element of the attorney-client privilege dictates that it only applies to confidential communications. *See Vingnelli v. United States*, 992 F.2d 449, 454 (2d Cir. 1993). A valid claim of privilege requires both a subjective expectation of confidentiality and also a showing that such an expectation was objectively reasonable. *See United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). So, for example, "where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege" because, as the Second Circuit affirmed, "there could be no reasonable expectation of confidentiality" in those circumstances. *United States v. Mejia*, 655 F.3d 126, 133 (2d Cir. 2011). When an individual intends to communicate confidentially with his personal attorneys on company email or computer systems, courts must similarly assess whether that expectation of privacy is reasonable. "[T]he objective reasonableness of that intent will depend on the company's e-mail policies regarding use and monitoring, its access to the e-mail system, and the notice provided to the employees." *In re Asia Global Crossing, Ltd.*, 322 B.R. at 258-59.

In *In re Asia Global Crossing, Ltd.*, the court set forth a four-factor test regarding whether an expectation of confidentiality is objectively reasonable in the context of email transmitted over and maintained on a company server:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

---

[4] Unless otherwise noted, case text quotations omit internal quotation marks, citations, and previous alterations.

Hon. P. Kevin Castel
May 18, 2026
Page 7

*In re Asia Global Crossing, Ltd.*, 322 B.R. at 257. As Judge Gardephe and many other judges have recognized, the *Asia Global* test "has been widely adopted." *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. 154, 159 n.2 (S.D.N.Y. 2011) (collecting cases). In the context of this test, "[b]ecause an employer's announced policies regarding the confidentiality and handling of email and other electronically stored information on company computers and servers are critically important in determining whether an employee has a reasonable expectation of privacy in such materials, the cases in this area tend to be highly fact-specific and the outcomes are largely determined by the particular policy language adopted by the employer." *Id.* at 160.

### B.  Discussion

In his January 8 letter, Chu affirmatively raised and relied upon the Tricolor Employee Handbook and argued that *Asia Global* provides the legal framework for determining whether he had a reasonable expectation of confidentiality in his use Tricolor email accounts and computer systems. *See* Ex. 4 (Chu January 8, 2026 Letter). Now, however, Chu seeks to run from key, dispositive portions of the Tricolor Employee Handbook that he previously overlooked. This is not surprising. The provisions are show-stoppers: they make explicit that "[u]sers have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems" and that Tricolor could access communications over company email systems "without notice" to "comply[] with legal and regulatory requests for information." Ex. 1 (Tricolor Employee Handbook at § 5-4). Chu cannot square his position with this plain text.

Accordingly, the Government turns to the particulars of the Tricolor Employee Handbook and the application of the *Asia Global* factors, all of which weigh against a finding that Chu had a reasonable expectation of confidentiality.

### 1.  Tricolor's Policies Regarding Personal Use of Company Email and Computer Systems

Because a company's policies "are critically important" in this context, including the "particular policy language adopted by the employer," *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 160, the Court's analysis should begin—and can end—with the Tricolor Employee Handbook.

Section 5-4 of the Handbook, titled "Use of Communication and Computer Systems," unambiguously provides that, while "limited personal usage is permitted" of Tricolor's communication and computer systems, "[u]sers have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems." That ends the matter. Chu cannot claim to have a reasonable expectation of privacy in circumstances where the company policies made clear, in black and white, that he had no legitimate expectation of privacy. *See United States ex rel. Long v. GSD&M Idea City LLC*, 2012 WL 12925016, at *2 (N.D. Tex. May 15, 2012) (finding that no expectation of privacy existed where handbook stated that the use of individual passwords to agency email, voicemail and computer network systems "should not be viewed as creating an expectation of privacy in any use of agency systems"). The explicit disclaimer of a reasonable

Hon. P. Kevin Castel
May 18, 2026
Page 8

expectation of privacy in the Tricolor Employee Handbook is similar to the disclaimer in *Long*, a case Chu himself cites in his January 8, 2026, letter, and should be dispositive.

### 2. Tricolor's Monitoring of Employees' Use of Company Email and Computer Systems.

The second *Asia Global* factor likewise shows that Chu had no reasonable expectation of privacy in his personal use of Tricolor systems. Section 5-4 of the Tricolor Employee Handbook made clear that Tricolor "may access the voice mail and email systems and obtain the communications within the systems, without notice to users of the system ... when the Company deems it appropriate to do so." Even if, as Chu now claims, Tricolor did not enforce these policies in practice, that is irrelevant under the very cases that Chu cites in his January 8 letter. "Where, as here, a company has explicit and straightforward guidelines addressing the monitoring of e-mail communications, an employee has no reasonable expectation of privacy in the e-mails, even if the company does not routinely enforce the monitoring policy." *Long*, 2012 WL 12925016, at \*4; *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 163 ("Where an employer reserves the right to access or inspect an employee's email or work computer, courts often find that the employee has no reasonable expectation of privacy.") (collecting cases); *see also See* Ex. 4 (Chu January 8, 2026 Letter) at 1 (citing *Long* and *In re Reserve Fund Sec. & Derivative Litig.*).

### 3. The Right of Third Parties to Access Tricolor Email and Computer Systems

The third *Asia Global* factor also points against Chu. The Tricolor Employee Handbook provides a non-exhaustive list of reasons why Tricolor may access email communications on Tricolor systems and, in some circumstances, provide them to third parties. For example, the Handbook explains that Tricolor may access emails when "complying with legal and regulatory requests for information." Thus, not only were Tricolor employees given notice that third parties within Tricolor were allowed to access Tricolor emails, but they were also told that their emails could be disclosed to regulators and others. Judge Gardephe found a similar policy—which provided that communications "may be subject to disclosure to regulatory agencies or the courts"—weighed against the privilege claimant and supported a finding that the claimant lacked a reasonable expectation of privacy when using a company's email system. *In re Reserve Fund Sec. & Derivative Litig.*, 275 F.R.D. at 164. The Court should reach the same conclusion here.

### 4. Chu's Awareness of Tricolor's Use and Monitoring Policies

Finally, the last *Asia Global* factor cuts against Chu given that he was required to sign a "General Handbook Acknowledgement" acknowledging that he has "received and read" a copy of the Tricolor Employee Handbook. *See* Ex. 1 (Tricolor Employee Handbook at 51). In fact, regardless of whether Chu actually received and read the Handbook, "[c]ourts have found that this prong of the analysis does not require 'actual or direct' notification to employees of a company policy governing e-mail communications sent or received on the company network if the policy is available to the employee." *Long*, 2012 WL 12925016, at \*8.

Hon. P. Kevin Castel
May 18, 2026
Page 9

Accordingly, all the *Asia Global* factors weigh in favor of finding that Chu had no reasonable expectation of confidentiality in his personal use of Tricolor email and computer systems.

### III.    Alternatively, Chu Waived Any Applicable Personal Privileges When He Submitted His Tricolor Laptop for Copying.

Even if the Court declines to make the finding requested above, and there is no reason why the Court should decline to do so, the Court should find that, at a minimum, Chu waived any extant personal privilege he held with respect to any communications or materials on a Tricolor laptop when he voluntarily submitted that laptop to a consulting firm hired by Tricolor on September 4, 2025. As noted above, in the days leading up Tricolor's bankruptcy filing, Chu and nine other Tricolor employees willingly handed over their company laptops for copying to Alvarez & Marsal, a consulting firm engaged by Tricolor. Copies of those 10 laptop images were later produced to the Government.

It is black-letter law that disclosure of a previously privileged communication to a third party waives privilege as to that communication. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) (privilege "is generally waived by voluntary disclosure of the [privileged] communication to another party"); *In re Horowitz*, 482 F.2d at 81 ("subsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed"). Here, on September 4, 2025, Chu voluntarily disclosed the contents of his Tricolor laptop to a third party—Alvarez & Marsal, a consulting firm retained by Tricolor—and an image of the laptop taken by Alvarez & Marsal was later produced to the Government pursuant to a grand jury subpoena. Accordingly, any personal privilege Chu had with respect to the contents of the laptop were waived.

Hon. P. Kevin Castel
May 18, 2026
Page 10

## IV.   Conclusion

Chu ought not be permitted to shield from the Government non-confidential communications he made on Tricolor email accounts and computers and, in the case of his Tricolor laptop, subsequently provided to a Tricolor's consultant. Tricolor's privilege is not Chu's privilege. Chu's personal communications through company systems were never capable of being confidential attorney-client communications because the company's policies dispelled any expectation of confidentiality. Additionally, Chu voluntarily waived any privilege that could have attached by tendering his communications to a third-party, particularly one he reasonably expected would be adverse to him in subsequent litigation. Accordingly, the Court should order that the communications and materials on Chu's Tricolor email accounts and devices are not subject to a valid claim of personal privilege.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Micah F. Fergenson
Justin V. Rodriguez
Assistant United States Attorneys
(212) 637-2190/-2591

cc: Counsel of Record (by ECF)