# EXHIBIT 16

Q1DKCHUC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                      25 CR 579 (PKC)

DANIEL CHU, DAVID GOODGAME,

                                        Arraignment
                Defendants.

------------------------------x

                                        New York, N.Y.
                                        January 13, 2026
                                        2:00 p.m.


Before:

                    HON. P. KEVIN CASTEL,

                                        District Judge

                        APPEARANCES

JAY CLAYTON
        United States Attorney for the
        Southern District of New York
JUSTIN RODRIGUEZ
MICAH FESTA FERGENSON
        Assistant United States Attorneys

BOIES, SCHILLER FLEXNER LLP
        Attorneys for Defendant Chu
BY:  MATTHEW L. SCHWARTZ
     CRAIG A. WENNER
     MARSHALL DORE LOUIS
     JACQUELINE C. KELLY
     -and-
HOWARD SREBNICK

SPENCER & ASSOCIATES
        Attorneys for Defendant Goodgame
BY:  ARNOLD A. SPENCER

(Case called)

MR. RODRIGUEZ:  Good afternoon, your Honor. Justin Rodriguez and Micah Fergenson, for the United States.

THE COURT:  Good afternoon.

And appearing for Mr. Chu?

MR. SHWARTZ:  Good afternoon, Judge. Matthew Schwartz, Howard Srebnick, Jacqueline Kelly, and Dore Louis, for Mr. Chu, who is to my right.

THE COURT:  All right.  Good to see you, Mr. Schwartz. Good afternoon.  Thank you.

And for Mr. Goodgame?

MR. SPENCER:  Good afternoon, your Honor. Arnold Spencer, here on behalf of David Goodgame.

THE COURT:  All right.

So the questions, Mr. Schwartz, to start off, will be whether or not your client has received, reviewed, and discussed with you the indictment returned under 25 CR 579; whether he waives the public reading of the indictment; and how he pleads to the charges in the indictment.

MR. SHWARTZ:  Mr. Chu has received and reviewed the indictment with me.  He waives its public reading.

Mr. Chu enters a plea of not guilty, because he is not guilty, and we look forward to a trial.

THE COURT:  All right.  A plea of not guilty will be entered on the record of the case.

Q1DKCHUC

And the same questions for counsel for Mr. Goodgame.

MR. SPENCER:  Thank you, your Honor.

Yes, Mr. Goodgame and I have reviewed the indictment in its entirety.  We waive that reading here in court this afternoon.

And we would like a plea of not guilty entered on his behalf.

THE COURT:  All right.  A plea of not guilty will be entered on the record.

Let me inquire of the government as to the volume and nature of the discovery in this case, and when the government anticipates having discovery complete.

MR. RODRIGUEZ:  Yes, your Honor.

We do expect that discovery will be substantial in this case.  So far, we've made two productions to the defense, which I will describe.  I'll also describe for the Court what's left to be done and the timeline for that.

The first production that we made to the defense, which was yesterday, consisted of all of the warrants, pen registers, and supporting applications from this case.  So to the extent that the defense wishes to file any motions with respect to any of that, they have all of those papers.

I'll talk a little bit about the returns from those warrants, but I'll note for the Court that warrants were executed on Mr. Chu's Florida residence and his person, during

which searches, approximately 21 devices were seized.  Warrants were also executed for two of Mr. Chu's iCloud accounts and one cell phone from Mr. Goodgame on the day of his arrest.

The second production that the government has already made to the defense consisted of approximately 258,000 documents of subpoena returns and voluntarily-produced documents from approximately 36 different producing parties. Included in those parties are the victim banks and financial institutions that are identified as lenders 1 through 9 in the indictment; Tricolor, which is the company at issue here.  It's currently in Chapter 7 bankruptcy in the Northern District of Texas.  The Chapter 7 bankruptcy trustee has been producing documents to the government, and is one of the producing parties, documents from Tricolor's auditors and others.  So those are the two productions that the government has already made to the defense.

Let me turn to what's left.  The government's investigation is continuing, and so we do expect that we will continue to receive subpoena returns from various parties, but as we receive those, we will certainly promptly produce them along with voluntarily-produced documents.  But when it comes to subpoena returns and other voluntarily-produced documents, we produced, at the point in time that we produced them, everything that we had in our possession.

THE COURT:  So the 258,000 approximate documents in

connection with the subpoena returns or voluntary productions have now been produced?

MR. RODRIGUEZ:  That's correct, your Honor, yes.  As we get more, and we've continued to get more even after we made that production, we will be producing them promptly.

THE COURT:  All right.

Now, what else is there?  There are possible extractions from electronic devices.  What else?

MR. RODRIGUEZ:  That's correct, your Honor.  And I can -- the last big bucket here is devices, and so let me say a few words about devices.

So, one bucket of devices are ten laptop images that we received from the Tricolor Chapter 7 bankruptcy trustee.  We are prepared to produce those images to the defendants.  We just had a discussion today about that.  I want to confirm for the defense exactly the size of the drive that we need from them.  Once we get that, the only timing question will be how long it takes our office to copy them, but we hope that that should take no more than a few weeks of actual copying time.

THE COURT:  All right.

Now, I assume that the mirror images of the laptop drives will contain material that is both relevant and not relevant.

What, if anything, are you proposing to do to identify for the defense what you consider to be relevant or what you're

Q1DKCHUC

planning on using in the prosecution of this case?

MR. RODRIGUEZ:  Yes, your Honor.

So, when it comes to devices, we are employing a multistep process.  First, once we image the device, we are in dialogue with the defense about conducting a privilege review, to make sure that we screen materials out.  Once we do that, we'll be conducting a responsiveness review to identify those materials that are responsive to the warrant and properly seized pursuant to the warrant, and we'll be producing that set as well.

I do also expect that, above and beyond that, to the extent that we are identifying what we think of as particularly relevant materials, we certainly don't want those to get lost in the sea of discovery, and we would like defense counsel to focus on that.  And so it is very much our plan that, as we identify particularly relevant materials from these devices, we'll be bringing them to the attention of the defense.  Of course, that also includes any *Brady* material that we identify.

THE COURT:  So, as I see this, neither the privilege review, the responsiveness review, or the highlighting of particularly relevant materials or *Brady* materials will not delay the providing of the mirror image to defense counsel.  So defense counsel will have that in realtime, when you get it, and then the other steps will occur subsequent to that?

MR. RODRIGUEZ:  That's correct, your Honor.

There are some devices that we have not been able to access yet, and the FBI is trying to access them using various tools. But what the Court said is correct — to the extent that we have it, they will have it as well. And so those two processes will be going on.

THE COURT: What's your time estimate on the imaging of the drives?

MR. RODRIGUEZ: So, for those devices that we actually have images for, the only time that it takes is copying. Our office — this is rough math — has been averaging about a terabyte a day of copying, and I think the universe of devices that we are ready now to start copying over to the defense is approximately — this is subject to change, as I understand it — about ten terabytes. So in the schedule, we, unfortunately due to technological limitations, have to build in about ten days of copying time.

We are trying to also, as best we can, do this on a rolling basis.

THE COURT: Okay. Got it.

MR. RODRIGUEZ: So, your Honor, I'm happy to talk in further detail about the devices, but that's really the biggest thing in terms of what's outstanding.

THE COURT: So when do you anticipate you will have the mirror images produced to the defense, approximately?

MR. RODRIGUEZ: Approximately, yes, your Honor.

Q1DKCHUC

Assuming that we get devices on a timely basis, which we very much have been from the defense, my expectation is that in about four to five weeks, to be a little conservative, the defense should have all of the mirror images that we have.

THE COURT:  All right.

Let me advise you that I direct the prosecution to comply with its obligations under *Brady v. Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendants, material either to guilt or to punishment and known to the prosecution.  Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will enter a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations and will fulfill them?

MR. RODRIGUEZ:  Yes, your Honor.

THE COURT:  All right.

Now, defense counsel will need time to review the materials that it already has, and to also review the images of the laptops, and it will need some time to review this and be

in a position to return and to advise the Court whether they have any motions addressed to the face of the indictment or to the discovery produced in a timely fashion at least a month before the next conference. And I propose to make that next conference March 19, at 2:00 p.m.

How does that sound to you, Mr. Schwartz?

MR. SHWARTZ:  I'm sorry, was the question whether we would be in a position a month before that conference to advise you about potential motions?

THE COURT:  No, no. At the conference.  I'm assuming that the government will have gotten you the mirror images. You cannot address the issue of privilege, you cannot address the issue of responsiveness, relevance responsiveness, because you don't have that. But I would expect you to be in a position to advise me whether you have any motions directed to the face of the indictment or to discovery that's produced by, let's say, February 19th when you get here on March 19th.

MR. SHWARTZ:  I think that's absolutely fair, that we be in a position to advise you on the 19th of March if we have a motion based on anything we have received by the 19th of February.

I do have a question, because I think I basically understood the government's plan, but with respect to these mirror images, I assume that it is not their plan to produce, for example, mirror images of Mr. Chu's device to Mr. Goodgame

Q1DKCHUC

and vice versa because they won't have done the privilege review with respect to those devices, and they're not going to give us the other person's privileged materials.

So, even by then, we'll only have our own devices.  Am I correctly understanding the plan?

THE COURT:  Well, let me add onto that question.  How many of these devices does the government contend are attributable to Mr. Chu as opposed to Mr. Goodgame?  Can they be divided in such a fashion?

MR. RODRIGUEZ:  Yes, your Honor.

With respect to Mr. Goodgame, it's a much smaller number.  One cell phone was seized from him on the day of his arrest and one laptop was imaged by the trustee.  Everything else relates to Mr. Chu.

THE COURT:  So, Mr. Goodgame is going to get his laptop and his cell phone device, to the extent it can be accessed?

MR. RODRIGUEZ:  Correct, your Honor.

THE COURT:  All right.

And not the balance of the materials?

MR. RODRIGUEZ:  Well, so on that, your Honor, we did enter into a protective order that the parties agreed to that allowed for the cross-production of ESI for both defendants to the other defendant.  If there is some reluctance on that, we're happy to revisit that with the defense if that was not

Q1DKCHUC

their intent.  But it is certainly the case that each defendant will get the full image of their own devices, assuming we can access them.

THE COURT:  All right.

MR. SHWARTZ:  So I will go back and look at the protective order, but I understand that it permits as confidential the production of one to the other.  I don't understand it to deal with privilege issues.  And if we were just dealing with the government here, I might be comfortable with that, but, as they pointed out, there is a Tricolor bankruptcy, there is litigation that has been brought by the trustee.  The trustee has already taken an extraordinarily aggressive view of privilege, and I wouldn't want that person to be able to argue that there are waivers of privilege as between the defendants here.

THE COURT:  Well, as I understand it, the government is not opposed, at this stage, to providing your client with nine of the ten laptops, which should enable you to do or commence your review of those laptops.

MR. SHWARTZ:  Absolutely.

THE COURT:  And for the moment, produce only the one Goodgame laptop to Mr. Goodgame --

MR. SHWARTZ:  Absolutely, I understand.

THE COURT:  -- and not to Mr. Chu.

That sounds reasonable.  Unless there's specific

Q1DKCHUC

language in the protective order that addresses the issue of privilege — and there may well be, I don't know — if there's no language that addresses privilege, it seems to me that that is good order, that because we're deal with privilege, that Chu receive the nine laptops and Goodgame receive the one.

MR. RODRIGUEZ:  I agree with the Court.  I'm just going to restate it so that we're all on the same page.

The government will not, at this point, produce images, the full images, of Mr. Chu's devices to Mr. Goodgame because of potential privilege issues.  We will discuss with — and vice versa — and we will discuss with the defendants how they would like to handle that going forward.  If there's a modification of the protective order that is needed, we'll deal with that promptly.

THE COURT:  Okay.  Thank you.

Let me inquire of Mr. Spencer:  Any issue with returning on March 19 at 2:00 p.m. for the tasks that I've outlined?

MR. SPENCER:  No, sir.

THE COURT:  Okay.  Thank you.

Is there any other issue that either defendant wishes to raise with me?

MR. SPENCER:  Nothing on behalf of Mr. Goodgame.

MR. SHWARTZ:  Not at this time.  Thank you.

THE COURT:  Okay.

Q1DKCHUC

And does the government have any other issue they want to raise, other than their final motion?

MR. RODRIGUEZ:  No, your Honor.

THE COURT:  All right.

And I will hear your final motion.

MR. RODRIGUEZ:  Your Honor, the government moves to exclude time under the Speedy Trial Act from today until March 19th of this year.  The government submits that the ends of justice served by such an exclusion outweigh the best interests of the public and the defendants in a speedy trial because such an exclusion will allow the defendants to review the voluminous discovery in this case, to decide which, if any, motions are appropriate, to engage with the government, if they so choose, about potential pretrial resolutions, and to otherwise prepare for trial.

THE COURT:  Mr. Schwartz?

MR. SHWARTZ:  While we are eager to move forward, we have no objection to exclusion.

THE COURT:  Mr. Spencer?

MR. SPENCER:  No objection, your Honor.

THE COURT:  All right.

I find that the ends of justice will be served by granting a continuance to March 19, and that the need for a continuance outweighs the best interests of the defendants and the public.  The reasons for my finding are that the time is

Q1DKCHUC

needed to enable the government to undertake the steps which it outlined in terms of mirror imaging materials, for defense counsel to review materials that have been produced, will be produced, to discuss them with their clients, and to be in a position to advise whether they have any motions addressed to the face of the indictment or to the discovery timely produced at least 30 days before the March 19 conference.  And, accordingly, the time between today and March 19 is excluded under Speedy Trial Act.

If there's nothing further, we are adjourned.  Thank you.

And my apologies for being here late.  I was consulting with one of my colleagues.  Thank you.

(Adjourned)