# EXHIBIT 21

Q3JLChuC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                        25 Cr. 579 (PKC)

DANIEL CHU and DAVID GOODGAME,

                Defendants.

                                          Conference
------------------------------x

                                          New York, N.Y.
                                          March 19, 2026
                                          2:00 p.m.


Before:

                    HON. P. KEVIN CASTEL,

                                          District Judge

                            APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  MICAH FERGENSON
     JUSTIN RODRIGUEZ
     Assistant United States Attorneys

BOIES, SCHILLER FLEXNER LLP
     Attorneys for Defendant Chu
BY:  MATTHEW SCHWARTZ
     JACQUELINE KELLY
     MARSHALL DORE LOUIS

SPENCER & ASSOCIATES
     Attorneys for Defendant Goodgame
BY:  ARNOLD SPENCER


Also Present:  Octavia Drew, Paralegal
               Leyla Yurt, Paralegal

                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

(Case called)

MR. FERGENSON:  Good afternoon, your Honor.  Micah Fergenson and Justin Rodriguez for the government.  We are also joined at counsel table by our paralegals, Octavia Drew and Leyla Yurt.

THE COURT:  All right.  Good afternoon to you.

And appearing for Mr. Chu.

MR. SCHWARTZ:  Good afternoon, Judge.  Matthew Schwartz, Jacqueline Kelly, and Dore Louis for Mr. Chu, who is seated to my right.

THE COURT:  Good to see you, Mr. Schwartz.  Good afternoon, Mr. Chu and all others.

And appearing for Mr. Goodgame.

MR. SPENCER:  Arnold Spencer here on behalf of David Goodgame.

THE COURT:  Good afternoon, Mr. Spencer.  Good afternoon, Mr. Goodgame.

Let me begin by inquiring of the government what the status of discovery is and when, approximately, discovery was substantially complete.

MR. FERGENSON:  Yes, your Honor.  The headline is we produced substantial discovery, over one million documents, excluding any of the devices.  Let me -- if it makes sense, your Honor, I will just proceed by categories.

THE COURT:  That's fine.  That sounds like a good way

to go.

MR. FERGENSON:  So, in terms of records we collected through grand jury subpoenas or through voluntary productions, that's the bulk of the over one million documents we have produced.  The short of it is we have produced what's in our possession, and we will continue to do so.  As, you know, parties continue to send us additional productions, they are just being cycled out and produced to the defense.

THE COURT:  When, approximately, was that produced?

MR. FERGENSON:  The one million figure, your Honor, is as of today.  There have been substantial productions, including as of, you know, approximately mid February when your Honor had wanted us to, you know, get our productions out.  We had caught up by that time, and we have continued to produce since then.

Also in that category of subpoena returns, your Honor, are ten images of ten company laptops that the company, Tricolor, had imaged in early September 2025, their outside counsel through vendors.  Those ten images have all been produced in full as well; all ten to Mr. Chu, nine of the ten to Mr. Goodgame because, you know, at Mr. Chu's request, we held off producing Mr. Chu's laptop's full image.  But that has been substantially produced as well.

Then the other big category, and it's really the remaining category, your Honor, are the search warrant returns,

and I think the easiest way to look at it is almost all of those are from Mr. Chu, so I will focus there.

All right. So there was a search warrant on his iCloud account -- oh, and maybe even to take a step back, your Honor, everything that was seized from Mr. Chu, either his iClouds or his devices, the full image of that has been provided to Mr. Chu. So, he has what we have.

So, now to break that down a little more --

THE COURT: So, in other words, it's not the case that the full image of the laptop is all relevant, but all of it has been produced and, as we discussed at the last conference, you will be identifying to the defense that which you view as relevant.

MR. FERGENSON: That's exactly correct, your Honor.

THE COURT: OK.

MR. FERGENSON: And so, just to break that down, give your Honor a little bit more color on that, you know, there was a search warrant on his iCloud accounts. There were two iCloud accounts. That review is ongoing. I think we made a partial responsive production -- you know, a production, you know, partially responsive documents, not finishing the responsive review.

THE COURT: OK.

MR. FERGENSON: OK. So that's the iClouds. Then there was a premises warrant on his Miami residence, where I

believe it was 21 devices were seized. Eight of the devices, we are not using and we are returning to Mr. Chu. So we are down to 13. For six of those devices, we have not gotten into them. You know, we haven't been able to crack them, so they are not even imaged. We don't have them, and we may never -- we may get into them. We may never -- it's, sort of, often a "wait and see" in cases like this.

THE COURT: I have to tell you, because -- forgive me if I have mentioned this before, but I did have a trial where it was a similar situation and, quite remarkably, and to the surprise of the defendant, it was during the trial that the device was cracked. And I think it's fair to say that the evidence happened in that case to be quite incriminating and might have influenced a different decision had it been known earlier on. It's just the way things happen.

Anyway, six not cracked, seven cracked.

MR. FERGENSON: Correct. And of those seven, two we finished the responsive review. Those have been produced. And then there's five where the, you know, the government review is ongoing.

THE COURT: OK.

MR. FERGENSON: And then those -- so those are all Daniel Chu. A much smaller set was from -- yeah, and then a much smaller set -- really, there's one cell phone from the codefendant, David Goodgame. That is ongoing government review

as well.

THE COURT:  Cracked?

MR. FERGENSON:  Yes, imaged.

THE COURT:  All right.  So that, in summary fashion, is the status of the government's discovery in this case?

MR. FERGENSON:  Yes, your Honor.

THE COURT:  All right.  Mr. Schwartz, I am going to turn this over to you.  You are going to let me know what motions, if any, your client wishes to make.  And if you have any observations on the government's presentation, I would be happy to hear you on that.

MR. SCHWARTZ:  Sure.  So, I think -- I don't take issue with the way the state of discovery was described, except for one thing.  But I think the headline was -- the answer to your Honor's question, "When was discovery substantially completed" is, it hasn't been.  Discovery will be substantially complete when the government completes its responsiveness review and produces to us the documents that are the Rule 16 discovery.

The state of discovery as described by the government is correct with the exception, I don't think it's accurate -- I don't think that he meant to say that every device that was taken from Mr. Chu has been imaged and that image has been provided to Mr. Chu.  That's not accurate.  It may be that the ones that haven't been imaged are the ones that they can't get

Q3JLChuC

into, but we don't have those either.  So, that's otherwise accurate.

But let's talk about what we haven't yet gotten.  So, in addition to those devices which have neither been imaged nor have we gotten responsive documents, there are, according to the government, five additional devices for which responsiveness review is, they say, ongoing, but we haven't received anything from that.  There are two iCloud accounts from which they say we have received a partial production -- and I will talk about that in a second -- of an ongoing responsiveness review.

In addition, there is the device that was seized from Mr. Goodgame which we have received neither an image of -- I believe Mr. Goodgame has, but we have not -- nor have we received any responsiveness.

THE COURT:  And were told as to the one cell phone that it's an ongoing review.

MR. SCHWARTZ:  That's what we are told.

THE COURT:  Right.

MR. SCHWARTZ:  With respect to the responsiveness review, so, what has been produced to us thus far, as Mr. Fergenson said, is about a million documents that are responsive to subpoenas, plus some of these images.  Those images comprise more than 12 terabytes of data.  That's -- if you believe the internet, that implies about 6 billion pages of

data.  The delta between what is on that stuff and what is actually discovery material is enormous.

So, just by way of example -- and I appreciate that they have just clarified --

THE COURT:  On the ten company laptops you are talking about?

MR. SCHWARTZ:  I think that's the total of the company laptops, plus the Chu devices, where the images have been produced to us.

But just by way of example, the two iCloud accounts alone were about 4.3 terabytes of data, and the responsiveness review, I appreciate it's ongoing, but that has resulted in the production of a grand total of 126 documents.  So, to say that we have this material is true in a sense, but it's not useful for trial preparation in any meaningful sense.

In addition, there is another category of documents that the government didn't talk about, and that's material that's in the possession of the SEC.  So, the SEC conducted a parallel investigation here, or coordinated investigation, and for reasons that the government can explain, there is a tremendous amount of discovery of investigatory material that the SEC obtained by SEC process, much of which may be duplicative of what the government collected through a grand jury investigation.

They have offered, which I appreciate, to facilitate

getting that to us, but that's likely to be a similarly enormous amount of information that is largely duplicative of what we have already gotten. So, we have started to meet and confer with them about that. The first thing we asked for is simply a list of custodians that the SEC got from them so we can see what the differences are between what the government got by grand jury subpoena and what the SEC got by administrative subpoena. We haven't gotten an answer to that yet, but that's another potentially large volume of documents that we don't have any insight into.

So, it's a long way of saying they have certainly produced a lot of stuff to us, but there is a lot to go, and a lot of that is requiring manual labor on the part of the government to do this responsiveness review which is ongoing, and we don't know how long it will be ongoing for.

So, I can talk about the motions that we are prepared to make now, and I think we have an agreed-upon motion schedule, but we may well have additional motions, depending on how things unfold. And I would suggest it might be appropriate to set a deadline today for the substantial completion of discovery.

In terms of motions based on what we have now, I anticipate that we will have a motion for a bill of particulars, and we haven't yet started the meet-and-confer process on that, but we certainly will. That may also inform a

motion to dismiss, particularly with respect to Count One.

I anticipate that we will have a motion to suppress the search and seizure warrants based on the material in the warrant affidavits.  I anticipate that we will have, for similar reasons, a motion to inspect the grand jury minutes here.  And there are several bases for the motion to suppress and the motion to inspect, but the one thing that runs through them both is that the government obtained, as they said, premises warrants back in September, and that's when they seized all these devices.  That was months before the case was charged.  The case was charged in December.  Both the search warrants, the indictment, we can tell from the speaking allegations, and the later seizure warrants, they rely, among other things, on the cooperators explicitly, the things that the cooperators told the government.

We have received, again, to the government's credit, a very lengthy *Brady* disclosure about what a number of witnesses, including the cooperators, had to say.  None of that was disclosed in the warrants.  I presume none of that was disclosed to the grand jury.  That, to us, is quite material, so we are going to have a motion based on that.  We may also have a motion --

THE COURT:  Well, is that -- that's part of your motion to suppress the search and seizure?

MR. SCHWARTZ:  It is, and part of the motion to

inspect the grand jury minutes. We may also have a motion to suppress based on privilege issues as well.

There are other potential motions that I think depend upon our ongoing review of discovery, including, you know, certain potential motions as to multiplicity of counts or severance, or things like that. But that's the core of what we are currently anticipating.

We talked to the government. We have a motion schedule that I think we are aligned on.

THE COURT: Let me hear what it is.

MR. SCHWARTZ: So it would be motions due May 20, responses June 26, and replies July 17.

THE COURT: All right. Let me hear from the government.

MR. FERGENSON: Thank you, your Honor. Just to respond to a couple of points. One is, we are on equal footing with Mr. Chu, and to the extent that we have images of his cell phones, he has those -- or his devices, he has those images too. Like your Honor said, there's some we are not into yet. Nobody has them.

The other is material with the SEC. That is not in our possession. As an accommodation to the defense, we flagged this for them and said, you know -- our understanding is it's going to be largely, if not entirely, duplicative, but if you would like us to make this request so you have those materials

Q3JLChuC

as well, we are willing to do that as an accommodation so it doesn't jam us up down the road.

More to the point, your Honor, I think on the motion schedule, our position is, that was the schedule requested by the defense. We are happy to accommodate that, but we would not agree to it if it's going to slow up setting the trial date. We are ready for trial. We are prepared to try this case as early as July. As an accommodation to the defense, I think we are willing to do it in Q4, like, the fall of this year. But this is a, you know, a significant case. We expect it will be roughly a four-week trial, take about a month.

It's a matter of significant public attention, for all the reasons that, you know, any case involving a nearly billion-dollar fraud that has drawn the scrutiny of the capital markets would be a case of significant public attention. But there are also several other litigations or proceedings, including the Chapter 7 bankruptcy of Tricolor, including two federal civil plaintiffs' actions, one assigned to Judge Rakoff, one assigned to Judge Vargas, that are, we expect, going to be waiting on this criminal proceeding to come to conclusion.

I flagged in particular the Judge Rakoff case, your Honor, which, according to an order he's issued there, is to be trial ready by the end of August. You know, we are prepared to try the case before then. I understand it would be preferable

Q3JLChuC

for the defense to do it in the fall, and we are OK with that as an accommodation. I think, just to throw it out there -- and, obviously, this all depends on the Court's calendar -- I think we might, you know -- perhaps an October date would be suitable for all to try the case.

THE COURT: All right. Let me throw it back to Mr. Schwartz.

MR. SCHWARTZ: So, I heard the government say that they are ready for trial now. I don't know how that could be true when they are still reviewing the evidence.

Now, if they are truly ready for trial, perhaps --

THE COURT: It might have been hyperbole. I kind of took it that he was saying he would be ready for trial in July, but the word "now" might have been used. I won't --

MR. SCHWARTZ: Well, I was going to say, I mean, if that's true, there is an easy solution here, which is, the government can tell us that they are not going to rely on any of the evidence that was seized from Mr. Chu. They don't have --

THE COURT: I don't think we really need to get into a big debate about "now."

MR. SCHWARTZ: Right. But I guess my point is, if they are not willing to do that, which, I wouldn't fault them for not wanting to do that, I don't know how we can realistically talk about what a fair trial date is without

getting the discovery, having an opportunity to review it, and being able to use it effectively to prepare for trial, let alone go through the motions. And we have no idea when that's going to be.

I appreciate the idea that we are on equal footing, but we are only on equal footing in the sense that we have the same stuff. They are the ones who are the deciders of what is the Rule 16 material. We are not. So we are not on equal footing. We are not on equal footing until they complete that responsiveness review and give us all the discovery to which we are entitled.

So, we are very eager to try this case. We don't want to delay this at all, but we have to do it with all of the evidence, and we have to have the evidence sufficiently in advance of trial to make any appropriate motions, to investigate appropriately, and to prepare for trial.

THE COURT: All right.

MR. SCHWARTZ: Which is why I say, again, I think one thing that would be productive would be to set a deadline for substantial completion of discovery, including the responsiveness review.

THE COURT: All right. This is what I am going to do: Number one, I am going to approve the proposed motion schedule. Number two, in reliance on the expectation that the government will do what it has said it is doing as ongoing review, and

Q3JLChuC

will complete it in a time which is sufficient for the defense to prepare for trial, I will set the trial in this case for Monday, October 19, at 10:00 a.m.  And that -- I will set a schedule for motions in limine, for government's request to charge, voir dire, 404(b) evidence, for the defendants' response, reply.  I will hear from the government on 3500 material, and we will proceed from there.

Yes, sir.

MR. SCHWARTZ:  That's fine.  I realize there was one other fact that the Court should be aware of.  So, I appreciate that that trial setting is contingent upon the expectation that discovery will proceed in the way the government has outlined.

THE COURT:  Let me say it differently.  It's not contingent.  But if the government fails to give you adequate time, not in your opinion that it's adequate time, but objectively is an unreasonable amount of time, I will entertain an application to move it.

You will see that I have moved trial dates, but only for very good reason.  This is not a trial date that's being penciled in.  It's being chiselled in, but I have to always be open to the possibility that events can arise.  So, that's the way I look at it, as a chiselled-in date, but like all chiselled-in dates, I do not know the vagaries of life.

MR. SCHWARTZ:  Understood completely.  And I appreciate that it's not contingent, but it is based on the

representations that were made today.

In that connection, I was just going to say, the Court should also be aware, as we are looking at that relatively firm trial date, the government has told us that they are intending to supersede here as well. They haven't told us what that's going to look like. They haven't committed to a conduct it's going to encompass.

THE COURT: That's one of those vagaries of life.

MR. SCHWARTZ: Understood, but that's the way it's foreseeable to the government right now. So, if it happens too close to trial, that would be unfair.

THE COURT: We will have to see.

MR. SCHWARTZ: Right. I just wanted you to know.

THE COURT: I have seen superseders that have been relatively inconsequential, and I have seen them that are quite consequential. I have no idea. I am not going to force the government's hand or the grand jury's hand at this stage.

MR. SCHWARTZ: I get that completely, but the government has told us, and they told us since the last conference, that they were intending to supersede. At some point, they should just do it if they know they are going to do it.

THE COURT: OK. So now let's talk about the government's request to charge, voir dire, motions in limine, and 404(b) evidence. I am going to propose Friday, August 21,

Q3JLChuC

2026 for that.

MR. SCHWARTZ:  Sorry, Judge.  Could we make the government's expert disclosures due then or before then as well?

THE COURT:  If any, yeah.  Yes.  Thank you.  And expert disclosures.

All right.  And the defendants' response to the request to charge, their own voir dire, their own request to charge, your own motions in limine, and your responses to the government's motions in limine, I will set that for September 15.  And then I will give the government an opportunity to respond to your motions, and that will be Wednesday, October 30 -- I'm sorry, September 30. September 30.

And then, Flo, I am going to need a date for a final pretrial conference.

THE DEPUTY CLERK:  How about Tuesday, October 13 at 11:00 a.m.?

THE COURT:  All right.  And when does the government propose to make its 3500 material available?

MR. FERGENSON:  Your Honor, maybe we could do that a month before trial, so -- I don't have the calendar pulled up in front of me.

THE COURT:  Let's just see.  So that would be September 19, which is a Saturday.  Let's make it September 18.

Q3JLChuC

Does that work for the government?

MR. FERGENSON:  Yes, your Honor.

THE COURT:  And I do want to make it clear here that 3500 material is not discovery material.  And I have had criminal defense counsel who from time to time say, I have many new ideas based on the 3500 material that I now feel I need to pursue, etc.  That's not the purpose of the 3500 disclosure in the main, and those sorts of applications do not succeed in moving a trial date.

So, that's accomplishing a lot.  I will ask the "what else" question of the government, and then of Mr. Schwartz.

MR. FERGENSON:  Thank you, your Honor.  On the pretrial schedule, the pretrial filing schedule, we would ask to incorporate two more dates.  One is for reciprocal defense expert disclosure date.

THE COURT:  That would be the date that their motions are due, their responses to your motions are due.  That's when the defendant is obligated to produce its expert material.

And, by the way, I am going to charge you with preparing a written order, sending it over to Mr. Schwartz, getting his comments, and then getting it to me.

MR. FERGENSON:  Very good, your Honor.  One thought on that, and maybe it's something we should just confer with defense on.  We may want to move those disclosure dates back so that the filing date could be, if there is going to be a

Q3JLChuC

Daubert motion to exclude, could include that as well.

THE COURT:  Well, that's fine.  That's fine with me. That makes sense, and it may make sense to Mr. Schwartz.

MR. FERGENSON:  OK.

THE COURT:  I mean, I have no sense, sitting where I sit, as to what these experts might be opining on.  So, I haven't a clue.

MR. FERGENSON:  OK.  Very good.

THE COURT:  So you and Mr. Schwartz should talk about that.

MR. FERGENSON:  We will, your Honor.

THE COURT:  And I am open to that.

And also, of course, counsel for Mr. Goodgame.  I apologize, Mr. Snyder, for not including you in my reference. Mr. Spencer.

MR. SPENCER:  Thank you, your Honor.

MR. FERGENSON:  And we will just discuss it with counsel, but we would ask for a deadline to disclose any advice-of-counsel defense because that can prompt -- if there is a waiver of the privilege or there is litigation about whether there is a waiver of the privilege of crime-fraud applies, that, you know, can prompt new discovery, and so we would want that, kind of, done earlier.

THE COURT:  I would require that two weeks before the government's motions are due.  So that's a date in August that

Q3JLChuC

you can calculate out for me.

MR. FERGENSON:  OK.  Just one moment, your Honor.

THE COURT:  Yes.

MR. FERGENSON:  Nothing further from the government aside from, you know, we would move to exclude time until --

THE COURT:  We will do that later.

MR. FERGENSON:  OK.  Fair enough.

THE COURT:  Mr. Schwartz?

MR. SCHWARTZ:  Nothing else on any of that, Judge.  We will talk to the government.  That makes sense.

On a totally separate note, just to give you a heads-up, you will get this afternoon a travel request on consent from Mr. Chu.

THE COURT:  OK.  Thank you.

And, Mr. Spencer, I don't mean to ignore you, and you have the floor for anything you would like to raise.

MR. SPENCER:  I appreciate it, your Honor.  I come from a big family.  I am used to being ignored.

I did appreciate Mr. Schwartz's comments, and I thought it captured the comments I was going to make.  We are concerned about getting discovery in an appropriate time.  And I will say, the government so far has given us certainly more than we could handle with the time we have had since the arraignment.  So we feel like it's going well, but we don't want to be caught unaware.

Q3JLChuC

So, I appreciate the Court's consideration.  I did just want to bookmark an opportunity to review the proposed order before it came back to you.  I think that's been done.

THE COURT:  Yes.

MR. SPENCER:  We are good.  Thank you, your Honor.

THE COURT:  Good.

I will hear the government's final motion.

MR. FERGENSON:  Yes, your Honor.  We would move to exclude time until October 19, when this is set for trial.  The interests of justice outweigh the interests of the public and others in a speedy trial to allow the parties to prepare for trial and discuss any potential pretrial resolutions.

MR. SCHWARTZ:  No objection.

MR. SPENCER:  No objection, your Honor.

THE COURT:  I find that the ends of justice will be served by granting a continuance to October 19, 2026, and that the need for a continuance outweighs the best interests of the public and the defendants in a speedy trial.

The reasons for my findings are that the time is necessary to enable the government to complete discovery, for defense counsel to review that discovery, to consult with their clients about the content of the discovery, or Defendants to make the motions which they have outlined in this conference today, for the defendant to respond -- for the government to respond, for the defendants to reply, for the various other

Q3JLChuC

pretrial submissions to be made, and for trial preparation. And, accordingly, the time between today and October 19, 2026 is excluded under the Speedy Trial Act.

            Anything further from the government?

            MR. FERGENSON:  No.  Thank you, your Honor.

            THE COURT:  Mr. Schwartz?

            MR. SCHWARTZ:  No.  Thank you, Judge.

            THE COURT:  Mr. Spencer?

            MR. SPENCER:  No.  Thank you, your Honor.

            THE COURT:  Thank you all very much.  We are adjourned.

            (Adjourned)