# EXHIBIT 25



MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 11, 2026

**BY EMAIL**

Micah Ferguson
Justin Rodriguez
United States Attorney's Office
26 Federal Plaza, 38th Floor
New York, New York 10278

>        Re:    ***United States v. Chu & Goodgame,***
>               **Case No. 25 Cr. 579 (PKC)**

Dear Counsel:

On behalf of Daniel Chu, and in accordance with Local Criminal Rule 16.1, we write in advance of a formal meet and confer regarding several issues detailed below pertaining to Rule 16 discovery, the government's *Brady* disclosures, and its ongoing use of the grand jury. In light of the pretrial motions deadline on May 20, 2026, we would appreciate a time to confer at your earliest convenience so that we can attempt to resolve these issues without court intervention. We understand that David Goodgame joins this request to meet and confer, and intends to participate in any such meeting.

### Background

Mr. Chu and Mr. Goodgame were indicted on December 15, 2025. Mr. Chu is charged in four counts: continuing financial crimes enterprise,. 18 U.S.C. § 225 (Count One); Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution, 18 U.S.C. § 1349 (Count Two); Bank Fraud, 18 U.S.C. § 1344 (Count Three); and Wire Fraud Affecting a Financial Institution, 18 U.S.C. § 1343 (Count Four). Trial in this case is scheduled for October 19, 2026. Mr. Chu and Mr. Goodgame's pretrial motions based on discovery produced prior to February 19 are due by May 20, 2026, approximately five months before trial commences.

To date, the production of discovery under Federal Rule of Criminal Procedure 16 remains ongoing and incomplete. On January 12, 2026, the parties jointly submitted, and the Court entered, a stipulated protective order governing discovery materials produced pursuant to Rule 16, 18 U.S.C. § 3500, and the government's disclosure obligations under *Brady* and *Giglio*. Since then, the government has produced over one million documents, as well as the full images of 10 employee laptops from Tricolor and, to Mr. Chu, full extractions of 10 of Mr. Chu's electronic devices seized by search warrant and the full reports of Mr. Chu's iCloud accounts. In total, these imaged devices constitute approximately 12.21 terabytes of data.

To date, and critically, the government has not completed its responsiveness reviews of the data on the majority of those devices and accounts as required by the search warrants. We have received only partial responsive sets of the iCloud accounts, on February 25 and March 12, 2026,

55 Hudson Yards, New York, NY 10001 | (t) 212.446.2300 | (f) 212.446.2350 | www.bsfllp.com



and a responsive set from Mr. Chu's MacBook.  The delta between the total data produced and the identified responsive material on the iCloud accounts and the MacBook is vast.  For instance, the MacBook contains 38.3 GB of data but the government only identified 133 responsive documents from both the MacBook and dchu@tricolor.com iCloud account.[1]  Likewise, although the government asserted nearly two months ago that the review of the iCloud accounts was ongoing, Mar. 19, 2026 Status Conf. Tr. at 4:3-22, to date, only a few hundred documents have been identified as responsive out of 3.72 TB of total data.  Based on these data sets, it seems probable that the identified responsive sets from Mr. Chu's remaining devices will similarly be drastically smaller than the full images, and as a result, that the full extractions are poor substitutes for the production of the actual Rule 16 material on the devices.

In addition to the remainder of the responsive data sets from the devices seized from Mr. Chu, Mr. Chu has not received any data from the cellphone seized from Mr. Goodgame at the time of his arrest.  As detailed below, these data sets are critical to Mr. Chu's ability to prepare his defense.  Moreover, there appear to be other categories of discovery directly relevant to the charges in the Indictment that have not been produced by the government, either because discovery has not been completed or because the evidence was not properly preserved.

Meanwhile, the government continues to produce voluminous discovery.  The government's most recent production of Rule 16 material came last Friday, May 8.  Because of the size of the production, we have not yet been able to upload it to our review platform, but based on the control numbers indicated in your cover letter, it appears to comprise more than one million additional pages or files.

### Demand for Rule 16 Discovery and *Brady* Disclosures

Mr. Chu requests that the remainder of Rule 16 discovery and any *Brady* materials in the government's possession, custody, or control be produced immediately, and no later than Friday, May 15, 2026.

*Rule 16 Discovery*

The requested Rule 16 discovery includes:

- The remainder of the data sets from Mr. Chu and Mr. Goodgame's devices that are responsive to the applicable search warrants, to include the devices identified as:
    - 1B1 (iPhone)
    - 1B2 (MacBook)
    - 1B4 (iPhone)
    - 1B5 (iPhone)
    - 1B7 (iPad)

---

[1]    These identified documents were produced together in what appear to be two co-mingled subfolders.



- o 1B15 (iPad)
- o 1B19 (iPad)
- o 1B21 (iPhone)

- The requested productions from the SEC, detailed in our email to you from more than a month ago, on April 8, 2026, including the following custodians: Alvarez Marsal, Barclays Capital, BlackRock, CBIZ, Daniel Chu, CRB Securities, Crowe LLP, Ernst & Young, Jerome Kollar, Kroll Bond Rating Agency, Andy Mata, Moody's Investors Service, S&P Global, and Ameryn Seibold.[2]

- The archived Tricolor email accounts for the following individuals: Jerry Kollar, Ameryn Seibold, David Goodgame, Andy Mata, Mauricio Delgado, Katie Kollar, Alex Velasquez, Jordan Easley, and Reed Crow. The emails contained on the laptops produced by the bankruptcy trustee to you do not contain all the emails that would have been preserved and maintained by Tricolor. For instance, Mr. Kollar's laptop contains no emails from 2018, the year the fraud allegedly began, even though we understand that Tricolor (or its IT vendor, Tekzenit) would have maintained archived email from that time period. Related to this request, we also seek any and all copies of Tricolor's data retention policies.

- Any remaining grand jury subpoena returns, including for new subpoenas issued and made returnable through today's date.

- Any statements by Mr. Chu in the government's possession, custody, or control, regardless of their source, which have not previously been produced, consistent with Federal Rule of Criminal Procedure 16(a)(1)(B).

In addition to these requests, Mr. Chu specifically requests that the government immediately produce any documents in its possession, custody, or control relating to the following:

- All documents and filing pertaining to, or previously stored in Tricolor's dealer management system, or "IDMS"—the software platform used to track Tricolor's vehicles and auto loans, from 2018 through the date of the Indictment. We are aware that while IDMS was licensed from a third party and managed by external IT contractors, numerous Tricolor employees had personal access to the software and could change the data within it. Without access to IDMS, the only discovery available concerning who accessed the software and potentially manipulated data comes from employees sending or locally saving borrowing base reports.

- All documents and files relating to paragraph 10 of the Indictment, which alleges that Mr. Chu "directed Kollar to create a fictitious portfolio company in Tricolor's dealer management system." We have not located any documents produced in discovery related

---

[2]    We note that the latest government production included files from CBIZ, Daniel Chu, and Kroll. If these documents are those produced to the SEC, please confirm that.



to this allegation, nor are we aware of the details, including the name, of such a fictitious company.

This immediate production is required for Mr. Chu to adequately prepare for trial, which is scheduled in approximately five months' time. As you are aware, the charges in this case involve an alleged long-running, sophisticated and factually complex fraud. But the discovery produced to date does not permit Mr. Chu to sufficiently prepare to defend against those charges, all of which he strenuously disputes. For example, the alleged fraud centers around manipulations of borrowing base reports. But the government has not produced in discovery key materials relating to those reports, including the IDMS system that generated them. This discovery is necessary to properly assess and investigate those allegations, including how the reports may have been manipulated, who had access to them, and what the underlying data actually shows.

Moreover, while Mr. Chu has actively engaged in reviewing the produced extractions of electronic devices, that review is necessarily (and significantly) handicapped by (i) the enormous volume of the underlying data and (ii) the government's failure to date to identify the actual Rule 16 material within the extractions. Put differently, the production of enormous amounts of electronic data from Mr. Chu's accounts has little bearing on Mr. Chu's ability to adequately prepare for trial when he has no way of knowing what, if any, evidence from those devices the government may rely on at trial. In the meantime, the defense is expending crucial time and resources attempting to identify relevant materials in the full images.

*Brady Materials*

Mr. Chu also requests that all material, exculpatory material in the government's possession, custody, or control be produced immediately. We are of course in receipt of the letter dated February 19, 2026 containing disclosures made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (the "*Brady* Letter"). Based on the disclosures therein, including but not limited to those relating to Jerry Kollar and Ameryn Seibold, as well as our review of the discovery produced to date, we have serious concerns that the government is in possession of further material, exculpatory information relating to the charged offenses. Indeed, given the indisputably critical significance of the anticipated testimony of Kollar and Seibold at trial, and the exculpatory statements of those witnesses disclosed in the *Brady* Letter, Mr. Chu requests that, at a minimum, the government provide the full 302s and underlying witness notes for the meetings with those witnesses included in the *Brady* Letter. *See Brady* Letter at 4-6 ███████████████ ███████████████████████████████████████████████ Mr. Chu further requests that the government disclose whether the statements by Kollar and Seibold in the *Brady* Letter, or any other statements from other witnesses set forth therein, were disclosed to the grand jury.

Furthermore, based on the disclosures in the government's *Brady* Letter, we request that certain allegations in the Indictment be withdrawn. The Indictment alleges that Mr. Chu "conspired to and did defraud . . . asset-backed securities investors of Tricolor . . . ." Indictment ¶ 1. However, the sole allegation related to securitizations fraud refers to communications between Goodgame and Seibold. *Id.* ¶ 15. The Indictment does not allege that Chu had any knowledge of



or involvement in fraud related to securitizations. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████ To the extent the government believes that this allegation is otherwise supported by materials produced in Rule 16 discovery, Mr. Chu is not aware of any and requests that the government immediately identify such relevant discovery. Barring the existence and identification of this evidence, the government must agree to withdraw this allegation.

### Request for a Bill of Particulars

Pursuant to Local Criminal Rule 16.1, Mr. Chu also requests to meet and confer regarding a bill of particulars with respect to Count One of the Indictment. Specifically, Mr. Chu requests that the government provide the following no later than May 15, 2026:

- The identities of each of the individuals who allegedly acted in concert to constitute the continuing financial crimes enterprise alleged in Count One of the Indictment, including the time periods when each such individual allegedly was a part of the enterprise.

- In connection in Count One, the makeup of the "continuing financial enterprise" that Mr. Chu is alleged to have "organized, managed, and supervised." Indictment ¶ 26. Specifically, Mr. Chu requests that the government clarify if the alleged "continuing financial enterprise" is Tricolor Holdings, LLC (and its affiliates)—in other words, the business itself—or the "multiple Tricolor executives" alleged to have engaged in fraud, or some other group or organization. *See* Indictment ¶¶ 1, 26.

- The identities of the "Lenders" and "special purpose vehicles" specified in the Indictment, including:

    o Lender-1, Lender-2, Lender-3, Lender-4, and Lender-5, Lender-6, Lender-7, Lender-8, and Lender-9;

    o SPV3, SPV4, SPV5, and SPV6.

- The identity of "Executive-1" in the Indictment. *See* Indictment ¶ 19.

- The identity of the "fictitious portfolio company." *See* Indictment ¶ 10.

- Each of the particular acts or occurrences alleged to make up the "series of violations" relevant to Count One of the Indictment. To the extent that the government intends to rely only on the alleged violations of Title 18, United States Code, Sections 1343 and 1344 identified in the charts in paragraphs 27 and 28, we request that you confirm that. *See* Indictment ¶ 26 ("the defendant committed violations of Title 18, United States Code, Sections 1343 and 1344, including violations one through ten set forth below").



- As relevant to Count One, the applicable time period and any and all payments or compensation that the government alleges constitute "$5,000,000 and more in gross receipts from [the enterprise] during a 24-month period." *See* Indictment ¶ 26. We note that the Indictment details certain compensation Mr. Chu received during the time he served as Chief Executive Officer of Tricolor at various points in 2023, 2024, and 2025, Indictment ¶ 25, but does not specify which period or periods, or which if any of that compensation, is alleged to be a gross receipt of the charged criminal enterprise.

### Use of the Grand Jury

Based both on representations you have previously made to counsel for Mr. Chu and the Court regarding the government's ongoing investigation, as well as our knowledge of continued grand jury process, we understand that the government is continuing to use the grand jury to investigate Mr. Chu. Further, you informed us back in January that the government intended to supersede to at least add additional charges against Mr. Chu, although the precise scope of any superseding indictment remains unknown; at the last conference, the government notably would not recommit to its prior statement that any superseding indictment would not encompass new or different conduct than that previously alleged.

Despite the fast-approaching trial date, no superseding indictment has been returned. As we have communicated previously, Mr. Chu is eager to face the charges against him at trial but the uncertainly surrounding the operative indictment for that trial creates significant impediments to the defense being able to adequately prepare on the Court's planned schedule.

Moreover, it appears that the government is improperly using grand jury process to continue to investigate the crimes already charged in the indictment and in preparation for trial, suggesting that the delay in superseding may be tactical. This is contrary to black letter law and the Justice Manual's provisions, which make clear that "the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted." Justice Manual 9-11:120; *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) ("The law is settled in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominant purpose of preparing an already pending indictment for trial.") (quoting *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26 (1985)).

As an example, Mr. Chu received notice from Box regarding a grand jury subpoena for his account returnable April 27, 2026.[3] That subpoena generally seeks ███████████████████

---

[3]    Mr. Chu has not yet reviewed any Rule 16 materials in connection with this subpoena, although the cover letter of the government's May 8 production indicates they may be included therein. In any event, Mr. Chu advises the government that he used his Box account in connection with his communications with legal counsel for the defense of this criminal case as well as other legal matters. Therefore, any productions made by Box pursuant to grand jury subpoena or other legal process must be reviewed by a privilege filter team and not be made immediately available to the prosecution team in this case.



████████████████████ The subpoena, or any other like it, does not comport with limitations on the use of the grand jury in indicted cases under Second Circuit precedent and the Justice Manual. *See, e.g., In re Grand Jury Subpoena Duces Tecum, Dated January 2, 1985,* 767 F.2d 26, 29-30 (2d Cir. 1985); Justice Manual 9-11:120 ("After indictment, the grand jury may be used *if its investigation is related to a superseding indictment of additional defendants or additional crimes* by an indicted defendant.") (emphasis added). Mr. Chu thereby requests that the government cease improperly employing the grand jury to investigate crimes that were charged in December of last year and that it confirm doing so to the defense.

\* \* \*

Mr. Chu requests to meet and confer with the government at your earliest convenience to address the foregoing issues.

Sincerely,

/s/_____
Matthew L. Schwartz

cc:    Arnold Spencer
       *Counsel to David Goodgame*