# EXHIBIT 27

# Spencer & Associates
## 5956 Sherry Lane, Suite 2000
## Dallas, Texas 75225

May 14, 2026

**BY EMAIL**

Justin Rodriguez
Micah Fergenson
United States Attorney's Office
Southern District of New York
26 Federal Plaza, 38th Floor
New York, NY 10278

**RE:**     **United States v. Chu & Goodgame (Case No. 25 CR. 579 (PKC))**

Dear Counsel,

On behalf of David Goodgame, and in accordance with Local Criminal Rule 16.1, we write to join in certain items raised in the May 11, 2026 letter from Daniel Chu's counsel (the "Chu Letter"), and to raise additional items related to Rule 16 discovery, the Government's *Brady* disclosures, and the use of grand jury proceedings to investigate crimes already charged. Mr. Goodgame beyond those identified in the Chu Letter, in advance of a formal meet and confer. We recognize some of these items have been addressed in the Government's correspondence dated May 13, 2026 (the "Government Response"). However, we note that a number of those issues remain open, particularly regarding *Brady* materials and discovery production, and those issues may significantly prejudice Mr. Goodgame's defense if not resolved. We hope to discuss and resolve these issues during the call scheduled for May 15, 2026.

**Overview**

Much of the background of this case is set out in the Chu Letter. As detailed in the Chu Letter, Mr. Chu and Mr. Goodgame were indicted on December 15, 2025. Trial in this matter is scheduled to begin on October 19, 2026, and the deadline for pre-trial motions based upon discovery produced prior to February 19, 2026 is May 20, 2026. The Indictment charges Mr. Goodgame with Conspiracy to Commit Bank Fraud and Wire Fraud Affecting a Financial Institution, 18 U.S.C. § 1349 (Count Two); Bank Fraud, 18 U.S.C. § 1344 (Count Three); and

Wire Fraud Affecting a Financial Institution, 18 U.S.C. § 1343 (Count Four).[1]  The Indictment is scant on detail supporting these charges as to Mr. Goodgame, and Mr. Goodgame requests much more detail in order to adequately develop his defense for trial.

Mr. Goodgame also notes that discovery in this matter is complex and involves the production of millions of documents from data forensically preserved by Tricolor and subsequently, the Bankruptcy Trustee.  The parties entered a stipulated protective order on January 12, 2026 regarding discovery materials in this matter under Rule 16, Rule 18, 18 U.S.C. § 3500, and the Government's *Brady* and *Giglio* obligations.  While the Government's review is ongoing, to date, substantial gaps in data produced for certain custodians, including Mr. Goodgame himself, appear in the Government's production set.  Some of these gaps may be attributable to how the data was preserved by Tricolor or the Trustee, and as outlined in this letter, Mr. Goodgame seeks to better understand these gaps if production of the missing information is not possible.

**Request for Bill of Particulars**

Pursuant to Federal Rule of Criminal Procedure 7(f) and Local Criminal Rule 16.1, Mr. Goodgame requests to meet and confer regarding a bill of particulars with respect to Counts Two, Three, and Four of the Indictment, as well as the forfeiture allegations.  Specifically, Mr. Goodgame requests that the government provide the following no later than **May 18, 2026:**

- **As to Count Two**, identify when, where, and how the government contends Mr. Goodgame knowingly joined the alleged conspiracy; the persons with whom he allegedly agreed; and the communications, meetings, documents, or acts the government contends show his knowing agreement. *See* Indictment at ¶¶ 29–32.

- **As to Count Two**, identify each object of the alleged conspiracy that the government contends Mr. Goodgame joined, including whether the government contends he agreed to commit bank fraud, wire fraud affecting a financial institution, or both.

- **As to Count Two**, identify each false or fraudulent representation, pretense, promise, or omission that the government contends Mr. Goodgame made, approved, caused, joined, or aided and abetted, including:
  - the date;
  - the speaker or sender;
  - the recipient;

---

[1] Paragraphs 1-24 of the Indictment contain numerous allegations against both Mr. Chu and Mr. Goodgame under the heading "Count One – Continuing Financial Crimes Enterprise."  Mr. Goodgame does not appear in the Statutory Allegations section in paragraphs 26-28 as being charged with Count One, and the Government has confirmed Mr. Goodgame is not charged in Count One.  Mr. Goodgame requests that the Government should clarify this further in the pleadings by retitling Paragraphs 1-24 as something other than "Count One", as it has caused considerable confusion in the media as to whether Mr. Goodgame is charged with Count One.

- o   the lender, SPV, warehouse facility, or financial institution involved;
- o   the document, communication, or transaction at issue; and
- o   the respect in which the statement was allegedly false when made.

- **As to Count Two**, identify each borrowing-base report, monthly servicer report, Excel file, collateral schedule, electronic file, email, telephone call, videoconference, or other communication that the government contends constituted an act in furtherance of the alleged conspiracy.

**As to Count Three**, identify each alleged execution of bank fraud that the government contends supports the charge, including the date, lender or financial institution, SPV or facility, document or communication, alleged false statement, and the manner in which Mr. Goodgame allegedly participated in, caused, approved, or aided and abetted that execution. *See* Indictment at ¶¶ 33–34.

- **As to Count Three**, identify the specific false statements allegedly made to Lender-4 and/or Lender-5 in connection with the SPV4 Warehouse, including the documents, reports, collateral schedules, borrowing-base submissions, or other communications containing those alleged false statements.

- **As to Count Three**, identify the specific loan accounts, VINs, collateral entries, vehicles, or other loan-level identifiers that the government contends were double-pledged, manipulated, delinquent, charged off, sold, or otherwise ineligible in connection with the charged bank-fraud count.

- **As to Count Four**, identify each wire communication the government contends supports the wire-fraud charge, including:
  - o   the approximate date;
  - o   the sender;
  - o   the recipient;
  - o   the medium;
  - o   the lender, SPV, warehouse facility, or financial institution involved;
  - o   the origin and destination of the communication;
  - o   the Southern District of New York nexus; and
  - o   the false statement or fraudulent purpose allegedly furthered by the wire. *See* Indictment at ¶¶ 35–36.

- **As to Count Four**, identify whether the alleged wire communication was an email, telephone call, videoconference, file transfer, electronic submission, or other form of interstate wire communication.

- **As to Counts Three and Four**, identify the acts by which the government contends Mr. Goodgame aided, abetted, counseled, commanded, induced, or procured any charged violation under 18 U.S.C. § 2. *See* Indictment at ¶¶ 34, 36.

- **As to Counts Two, Three, and Four**, identify the specific facts, communications, or acts, beyond the generalized allegations in the Indictment, by which the government contends Mr. Goodgame had knowledge of, approved, caused, or intentionally participated in the charged false statements, collateral manipulation, double-pledging, or lender communications.

- **As to Counts Two, Three, and Four**, identify each person the government contends acted with Mr. Goodgame in committing the charged conduct, including each individual's role, employer or affiliation, and relevant time period.

- Identify whether the government contends that Mr. Goodgame personally made any false statement to any lender or financial institution. If so, identify each such statement by date, recipient, medium, and substance.

- Identify whether the government contends that Mr. Goodgame personally transmitted, sent, directed, approved, or caused any wire communication charged in Count Four. If so, identify each such wire communication.

- Identify whether the government contends that Mr. Goodgame personally prepared, edited, reviewed, approved, or directed the preparation of any borrowing-base report, collateral schedule, servicer report, Excel file, or other lender submission alleged to be false.

- Identify whether the government contends that Mr. Goodgame's alleged criminal liability is based on direct participation, aiding and abetting, Pinkerton liability, willful blindness, conscious avoidance, or some other theory.

- **As to forfeiture**, identify the amount of proceeds the government contends Mr. Goodgame personally obtained, directly or indirectly; the property or transactions allegedly traceable to him; and the factual basis for any substitute-asset theory as applied to him. *See* Indictment at ¶¶ 37–38.

The requested particulars are necessary for Mr. Goodgame to understand the charges against him, prepare his defense, avoid unfair surprise at trial, and protect against double jeopardy. The Indictment charges a broad, multi-year alleged fraud involving multiple lenders, SPVs, warehouse facilities, borrowing-base submissions, collateral records, and alleged electronic communications. Despite this, the Indictment provides very little as to how Mr. Goodgame was involved in these activities other than to reference communications from Mr. Seibold. Without the requested particulars, Mr. Goodgame is left to defend against every possible lender submission, collateral entry, electronic communication, and internal Tricolor act over a period of years, without adequate notice of which specific acts the government contends constitute charged conduct as to him.

**<u>Demand for Rule 16 Discovery and *Brady* Disclosures</u>**

Mr. Goodgame requests that the remainder of Rule 16 discovery and any *Brady* materials in the Government's possession, custody, or control, be produced immediately, and by no later than May 18, 2026. Mr. Goodgame joins in the requests made in the Chu Letter, restated here for reference, and will participate in the discussion of these requests in the meet and confer scheduled for May 15, 2026. Mr. Goodgame also identifies the following specific items related to Mr. Goodgame in advance of the scheduled discussion on May 15, 2026:

- Similar to Mr. Chu's request, Mr. Goodgame requested certain custodians from the Securities and Exchange Commission's production approximately a month ago. We understand that the Government may have produced some of this in its May 8, 2026 production, and request that the Government identify which, if any, of these custodians and materials from the SEC are included in this production. The Government's May 13, 2026 letter suggests that production of these documents is ongoing; Mr. Goodgame requests that the Government provide more detail on this production, including approximate dates for the production.

- Mr. Goodgame understands from the Government Response that the Government does not control the production of documents from Tricolor or the Trustee. However, Mr. Goodgame reiterates the request made in the Chu Letter for archived Tricolor email accounts for the following individuals: Jerry Kollar, Ameryn Seibold, David Goodgame, Daniel Chu, Andy Mata, Mauricio Delgado, Katie Kollar, Alex Velasquez, Jordan Easley, and Reed Crow. Mr. Goodgame also requests the archived Tricolor email account for Mark Schmitz.

- Mr. Goodgame further requests forensic preservation data for the archived accounts produced by Tricolor and the Trustee, sufficient to identify when and how each account was preserved, the number of files preserved for each account, the methodology used to preserve the accounts, and how and where the data has since been preserved. Mr. Goodgame envisions that a production log or similar document could be provided that would address most, if not all, of these issues.

- Specifically, Mr. Goodgame notes in particular that the production of his own Tricolor email appears to be incomplete and potentially missing emails from 2021 and earlier. Production of these emails is critically important for trial. Mr. Goodgame would like specific confirmation of what has been produced to the Government by Tricolor for his Tricolor email, and then what has been provided by the Government to Mr. Goodgame for his own email account to date.

- Mr. Goodgame joins in the request for copies of Tricolor's data retention policies, and also requests any policies or procedures relevant to the forensic collection of data for this matter (or other related matters for which data was collected, such as the adversary proceeding).

- Any remaining grand jury subpoena returns, including for new subpoenas issued and made returnable through today's date. Mr. Goodgame is aware of the Government's position that the bar has not been met for these statements, and will discuss this with the Government in the meet and confer.

- Any statements by Mr. Goodgame in the Government's possession, custody, or control, regardless of their source, which have not been previously produced, consistent with Federal Rule of Criminal Procedure 16(a)(1)(B).

Mr. Goodgame also joins in the requests made for additional documents in the Chu Letter, as follows:

- All documents and filing pertaining to, or previously stored in Tricolor's dealer management system, known as "IDMS" – the software platform used to track Tricolor's vehicles and auto loans, from 2018 through the date of the Indictment. As stated in the Chu Letter, Mr. Goodgame is aware that virtually any employee with access to IDMS had the ability to modify data within IDMS. Mr. Goodgame notes that the Government's Response does not seem to fully address this issue with regards to determining which employees may have modified certain records within IDMS. More specifically, the Government identifies two spreadsheets from IDMS that have been previously produced, but fails to explain or identify how that production would satisfy the need to see who at Tricolor accessed and manipulated data in IDMS over time. Mr. Goodgame is aware that there may be limitations on the ability to obtain such data, and if that is the case, Mr. Goodgame would like the Government to confirm this and describe any such limitations.

- All documents and files relating to paragraph 10 of the Indictment, discussing the "fictitious portfolio company" created by Mr. Kollar. Mr. Goodgame appreciates the Government's Response identifying "Ganas Tricolor Repo" as the entity in question, but maintains his request for all documents and files related to Ganas Tricolor Repo.

### *Brady* **Materials**

Mr. Goodgame joins in Mr. Chu's request for the immediate production of all material, exculpatory material in the Government's possession, custody, and control. We are similarly in receipt of the Government's February 19, 2026 containing disclosures made pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) (the "*Brady* Letter"). Based upon the disclosures made therein,

including those made by Jerry Kollar and Ameryn Seibold, as well as our review of the discovery to date, Mr. Goodgame believes that the Government may still be in possession of further material exculpatory information relating to the charged offenses.  Beyond the statements described in the Chu Letter, Mr. Goodgame specifically draws attention to ████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████

Mr. Goodgame joins in Mr. Chu's requests for the full 302's and underlying witness notes for the witnesses referenced in the *Brady* Letter.  Mr. Goodgame emphasizes the critical significance of testimony by these witnesses at trial, including both Jerry Kollar and Ameryn Seibold, ████████████████████████████████████ Mr. Goodgame also joins in Mr. Chu's request for the Government to identify whether the exculpatory statements in the *Brady* Letter were provided to the grand jury.  Mr. Goodgame notes the Government's position on this as outlined in the Government Response, and will discuss this request further in the meet and confer.

## Use of Grand Jury

Mr. Goodgame generally joins in Mr. Chu's concerns regarding the Government's use of the grand jury in this matter to investigate new or additional claims against Mr. Goodgame, and similarly notes that the Government has made references to the possibility of a superseding indictment.  However, with five months to trial, no such superseding indictment has been filed to date.  As such, Mr. Goodgame is left with the difficult scenario of being forced to prepare for trial without knowing as to whether additional or new allegations will be filed against him.

Mr. Goodgame also joins in Mr. Chu's concerns that the Government may be using the grand jury process to continue investigating the crimes already charged in the Indictment.  Mr. Goodgame similarly references the provisions of the Justice Manual, which states that "the grand jury cannot be used solely to obtain additional evidence against a defendant who has already been indicted."  Similar to the subpoena to Box.com referenced in the Chu Letter, Mr. Goodgame received a subpoena to Dropbox.com for his own account records, dated April 13, 2026 and commanding a response or appearance by April 27, 2026.  The subpoena specifically seeks information from Mr. Goodgame's personal Dropbox account.  The subpoena is outside the limitations referenced above on grand jury material by the Justice Manual and Second Circuit.[2]

---

[2] *See* Justice Manual 9-11:120 (stating that the grand jury cannot be used solely obtain additional evidence against a defendant who has already been indicted); *see also United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) (echoing that the law has been settled that the Government may not use the grand jury process to obtain additional evidence for the sole purpose of preparing an already pending indictment for trial) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26 (1985)).

Mr. Goodgame therefore requests that the Government cease using the grand jury to investigate alleged crimes charged in the Indictment and that it confirms doing so to the defense.

Mr. Goodgame requests to meet and confer on the aforementioned issues at the Government's earliest convenience, and hopes that many of these issues can be resolved without the need for court intervention.

Sincerely,

*/s/ Thomas Dan Cushing*
Arnold A. Spencer and
Thomas (Dan) Cushing
Spencer & Associates
5956 Sherry Ln.
Dallas, TX 75225
(214) 358-8500 (office)
arnold@aspencerlaw.com
dan@aspencerlaw.com

*Counsel for David Goodgame*