# EXHIBIT 29

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| MICHELLE CHOW, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of MACH SPEED HOLDINGS, LLC, MACH SPEED TECHNOLOGIES, LLC, JLAB, LLC, and BEAR RIVER INTERNATIONAL, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>RICK BALDWIN, an individual; PEAG, LLC, a Delaware limited liability company; EAGLE PRIVATE CAPITAL, LLC, a Missouri limited liability company, CATALYST HOLDCO INVESTMENTS, LLC, a Texas limited liability company; BEAR RIVER HOLDINGS, LLC, a Texas limited liability company; TRANSITION CAPITAL PARTNERS, LLC, a Texas limited liability company; THE TCP GROUP, a Texas limited liability company; PETRA CAPITAL PARTNERS, LLC, a Georgia limited liability company; PETRA GROWTH FUND II, LP, a Delaware limited partnership; PETRA PARTNERS II, LLC, a Georgia limited liability company; KEVYN DEMARTINO, an individual; AARON WOMACK, an individual; ROBERT SMITH, an individual; JIM FIFE, an individual; WILLIAM "BILL" HOWELLS, an individual; WIN CRAMER, an individual; JOSH ROSENFELD, an individual; DOUG LANE, an individual; KEITH DRISCOLL, an individual; JASON FAUCETT, an individual; ROBERT NISTICO, an individual; LAWRENCE "LARRY" MONDRY, an individual; JEROME "JERRY" KOLLAR, an individual; and RANDY BARRON, an individual,<br><br>Defendants. | Case No. 17-3056 |

## Notice of Removal

Defendants Petra Capital Partners, LLC; Petra Growth Fund II, LP; Petra Partners II, LLC; Eagle Private Capital, LLC; and PEAG, LLC (collectively, "Movants") file this notice of removal under 28 U.S.C. §1452 and Fed. R. Bankr. P. 9027, and hereby remove the state court litigation captioned *Chow v. Baldwin, et. al.,* Case No. DC-17-13506, pending in the 192nd District Court of Dallas County, Texas (the "State Court Action"), to the United States District Court for the Northern District of Texas. Movants will also be filing a motion to transfer to the Eastern District of Texas, where the bankruptcy forming the basis of this removal is pending.

### I.   INTRODUCTION

On May 17, 2016, the United States Bankruptcy Court for the Eastern District of Texas administratively consolidated the bankruptcy proceedings for the affiliated debtors: Mach Speed Technologies, LLC (Bankr. No. 15-41919), JLab, LLC (Bankr. No. 15-41920), and Bear River International, LLC (Bankr. No. 15-41922). The bankruptcy proceedings are now jointly administered by the United States Bankruptcy Court for the Eastern District of Texas in case number 15-41918.

On September 29, 2017, Michelle Chow as Chapter 7 Trustee of the Consolidated Bankruptcy Estates of Mach Speed Holdings, LLC, Mach Speed Technologies, LLC, JLab, LLC, and Bear River International, LLC (the "Trustee") filed the State Court Action against Movants and other named defendants.

The Trustee alleges causes of action against Movants including claims for aiding and abetting breach of fiduciary duty; aiding and abetting breach of limited liability company agreements; transfers to hinder, delay, or defraud; fraudulent transfers not for reasonably equivalent value; and obligations incurred not for reasonably equivalent value.

Movants were served with the Trustee's Original Petition on October 12, 2017.

Movants file this notice of removal within the 30-day time period required by 28 U.S.C.

§1446(b)(1); *Bd. of Regents of Univ. of Tex. Sys. v. Nippon Tel. & Tel. Corp.*, 478 F.3d

274, 278 (5th Cir. 2007).

## II.    BASIS FOR REMOVAL

The statutory basis for removal of the State Court Action is grounded in 28 U.S.C.

§1452. Removal of Claims Related to Bankruptcy Cases, which provides:

> A party may remove any claim or cause of action in a civil action
> other than a proceeding before the United States Tax Court or a
> civil action by a governmental unit to enforce such governmental
> unit's police or regulatory power, to the district court for the
> district where such civil action is pending, if such district court
> has jurisdiction of such claim or cause of action under section
> 1334 of this title.

Section 1334, in turn, provides that "the district courts shall have original but not

exclusive jurisdiction of all civil proceedings arising under [the Bankruptcy Code], or

arising in or related to cases under [the Bankruptcy Code]. 28 U.S.C. §1334(b).[1]

FED. R. BANKR. P. 9027 provides the procedure for the removal of state court matters.

FED. R. BANKR. P. 9027 (a)(1) requires, *inter alia*, ". . . a short and plain statement of the

---

[1]    To address any issue that may be raised regarding the "rule of unanimity" required by 28 U.S.C. §1446(b)(2)(A), Movants submit that the consent of all defendants or the "rule of unanimity" is not applicable under 28 U.S.C. §1452. A majority of courts distinguish the language used in Section 1441, the general removal statute, from that used in Section 1452, the bankruptcy removal statute. Section 1441 authorizes removal by "the defendant or the defendants." In enacting Section 1452, Congress did not use that same language, but instead authorized removal of bankruptcy-related claims by "[a] party." Accordingly, the majority of courts have concluded that under the bankruptcy removal statute, any one party has the right to remove the state court action without the consent of the other parties. *See*, *Anstine & Musgrove, Inc. v. Calcasieu Refining Co.*, 436 B.R. 136 (D. Kan. 2010) (holding that unanimity was not required for removal of state court action under bankruptcy removal statute); *PDG Los Arcos, LLC v. Adams (In re Mortgages Ltd.)*, 427 B.R. 780, 789 (D. Ariz. 2010) (following the "weight of authority" in refusing to require unanimity); *Atlas v. Chrysler, L.L.C.*, 2009 WL 4782101 (S.D. Miss. Dec. 8, 2009) (holding that the "rule of unanimity" does not apply to removal under §1452).

facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action the proceeding is core or non-core and, if non-core, that the party filing the notice does or does not consent to entry of final orders or judgment by the bankruptcy judge . . ."

The claims alleged by the Trustee in the State Court Action are core under 28 U.S.C. §157(a)(2)(E), (H), and/or (O). Movants consent to the entry of final orders or judgment by the bankruptcy judge.

### III.    VENUE

Venue for this removal is proper in this district under 28 U.S.C. §1441(a) because the State Court Action has been pending in this district. However, Movants will be filing a motion to transfer venue to the Eastern District of Texas, where the bankruptcy forming the basis of this removal is pending.

### IV.    ADDITIONAL MATTERS

The following documents are attached to this notice of removal, in compliance with 28 U.S.C. §1446(a) and Local Rule 81.1:

1.  A completed civil cover sheet;

2.  A supplemental civil cover sheet;

3.  A notice of related case that complies with LR 3.3(a);

4.  Copies of the documents filed in the state court action and a copy of the state court docket sheet, with an index identifying all documents and the date each document was filed in state court; and

5.  A separately signed certificate of interested persons that complies with LR 3.1(c) or 3.2(e).

Defendants will promptly file a copy of this notice of removal with the clerk of the state

court where the suit has been pending.

## V.    JURY DEMAND

Plaintiff did demand a jury in the state-court suit.

Date: November 6, 2017                    Respectfully submitted,

                                          /s/ Todd Murray
                                          Marcus Helt, Bar No. 24052187
                                          Todd Murray, Bar No. 00794350
                                          Andrew A. Howell, Bar No. 24072818
                                          **GARDERE WYNNE SEWELL LLP**
                                          2021 McKinney Avenue, Suite 1600
                                          Dallas, TX 75201
                                          Telephone: 214.999.3000
                                          Facsimile: 214.999.4667
                                          mhelt@gardere.com
                                          tmurray@gardere.com
                                          ahowell@gardere.com

                                          **Counsel for Petra Capital Partners,
                                          LLC; Petra Growth Fund II, LP;
                                          Petra Partners II, LLC; Eagle Private
                                          Capital, LLC; and PEAG, LLC**

## Certificate of Service

   This is to certify that a true and correct copy of the foregoing document has been

forwarded by electronic filing on this 6th day of November, 2017 to the following

counsel of record:

| | |
|---|---|
| Jerry C. Alexander<br>Texas Bar No. 00993500<br>alexanderj@passmanjones.com<br>Christopher A. Robison<br>Texas Bar No. 24035720<br>robisonc@passmanjones.com<br>Kyle B. Mandeville<br>Texas Bar No. 24065669<br>mandevillek@passmanjones.com<br>**PASSMAN & JONES, A PROFESSIONAL CORPORATION**<br>1201 Elm Street, Suite 2500<br>Dallas, Texas 75270<br>Telephone:     (214) 742-2121<br>Telecopier:     (214) 748-7949 | Sean J. McCaffity<br>Texas Bar No. 24013122<br>smccaffity@textrial.com<br>Andrew Sommerman<br>Texas Bar No. 18842150<br>Andrew@textrial.com<br>**SOMMERMAN, MCCAFFITY & QUESADA, LLP**<br>3811 Turtle Creek Blvd., Suite 1400<br>Dallas, Texas<br>Telephone:     (214) 720-0720<br>Telecopier:     (214) 720-0184 |

/s/ Todd Murray

_____

Todd Murray

Gardere01 - 10748131v.2

JS 44  (Rev. 06/17)

## CIVIL COVER SHEET"

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as" provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the" purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)"*

### I. (a)  PLAINTIFFS

### DEFENDANTS"

**(b)**  County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant"
*(IN U.S. PLAINTIFF CASES ONLY)"*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED."

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)"*

### II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1    U.S. Government
Plaintiff

❏ 3    Federal Question
*(U.S. Government Not a Party)*

❏ 2    U.S. Government
Defendant

❏ 4    Diversity
*(Indicate Citizenship of Parties in Item III)*

### III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff"*
*(For Diversity Cases Only)*                               *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF" |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State" | ❏ 4 | ❏ 4" |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State" | ❏ 5 | ❏ 5" |
| Citizen or Subject of a Foreign Country" | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6" |

### IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions."

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES" |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act" |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury  - | | ❏ 423 Withdrawal | ❏ 376 Qui Tam (31 USC |
| ❏ 130 Miller Act | ❏ 315 Airplane Product | Product Liability | ❏ 690 Other | 28 USC 157 | 3729(a))" |
| ❏ 140 Negotiable Instrument | Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment" |
| ❏ 150 Recovery of Overpayment | ❏ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust" |
| & Enforcement of Judgment | Slander | Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking" |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' | Product Liability | | ❏ 830 Patent | ❏ 450 Commerce" |
| ❏ 152 Recovery of Defaulted | Liability | ❏ 368 Asbestos Personal | | ❏ 835 Patent - Abbreviated | ❏ 460 Deportation" |
| Student Loans | ❏ 340 Marine | Injury Product | | New Drug Application | ❏ 470 Racketeer Influenced and" |
| (Excludes Veterans) | ❏ 345 Marine Product | Liability | | ❏ 840 Trademark | Corrupt Organizations" |
| ❏ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit" |
| of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV" |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle | ❏ 371 Truth in Lending | Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/" |
| ❏ 190 Other Contract | Product Liability | ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | Exchange" |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal | Property Damage | Relations | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions" |
| ❏ 196 Franchise | Injury | ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts" |
| | ❏ 362 Personal Injury - | Product Liability | ❏ 751 Family and Medical | | ❏ 893 Environmental Matters" |
| | Medical Malpractice | | Leave Act | | ❏ 895 Freedom of Information" |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act" |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 896 Arbitration" |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | Income Security Act | or Defendant) | ❏ 899 Administrative Procedure" |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | Act/Review or Appeal of" |
| ❏ 240 Torts to Land | ❏ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision" |
| ❏ 245 Tort Product Liability | Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of" |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - | ❏ 535 Death Penalty | **IMMIGRATION** | | State Statutes" |
| | Employment | **Other:** | ❏ 462 Naturalization Application" | | |
| | ❏ 446 Amer. w/Disabilities - | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration" | | |
| | Other | ❏ 550 Civil Rights | Actions" | | |
| | ❏ 448 Education | ❏ 555 Prison Condition" | | | |
| | | ❏ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement" | | | |

### V.  ORIGIN *(Place an "X" in One Box Only)"*

❏ 1  Original"
Proceeding"

❏ 2  Removed from"
State Court"

❏ 3  Remanded from"
Appellate Court"

❏ 4  Reinstated or"
Reopened"

❏ 5  Transferred from"
Another District"
*(specify)"*

❏ 6  Multidistrict"
Litigation -"
Transfer"

❏ 8  Multidistrict"
Litigation -
Direct File"

### VI.  CAUSE OF ACTION'

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:"
"

Brief description of cause:"

### VII.  REQUESTED IN"
COMPLAINT:"

❏  CHECK IF THIS IS A **CLASS ACTION"**
UNDER RULE 23, F.R.Cv.P."

**DEMAND $**

CHECK YES only if demanded in complaint:"
**JURY DEMAND:**    ❏ Yes    ❏No"

### VIII.  RELATED CASE(S)"
IF ANY

*(See instructions):"*

JUDGE

DOCKET NUMBER"

DATE

SIGNATURE OF ATTORNEY OF RECORD"

**FOR OFFICE USE ONLY"**

RECEIPT #

AMOUNT

APPLYING IFP

JUDGE

MAG. JUDGE"

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

MICHELLE CHOW, Chapter 7 Trustee of the
Consolidated Bankruptcy Estates of MACH
SPEED HOLDINGS, LLC, MACH SPEED
TECHNOLOGIES, LLC, JLAB, LLC, and
BEAR RIVER INTERNATIONAL, LLC,

**Plaintiffs**,

RICK BALDWIN, an individual; PEAG, LLC,
a Delaware limited liability company; EAGLE
PRIVATE CAPITAL, LLC, a Missouri limited
liability company, CATALYST HOLDCO
INVESTMENTS, LLC, a Texas limited
liability company; BEAR RIVER
HOLDINGS, LLC, a Texas limited liability
company; TRANSITION CAPITAL
PARTNERS, LLC, a Texas limited liability
company; THE TCP GROUP, a Texas limited
liability company; PETRA CAPITAL
PARTNERS, LLC, a Georgia limited liability
company; PETRA GROWTH FUND II, LP, a
Delaware limited partnership; PETRA
PARTNERS II, LLC, a Georgia limited
liability company; KEVYN DEMARTINO, an
individual; AARON WOMACK, an
individual; ROBERT SMITH, an individual;
JIM FIFE, an individual; WILLIAM "BILL"
HOWELLS, an individual; WIN CRAMER, an
individual; JOSH ROSENFELD, an individual;
DOUG LANE, an individual; KEITH
DRISCOLL, an individual; JASON
FAUCETT, an individual; ROBERT
NISTICO, an individual; LAWRENCE
"LARRY" MONDRY, an individual;
JEROME "JERRY" KOLLAR, an individual;
and RANDY BARRON, an individual,

**Defendants**.

**Counsel for Plaintiff**

| | |
|---|---|
| Jerry C. Alexander | Sean J. McCaffity |
| Texas Bar No. 00993500 | Texas Bar No. 24013122 |
| alexanderj@passmanjones.com | smccaffity@textrial.com |
| Christopher A. Robison | Andrew Sommerman |
| Texas Bar No. 24035720 | Texas Bar No. 18842150 |
| robisonc@passmanjones.com | Andrew@textrial.com |
| Kyle B. Mandeville | **SOMMERMAN, MCCAFFITY & QUESADA, LLP** |
| Texas Bar No. 24065669 | 3811 Turtle Creek Blvd., Suite 1400 |
| mandevillek@passmanjones.com | Dallas, Texas |
| **PASSMAN & JONES, A PROFESSIONAL** | Telephone:       (214) 720-0720 |
| **CORPORATION** | Telecopier:       (214) 720-0184 |
| 1201 Elm Street, Suite 2500 | |
| Dallas, Texas 75270 | |
| Telephone:       (214) 742-2121 | |
| Telecopier:       (214) 748-7949 | |

**Counsel for Movants**

Marcus Helt, Bar No. 24052187
Todd Murray, Bar No. 00794350
Andrew A. Howell, Bar No. 24072818
**GARDERE WYNNE SEWELL LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667
mhelt@gardere.com
tmurray@gardere.com
ahowell@gardere.com

Supplemental Civil Cover Sheet
Page **1** of **4**

# Supplemental Civil Cover Sheet
# From State Court

This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.

1. **State Court Information:**

Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

| Court | Case Number |
|---|---|
| 192nd District Court, Dallas County | DC-17-13506 |
| | |
| | |

2. **Style of the Case:**

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code).

| | Attorney(s) |
|---|---|
| **Plaintiff** | |
| Michelle Chow, as the Chapter 7 Trustee for the administratively consolidated bankruptcy estates for Mach Speed Holdings, LLC, Mach Speed Technologies, LLC, JLab, LLC, and Bear River International, LLC | Jerry C. Alexander<br>Texas Bar No. 00993500<br>alexanderj@passmanjones.com<br>Christopher A. Robison<br>Texas Bar No. 24035720<br>robisonc@passmanjones.com<br>Kyle B. Mandeville<br>Texas Bar No. 24065669<br>mandevillek@passmanjones.com<br>**PASSMAN & JONES, A PROFESSIONAL CORPORATION**<br>1201 Elm Street, Suite 2500<br>Dallas, Texas 75270<br>Telephone:    (214) 742-2121<br>Telecopier:    (214) 748-7949<br><br>Sean J. McCaffity<br>Texas Bar No. 24013122<br>smccaffity@textrial.com |

Supplemental Civil Cover Sheet
Page **2** of **4**

|  |  |
|---|---|
|  | Andrew Sommerman<br>Texas Bar No. 18842150<br>Andrew@textrial.com<br>**SOMMERMAN, MCCAFFITY & QUESADA, LLP**<br>3811 Turtle Creek Blvd., Suite 1400<br>Dallas, Texas<br>Telephone:     (214) 720-0720<br>Telecopier:    (214) 720-0184 |
| **Defendants** ||
| Rick Baldwin |  |
| PEAG, LLC | Same as Eagle Private Capital, LLC |
| Eagle Private Capital, LLC | Marcus Helt, Bar No. 24052187<br>Todd Murray, Bar No. 00794350<br>Andrew A. Howell, Bar No. 24072818<br>**GARDERE WYNNE SEWELL LLP**<br>2021 McKinney Avenue, Suite 1600<br>Dallas, TX 75201<br>Telephone: 214.999.3000<br>Facsimile: 214.999.4667<br>mhelt@gardere.com<br>tmurray@gardere.com<br>ahowell@gardere.com |
| Catalyst Holdco Investments, LLC |  |
| Bear River Holdings, LLC |  |
| Transition Capital Partners, LLC |  |
| The TCP Group |  |
| Petra Capital Partners, LLC | Same as Eagle Private Capital, LLC |
| Petra Growth Fund II, LP | Same as Eagle Private Capital, LLC |
| Petra Partners II, LLC | Same as Eagle Private Capital, LLC |
| Kevyn DeMartino |  |
| Aaron Womack |  |
| Robert Smith |  |
| Jim Fife |  |
| William "Bill" Howells |  |
| Win Cramer |  |
| Josh Rosenfeld |  |
| Doug Lane |  |
| Keith Driscoll |  |
| Jason Faucett |  |
| Robert Nistico |  |
| Lawrence "Larry" Mondry |  |
| Jerome "Jerry" Kollar |  |
| Randy Barron |  |

Supplemental Civil Cover Sheet
Page **3** of **4**

3.    **Jury Demand:**

Was a Jury Demand made in State Court?            ☒Yes            ☐No

If "*Yes*," by which party and on what date?


 Plaintiffs_____            ___9/29/2017_____
Party                                                      Date

4.    **Answer:**

Was an Answer made in State Court?            ☐Yes            ☒No

If "*Yes*," by which party and on what date?


_____            _____
Party                                                      Date

5.    **Unserved Parties:**

The following parties have not been served at the time this case was removed:

| Party | Reason(s) for No Service |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

6.    **Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for
that change:

| Party | Reason |
|---|---|
|  |  |

Supplemental Civil Cover Sheet
Page **4** of **4**

7.   **Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| Party | Claim(s) |
|-------|----------|
| Plaintiff | fraudulent transfer/breach of fiduciary duties allegations |
| Movants | conduct was proper |

Gardere01 - 10749602v.1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

MICHELLE CHOW, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of MACH SPEED HOLDINGS, LLC, MACH SPEED TECHNOLOGIES, LLC, JLAB, LLC, and BEAR RIVER INTERNATIONAL, LLC,

Plaintiffs,

v.

RICK BALDWIN, an individual; PEAG, LLC, a Delaware limited liability company; EAGLE PRIVATE CAPITAL, LLC, a Missouri limited liability company, CATALYST HOLDCO INVESTMENTS, LLC, a Texas limited liability company; BEAR RIVER HOLDINGS, LLC, a Texas limited liability company; TRANSITION CAPITAL PARTNERS, LLC, a Texas limited liability company; THE TCP GROUP, a Texas limited liability company; PETRA CAPITAL PARTNERS, LLC, a Georgia limited liability company; PETRA GROWTH FUND II, LP, a Delaware limited partnership; PETRA PARTNERS II, LLC, a Georgia limited liability company; KEVYN DEMARTINO, an individual; AARON WOMACK, an individual; ROBERT SMITH, an individual; JIM FIFE, an individual; WILLIAM "BILL" HOWELLS, an individual; WIN CRAMER, an individual; JOSH ROSENFELD, an individual; DOUG LANE, an individual; KEITH DRISCOLL, an individual; JASON FAUCETT, an individual; ROBERT NISTICO, an individual; LAWRENCE "LARRY" MONDRY, an individual; JEROME "JERRY" KOLLAR, an individual; and RANDY BARRON, an individual,

Defendants.

Cause No. 17-3056

## <u>Notice of Related Case</u>

Related cases have been filed in the United States Bankruptcy Court for the Eastern

District of Texas, Sherman Division within the meaning of Local Rules 3.3(a). The related cases

are as follows:

- *In re Mach Speed Technologies, LLC*, Cause No. 15-41919, Judge Brenda T. Rhoades, pending;
- *In re JLab, LLC*, Cause No. 15-41920, Judge Brenda T. Rhoades, pending;
- *In re Bear River International, LLC*, Cause No. 15-41922, Judge Brenda T. Rhoades, pending.

These proceedings are now jointly administered by the United States Bankruptcy Court for the

Eastern District of Texas styled:  *In re: Mach Speed Holdings, LLC; Mach Speed Technologies,*

*LLC; JLab, LLC, and Bear River International, LLC*, Cause No. 15-41918.

Date: November 6, 2017

Respectfully submitted,

/s/ Todd Murray
Marcus Helt, Bar No. 24052187
Todd Murray, Bar No. 00794350
Andrew A. Howell, Bar No. 24072818
**GARDERE WYNNE SEWELL LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: 214.999.3000
Facsimile: 214.999.4667
mhelt@gardere.com
tmurray@gardere.com
ahowell@gardere.com

**Counsel for Petra Capital Partners,
LLC; Petra Growth Fund II, LP;
Petra Partners II, LLC; Eagle Private
Capital, LLC; and PEAG, LLC**

## Certificate of Service

This is to certify that a true and correct copy of the foregoing document has been forwarded by electronic filing on this 6th day of November, 2017 to the following counsel of record:

| | |
|---|---|
| Jerry C. Alexander<br>Texas Bar No. 00993500<br>alexanderj@passmanjones.com<br>Christopher A. Robison<br>Texas Bar No. 24035720<br>robisonc@passmanjones.com<br>Kyle B. Mandeville<br>Texas Bar No. 24065669<br>mandevillek@passmanjones.com<br>**PASSMAN & JONES, A PROFESSIONAL CORPORATION**<br>1201 Elm Street, Suite 2500<br>Dallas, Texas 75270<br>Telephone:     (214) 742-2121<br>Telecopier:     (214) 748-7949 | Sean J. McCaffity<br>Texas Bar No. 24013122<br>smccaffity@textrial.com<br>Andrew Sommerman<br>Texas Bar No. 18842150<br>Andrew@textrial.com<br>**SOMMERMAN, MCCAFFITY & QUESADA, LLP**<br>3811 Turtle Creek Blvd., Suite 1400<br>Dallas, Texas<br>Telephone:     (214) 720-0720<br>Telecopier:     (214) 720-0184 |

/s/ Todd Murray

_____

Todd Murray

Gardere01 - 10835263v.1

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

MICHELLE CHOW, Chapter 7 Trustee of the
Consolidated Bankruptcy Estates of MACH
SPEED HOLDINGS, LLC, MACH SPEED
TECHNOLOGIES, LLC, JLAB, LLC, and
BEAR RIVER INTERNATIONAL, LLC,

          Plaintiffs,

v.

RICK BALDWIN, an individual; et. al.

          Defendants.

Cause No. 17-3056

## Notice of Removal
## Index to State Court Filings

| Document | Attachment No. |
|---|---|
| Docket Sheet in State Action, printed on November 2, 2017 .............................. | 1 |
| Plaintiff's Original Petition and Jury Demand filed on September 29, 2017 .............................................................................................. | 2 |

Gardere01 - 10748593v.1

Notice of Removal Index to State Court Filings                                                 Page 1

## Case Information

DC-17-13506 | Michelle Chow, vs. RICK BALDWIN, et al

| Case Number | Court | Judicial Officer |
|---|---|---|
| DC-17-13506 | 192nd District Court | SMITH, CRAIG |
| **File Date** | **Case Type** | **Case Status** |
| 09/29/2017 | OTHER (CIVIL) | OPEN |

## Party

PLAINTIFF
Michelle Chow,

Active Attorneys▾

Lead Attorney
ALEXANDER,
JERRY CLEMET
Retained

Work Phone
214-742-2121

Fax Phone
214-748-7949

DEFENDANT
BALDWIN, RICK

Address
1909 WOODALL ROGERS FREEWAY, SUITE
757
DALLAS TX 75201

DEFENDANT
PEAG, LLC

Address
by serving its registered agent Corporation
Service Company
211 E. 7th Street, Suite 620
Austin TX 78701

DEFENDANT

EAGLE PRIVATE CAPITAL, LLC

Address
by serving its registered agent Charles B.
Dunklin
8144 Walnut Hill Lane, #1190
Dallas TX 75231

DEFENDANT

CATALYST HOLDCO INVESTMENTS, LLC

Address
by serving its registered agent Registered
Agents Inc
700 Lavaca Street, Ste 1401
Austin TX 78701

DEFENDANT

BEAR RIVER HOLDINGS, LLC

Address
by serving its registered Julie Harris
3102 Oak Lawn Avenue, Suite 530
Dallas TX 75219

DEFENDANT

TRANSITION CAPITAL PARTNERS, LLC

Address
by serving its registered agent Colin Patrick
1909 Woodall Rodgers Fwy, Ste 575,
Dallas TX 75201

DEFENDANT

THE TCP GROUP, LLC

Address
by serving its registered agent Colin Patrick
1909 Woodall Rodgers Fwy, Ste 575
Dallas TX 75201

DEFENDANT

PETRA CAPITAL PARTNERS, LLC

DEFENDANT

PETRA GROWTH FUND II, LP
Case 3:17-cv-03056-K    Document 1    Filed 11/06/17    Page 21 of 70    PageID 21

DEFENDANT

PETRA PARTNERS II, LLC

DEFENDANT

DEMARTINO, KEVYN

Address
1909 Woodall Rogers Freeway, Suite 757
Dallas TX 75201

DEFENDANT

WOMACK, AARON

Address
12645 Seaton Circle
Frisco TX 75033

DEFENDANT

SMITH, ROBERT

Address
3828 Bedford Avenue, Suite 101
Nashville TN 37215

DEFENDANT

FIFE, JIM

Address
5048 Rocky Ridge Road
Bentonville AR 72712

DEFENDANT

HOWELLS, WILLIAM "BILL"

Address
by serving his counsel, Thomas Taylor
4550 Post Oak Place Drive, Suite 241
Houston TX 77027

DEFENDANT

CRAMER, WIN

Address
6490 Seaport Place
Carlsbad CA 92011

---

DEFENDANT

ROSENFELD, JOSH

Address
3109 Knox St., #304
Dallas TX 75205

---

DEFENDANT

LANE, DOUG

Address
208 Beechwood Lane
Coppell TX 75019

---

DEFENDANT

DRISCOLL, KEITH

Address
1909 Woodall Rogers Freeway, Suite 757
Dallas TX 75201

---

DEFENDANT

FAUCETT, JASON

Address
1909 Woodall Rogers Freeway, Suite 757
Dallas TX 75201

---

DEFENDANT

NISTICO, ROBERT

Address
1314 E. Las Olas, Suite 221
Ft. Lauderdale FL 33301

---

DEFENDANT

MONDRY, LAWRENCE "LARRY"

Address
17532 Woods Edge Drive
Dallas TX 75287

Case 3:17-cv-03056-K    Document 1    Filed 11/06/17    Page 23 of 70    PageID 23

DEFENDANT
KOLAR, JEROME "JERRY"

Address
2368 San Andres Drive
Frisco TX 75033

DEFENDANT

BARRON, RANDY

Address
1121 Marley Way
Ada OK 74820

## Events and Hearings

09/29/2017 NEW CASE FILED (OCA) - CIVIL

09/29/2017 ORIGINAL PETITION ▾

POP

09/29/2017 CASE FILING COVER SHEET ▾

CCIS

09/29/2017 ISSUE CITATION

10/03/2017 JURY DEMAND ▾

JURY DEMAND

10/05/2017 NOTE - CLERKS ▾

Comment
Balance of $12 for Secretary of State, Atty is Sending Letter for
Payment - AR

10/05/2017 ISSUE CITATION COMM OF INS OR SOS

10/05/2017 CORRESPONDENCE - LETTER TO FILE ▾

10/05/2017 CITATION ISSUED ▾

DC1713506A - RICK BALDWIN.pdf

DC1713506B - PEAG LLC.pdf

DC1713506C - EAGLE PRIVATE CAPITAL.pdf

DC1713506D - CATALSYT HOLDCO.pdf

DC1713506E - BEAR RIVER HOLDINGS.pdf

DC1713506F - TRANSITION CAPITAL PARTNERS.pdf

DC1713506G - TCP GROUP.pdf

DC1713506H - KEVYN DEMARTINO.pdf

DC1713506I - AARON WOMACK.pdf

DC1713506J - ROBERT SMITH.pdf

DC1713506K - JIM FIFE.pdf

DC1713506L - WILLIAM HOWELLS.pdf

DC1713506M - WIN CRAMER.pdf

DC1713506N - JOSH ROSENFELD.pdf

DC1713506O - DOUG LANE.pdf

DC1713506P - KEITH DRISCOLL.pdf

DC1713506Q - JASON FAUCETT.pdf

DC1713506R - ROBERT NISTICO.pdf

DC1713506S -LAWRENCE MONDRY.pdf

DC1713506T - JEROME KOLAR.pdf

DC1713506U - RANDY BARRON.pdf

10/05/2017 CITATION ISSUED ▾

DC1713506V - PETRA CAPITAL PARTNERS - SOS.pdf

DC1713506W - PETRA GROWTH FUND - SOS.pdf

DC1713506X - PETRA PARTNERS - SOS.pdf

10/05/2017 CITATION ▾

Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Case 1:25-cr-00579-PKC    Document 44-29    Filed 05/20/26    Page 26 of 71

Case 3:17-cv-03056-K   Document 1   Filed 11/06/17   Page 25 of 70   PageID 25

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Actual Server
OUT OF COUNTY

Returned
10/27/2017
Anticipated Server
ESERVE

Anticipated Method
Actual Server
PRIVATE PROCESS SERVER

Returned
10/19/2017
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Case 1:25-cr-00579-PKC   Document 44-29   Filed 05/20/26   Page 27 of 71

Case 3:17-cv-03056-K   Document 1   Filed 11/06/17   Page 26 of 70   PageID 26

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Comment
ES/KW

10/05/2017 CITATION SOS/COI/COH/HAG ▾

Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Anticipated Server
ESERVE

Anticipated Method
Comment
SOS/ES/KW

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Aaron Womack.pdf

Comment
AARON WOMACK

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Doug Lane.pdf

Comment
DOUG LANE

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Jason Faucett.pdf

Comment
JASON FAUCETT

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Jerome Kollar.pdf

Comment
JEROME KOLLAR

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Jim Fife.pdf

Comment
JIM FIFE

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Keith Driscoll.pdf

Comment
KEITH DRISCOLL

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Kevyn DeMartino.pdf

Comment
KEVYN DEMARTINO

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Lawrence Mondry.pdf

Comment
LAWRENCE MONDRY

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Rick Baldwin.pdf

Comment
RICK BALDWIN

10/11/2017 WAIVER ▾

Waiver of Service of Process - Defendant Robert Nistico.pdf

Comment
ROBERT NISTICO

10/11/2017 WAIVER ▼

Waiver of Service of Process - Defendant TCP Group.pdf

Comment
TCP GROUP

10/11/2017 WAIVER ▼

Waiver of Service of Process - Defendant Transition Capital Partners, LLC.pdf

Comment
TRANSITION CAPITAL PARTNERS LLC

10/13/2017 WAIVER ▼

2017-10-13 Waiver of Service - Eagle Private Capital, LLC.pdf

Comment
WAIVER OF SERVICE - EAGLE PRIVATE CAPITAL, LLC

10/13/2017 WAIVER ▼

2017-10-13 Waiver of Service - PEAG, LLC.pdf

Comment
WAIVER OF SERVICE - PEAG, LLC

10/13/2017 WAIVER ▼

2017-10-13 Waiver of Service - Petra Capital Partners, LLC.pdf

Comment
WAIVER OF SERVICE - PETRA CAPITAL PARTNERS, LLC

10/13/2017 WAIVER ▼

2017-10-13 Waiver of Service - Petra Growth Fund II.pdf

Comment
WAIVER OF SERVICE - PETRA GROWTH FUND II

10/13/2017 WAIVER ▼

2017-10-13 Waiver of Service - Petra Partners II, LLC.pdf

Comment
WAIVER OF SERVICE - PETRA PARTNERS II, LLC

10/16/2017 WAIVER ▼

2017-10-16 - Waiver of Service of Process Win Cramer.pdf

Comment
WIN CRAMER

10/16/2017 WAIVER ▼

2017-10-16 - Waiver of Service William B. Howells.pdf

Comment
WILLIAM B. HOWELLS

10/16/2017 WAIVER ▼

2017-10-16 - Waiver of Service of Process - Robert Smith.pdf

Comment
ROBERT SMITH

10/19/2017 RETURN OF SERVICE ▼

BEAR RIVER HOLDINGS LLC RETURN.pdf

Comment
CIT EXEC 10/17/17 TO BEAR RIVER HOLDINGS LLC
RETURN

10/27/2017 RETURN OF SERVICE ▼

CITATION - CATALYST HOLDCO INVESTMENTS LLC

Comment
CITATION - CATALYST HOLDCO INVESTMENTS LLC

10/27/2017 WAIVER ▼

JOSH ROSENFIELD

Comment
OF SERVICE OF PROCESS - JOSH ROSENFIELD

## Financial

Michelle Chow,
| | |
|---|---|
| Total Financial Assessment | $536.00 |
| Total Payments and Credits | $536.00 |

| 10/3/2017 | Transaction | $484.00 |
|---|---|---|
| | Assessment | |

Case 1:25-cr-00579-PKC    Document 44-29    Filed 05/20/26    Page 31 of 71

Case 3:17-cv-03056-K    Document 1    Filed 11/06/17    Page 30 of 70    PageID 30

| | | | | |
|---|---|---|---|---|
| 10/3/2017 | CREDIT CARD - TEXFILE (DC) | Receipt # 64493-2017-DCLK | Michelle Chow, | $484.00 |
| 10/3/2017 | Transaction Assessment | | | $40.00 |
| 10/3/2017 | PAYMENT (CASE FEES) | Receipt # 64873-2017-DCLK | ALEXANDER, JERRY CLEMET | ($40.00) |
| 10/5/2017 | Transaction Assessment | | | $12.00 |
| 10/5/2017 | CREDIT CARD - TEXFILE (DC) | Receipt # 65582-2017-DCLK | Michelle Chow, | ($12.00) |

## Documents

POP

CCIS

JURY DEMAND

Letter

DC1713506A - RICK BALDWIN.pdf

DC1713506B - PEAG LLC.pdf

DC1713506C - EAGLE PRIVATE CAPITAL.pdf

DC1713506D - CATALSYT HOLDCO.pdf

DC1713506E - BEAR RIVER HOLDINGS.pdf

DC1713506F - TRANSITION CAPITAL PARTNERS.pdf

DC1713506G - TCP GROUP.pdf

DC1713506H - KEVYN DEMARTINO.pdf

DC1713506I - AARON WOMACK.pdf

DC1713506J - ROBERT SMITH.pdf

DC1713506K - JIM FIFE.pdf

DC1713506L - WILLIAM HOWELLS.pdf

DC1713506M - WIN CRAMER.pdf

DC1713506N - JOSH ROSENFELD.pdf

DC1713506O - DOUG LANE.pdf

DC1713506P - KEITH DRISCOLL.pdf

DC1713506Q - JASON FAUCETT.pdf

DC1713506R - ROBERT NISTICO.pdf

DC1713506S -LAWRENCE MONDRY.pdf

DC1713506T - JEROME KOLAR.pdf

DC1713506U - RANDY BARRON.pdf

DC1713506V - PETRA CAPITAL PARTNERS - SOS.pdf

DC1713506W - PETRA GROWTH FUND - SOS.pdf

DC1713506X - PETRA PARTNERS - SOS.pdf

Waiver of Service of Process - Defendant Aaron Womack.pdf

Waiver of Service of Process - Defendant Doug Lane.pdf

Waiver of Service of Process - Defendant Jason Faucett.pdf

Waiver of Service of Process - Defendant Jerome Kollar.pdf

Waiver of Service of Process - Defendant Jim Fife.pdf

Waiver of Service of Process - Defendant Keith Driscoll.pdf

Waiver of Service of Process - Defendant Kevyn DeMartino.pdf

Waiver of Service of Process - Defendant Lawrence Mondry.pdf

Waiver of Service of Process - Defendant Rick Baldwin.pdf

Waiver of Service of Process - Defendant Robert Nistico.pdf

Waiver of Service of Process - Defendant TCP Group.pdf

Waiver of Service of Process - Defendant Transition Capital Partners, LLC.pdf

2017-10-13 Waiver of Service - Eagle Private Capital, LLC.pdf

2017-10-13 Waiver of Service - PEAG, LLC.pdf

2017-10-13 Waiver of Service - Petra Capital Partners, LLC.pdf

2017-10-13 Waiver of Service - Petra Growth Fund II.pdf

2017-10-13 Waiver of Service - Petra Partners II, LLC.pdf

2017-10-16 - Waiver of Service of Process Win Cramer.pdf

2017-10-16 - Waiver of Service William B. Howells.pdf

2017-10-16 - Waiver of Service of Process - Robert Smith.pdf

BEAR RIVER HOLDINGS LLC RETURN.pdf

CITATION - CATALYST HOLDCO INVESTMENTS LLC

JOSH ROSENFIELD

FILED
DALLAS COUNTY
9/29/2017 3:50 PM
FELICIA PITRE
DISTRICT CLERK

Freeney Anita

CAUSE NO. _____

DC-17-13506

| | |
|---|---|
| MICHELLE CHOW, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of MACH SPEED HOLDINGS, LLC, MACH SPEED TECHNOLOGIES, LLC, JLAB, LLC, and BEAR RIVER INTERNATIONAL, LLC, **Plaintiffs,** | IN THE DISTRICT COURT |
| v. | |
| RICK BALDWIN, an individual; PEAG, LLC, a Delaware limited liability company; EAGLE PRIVATE CAPITAL, LLC, a Missouri limited liability company, CATALYST HOLDCO INVESTMENTS, LLC, a Texas limited liability company; BEAR RIVER HOLDINGS, LLC, a Texas limited liability company; TRANSITION CAPITAL PARTNERS, LLC, a Texas limited liability company; THE TCP GROUP, a Texas limited liability company; PETRA CAPITAL PARTNERS, LLC, a Georgia limited liability company; PETRA GROWTH FUND II, LP, a Delaware limited partnership; PETRA PARTNERS II, LLC, a Georgia limited liability company; KEVYN DEMARTINO, an individual; AARON WOMACK, an individual; ROBERT SMITH, an individual; JIM FIFE, an individual; WILLIAM "BILL" HOWELLS, an individual; WIN CRAMER, an individual; JOSH ROSENFELD, an individual; DOUG LANE, an individual; KEITH DRISCOLL, an individual; JASON FAUCETT, an individual; ROBERT NISTICO, an individual; LAWRENCE "LARRY" MONDRY, an individual; JEROME "JERRY" KOLLAR, an individual; and RANDY BARRON, an individual, **Defendants.** | K-192ND _____ JUDCIAL DISTRICT |
| | DALLAS COUNTY, TEXAS |

ORIGINAL PETITION

PAGE 1

## <u>PLAINTIFF'S ORIGINAL PETITION</u>

COMES NOW Plaintiff Michelle Chow, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of Mach Speed Holdings, LLC, Mach Speed Technologies, LLC, JLab, LLC, and Bear River International, LLC, and hereby sues Rick Baldwin, PEAG, LLC, Eagle Private Capital, LLC, Catalyst Holdco Investments, LLC, Bear River Holdings, LLC, Transition Capital Partners, LLC, The TCP Group, LLC, Petra Capital Partners, LLC, Petra Growth Fund II, LP, Petra Partners II, LLC, Kevyn DeMartino, Aaron Womack, Robert Smith, Jim Fife, William Howells, Win Cramer, Josh Rosenfeld, Doug Lane, Keith Driscoll, Jason Faucett, Robert Nistico, Lawrence Mondry, Jerome Kolar, and Randy Barron (collectively the "Defendants").

## I.    PARTIES

### A.    The Plaintiff.

1.    Michelle Chow is the duly appointed and authorized Chapter 7 Trustee of the Administratively Consolidated Bankruptcy Estates of Mach Speed Holdings, LLC ("MSH"), Mach Speed Technologies, LLC ("MST"), JLab, LLC ("JLab"), and Bear River International, LLC ("BRI") (collectively referred to as the "Debtors"). The Trustee brings this action for and in behalf of the Debtors' bankruptcy estates ("Estates") and as the representative of the Estates and asserts claims in her capacity as Trustee of the Estates and in any or all such capacities necessary to bring the claims and causes of action asserted herein (the "Claims"), whether as attorney in fact, a representative of the Estates, or otherwise. The "Trustee" means Michelle Chow as Chapter 7 Trustee of the Estates, as the representative of the Estates that are the holder of the Claims and in any other capacities necessary to bring the Claims.

### B.    The Defendants.

2.    Defendant Rick Baldwin ("***Baldwin***") is an individual who may be served with process at 1909 Woodall Rogers Freeway, Suite 757, Dallas, TX 75201.  Baldwin conducted

business in Dallas County, Texas, during the time periods relevant to Plaintiff's claims. At all relevant times herein Baldwin was a Manager and Vice President of MSH, a Delaware limited liability company that conducted business in Dallas County, Texas. Baldwin also served as a Vice President of MST, BRI, and JLab.

3.      Defendant PEAG, LLC ("*PEAG*") is a Delaware limited liability company that conducts business in Texas. PEAG may be served by serving its registered agent for service of process, Corporation Service Company D/B/A CSC-Lawyers Incorporating Service Company 211 E. 7th Street, Suite 620, Austin, Texas 78701.

4.      Defendant Eagle Private Capital, LLC ("*Eagle*") is a Missouri limited liability company that conducts business in Texas. Eagle may be served by serving its registered agent for service of process, Charles B. Dunklin, 8144 Walnut Hill Lane, #1190, Dallas, Texas 75231.

5.      Defendant Catalyst Holdco Investments, LLC ("*Catalyst*") is a Texas limited liability company that conducts business in Dallas County, Texas. Catalyst may be served by serving its registered agent for service of process, Registered Agents Inc., 700 Lavaca Street, Ste 1401, Austin, TX 78701.

6.      Defendant Bear River Holdings, LLC ("*Bear River Holdings*") is a Texas limited liability company that conducts business in Texas. BRH may be served by serving its registered agent for service of process, Julie Harris, 3102 Oak Lawn Avenue, Suite 530, Dallas, TX 75219.

7.      Defendant Transition Capital Partners, LLC ("*Transition Capital Partners*") is a Texas limited liability company that conducts business in Dallas County, Texas. TCP may be served by serving its registered agent for service of process, Colin Patrick, 1909 Woodall Rodgers Fwy, Ste 575, Dallas, TX 75201

8.      Defendant The TCP Group, LLC ("*TCPG*") is a Texas limited liability company

that conducts business in Dallas County, Texas. TCPG may be served by serving its registered agent for service of process, Colin Patrick, 1909 Woodall Rodgers Fwy, Ste 575, Dallas, TX 75201.[1]

9.      Defendant Petra Capital Partners, LLC (*"Petra Capital"*) is a Georgia limited liability company that conducts business in Texas. The Secretary of State of the State of Texas is an agent for service of process of Petra Capital since it does not maintain a regular place of business or designated agent for service of process in Texas.

10.     Defendant Petra Growth Fund II, LP (*"Petra II"*) is a Delaware limited partnership that conducts business in Texas. The Secretary of State of the State of Texas is an agent for service of process of Petra II since it does not maintain a regular place of business or designated agent for service of process in Texas.

11.     Defendant Petra Partners II, LLC (*"PP II"*) is a Georgia limited liability company that conducts business in Texas. The Secretary of State of the State of Texas is an agent for service of process of Petra II since it does not maintain a regular place of business or designated agent for service of process in Texas.[2]

12.     Defendant Kevyn DeMartino (*"DeMartino"*) is an individual who may be served with process at at 1909 Woodall Rogers Freeway, Suite 757, Dallas, TX 75201,

13.     Defendant Aaron Womack (*"Womack"*) is an individual who may be served with process at 12645 Seaton Circle, Frisco, TX 75033.

14.     Defendant Robert Smith (*"Smith"*) is an individual who may be served with process at 3828 Bedford Avenue, Suite 101, Nashville, TN 37215.

15.     Defendant Jim Fife (*"Fife"*) is an individual who may be served with process at

---

[1] Transition Capital Partners and TCPG are collectively referred to herein as "TCP."

[2] Petra Capital, Petra II, and PP II are collectively referred to herein as "Petra."

5048 Rocky Ridge Road, Bentonville, AR 72712.

16.     Defendant William "Bill" Howells ("*Howells*") is an individual who may be served with process by service upon his counsel, Thomas Taylor, The Taylor Law Offices, 4550 Post Oak Place Drive, Suite 241, Houston, Texas 77027.

17.     Defendant Win Cramer ("*Cramer*") is an individual who may be served with process at 6490 Seaport Place, Carlsbad, CA 92011.

18.     Defendant Josh Rosenfeld ("*Rosenfeld*") is an individual who may be served with process at 3109 Knox St., #304, Dallas, TX 75205.

19.     Defendant Doug Lane ("*Lane*") is an individual who may be served with process at 208 Beechwood Lane, Coppell, TX 75019.

20.     Defendant Keith Driscoll ("*Driscoll*") is an individual who may be served with process at 1909 Woodall Rogers Freeway, Suite 757, Dallas, TX 75201.

21.     Defendant Jason Faucett ("*Faucett*") is an individual who may be served with process at 1909 Woodall Rogers Freeway, Suite 757, Dallas, TX 75201.

22.     Defendant Robert Nistico ("*Nistico*") is an individual who may be served with process at 1314 E. Las Olas, Suite 221, Ft. Lauderdale, FL 33301.

23.     Defendant Lawrence "Larry" Mondry ("*Mondry*") is an individual who may be served with process at 17532 Woods Edge Drive, Dallas, TX 75287.

24.     Defendant Jerome "Jerry" Kolar ("*Kolar*") is an individual who may be served with process at 2368 San Andres Drive, Frisco, TX 75033.

25.     Defendant Randy Barron ("*Barron*") is an individual who may be served with process at 1121 Marley Way, Ada, OK 74820.

## II.     VENUE & JURISDICTION

26.     Venue is proper in Dallas County, Texas because Dallas County, Texas is where

all or a substantial part of the events or omissions giving rise to the claim occurred. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1). Dallas County is also proper because it is the county of at least one Defendant's residence or principal office. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(2), (3).

27.     Jurisdiction is proper in this Court because the amounts in controversy exceed the jurisdictional limits of this Court.

28.     All Defendants are either residents of Texas, have conducted business in Texas, committed torts in Texas, have contracted with Texas entities and residents, or otherwise have sufficient contacts with the State of Texas to have purposefully availed themselves of the laws of the State of Texas. The causes of action against the nonresident Defendants arise out of and relate to the nonresident Defendants' contacts with the State of Texas.

### III.    DISCOVERY CONTROL PLAN

29.     Plaintiff requests Level 3 discovery in this case as set forth by Rule 190.4 of the Texas Rules of Civil Procedure. The Trustee is seeking monetary relief over $1 million.

### IV.    FACTUAL BACKGROUND

**A.    TCP and Petra Acquire MST, JLab, and BRI in Three Separate Transactions Between January 2011 and June 2012.**

30.     The acquisitions of MST, JLab, and BRI were accomplished via three asset purchases that occurred between January 2011 through June 2012. MST, JLab, and BRI were each new and separate legal entities created by TCP and Petra to receive the assets being acquired.

31.     The new entities adopted the trade names of the selling entities (*e.g.*, MST acquired the Mach Speed assets, JLab acquired the JLab assets, etc.). MSH was created to be the parent of MST, JLab, and BRI, and MSH was the sole Member-Manager of each of those three entities. TCP and Petra controlled MST, JLab, and BRI by controlling a majority of the Board of Managers

of MSH.

32.     The Debtors' records indicate the MSH Board of Managers was comprised of Baldwin, Driscoll, Faucett, Howells, Womack, Smith, Nistico, Cramer, DeMartino, and Mondry (collectively referred to as "Managers").  The Debtors' records indicate the officers of MSH included Mondry (CEO), Kollar (CFO), DeMartino (CAO), Cramer (President of Marketing), Lane (COO), and Barron (VP) (collectively referred to as "Officers").

33.     Each of MST, JLab, and BRI had different business models, assets, capital requirements, and trade creditors.  Since they owed fiduciary duties to each company (MST, JLab, and BRI), MSH and its Managers and Officers (as well as those that served as an officer of each company, *e.g.* Baldwin) were conflicted *ab initio*.

### i.     Acquisition of MST.

34.     In approximately January 2011, TCP and Petra acquired the assets of MST's predecessor, Consumer Electronics Company ("CEC"), which was founded, owned, and operated by Defendant Howells.  CEC began as a manufacturer of high quality motherboards.  Howells eventually took advantage of CEC's technology skills and relationships with retailers and manufacturers and expanded its operations into the MP3 and tablet business to develop a lower cost alternative to Apple's iPod and iPad lines.

35.     In connection with this transaction, TCP and Petra valued the assets of MST at approximately $15.83 million.  A key aspect to the financing of operations of MST was a working capital credit facility.  TCP and Petra believed the size of the facility available to MST was directly proportionate to its ability to add customers and generate more revenue.  As a result, TCP and Petra planned to have a $15 - $20 million credit facility capable of expanding to $25 - $30 million, and higher in the future, in line with MST's growth.

36.    To complete the MST transaction, Petra invested $4,350,000 in the form of so-called "mezzanine debt," which investment was governed by a Loan and Security Agreement. The so-called mezzanine loan was secured by substantially all assets of MST and MSH, which was a holding company without assets that did not receive any loan proceeds.

37.    Defendants Baldwin (VP and Secretary) and Driscoll (Assistant Secretary) served as officers of MST, and Defendant Howells was in charge of running MST on a day-to-day basis.

### ii.    Acquisition of JLab.

38.    On or around January 1, 2012, TCP and Petra, through MSH, acquired the assets of JLab's predecessors, JLab Audio and JLab Global, which were owned and operated, at least in part, by Defendant Rosenfeld.  JLab's primary products were in-ear headphones or earbuds that are used with MP3/MP4 players, smartphones and tablets.

39.    At the time of the acquisition, TCP and Petra valued the assets of JLab at $7.5 million.  To complete the JLab acquisition, Petra contributed $1,835,166 via another "mezzanine loan."  Rather than using a new loan agreement for the JLab acquisition, Petra amended and restated its prior Loan and Security Agreement for the MST acquisition.  JLab was added as a "Borrower" along with MST and MSH, and JLab's assets were added as additional security for the entire amount of the debt, even though JLab did not receive any of the proceeds of the initial $4,350,000 "mezzanine loan."  Likewise, neither MST nor MSH received any of the second $1,835,166 "mezzanine loan," but they were nevertheless made jointly and severally liable for it.

40.    Petra also brought in another lender with which it had a pre-existing relationship, Defendant Eagle, to provide an additional $2,864,834 towards the acquisition of JLab. Petra acted as the "Administrative Agent" for Eagle, and Eagle's loan was governed by the same Loan and Security Agreement.

41. Thus, after the JLab acquisition, the full amount of the "mezzanine debt" was approximately $9,050,000, with MSH, MST, and JLab each being jointly and severally liable for the entire amount (even though MST and JLab only received a portion of the proceeds).

42. Defendants Baldwin (VP and Secretary) and Driscoll (Assistant Secretary) served as officers of JLab, and Defendant Cramer was responsible for running JLab on a day-to-day basis.

### iii. Acquisition of BRI.

43. In approximately June 2012, TCP and Petra, through MSH, acquired all of the assets of BRI's predecessor, also named Bear River International, which was primarily owned and operated by Defendants Womack and Fife. BRI designed, developed, manufactured and marketed consumer products into the retail markets, primarily consisting of pre-k children's toys, remote control vehicles and airsoft guns and accessories.

44. Defendants Womack (CFO), Baldwin (VP), and Fife (President) served as officers of BRI.

45. TCP and Petra valued BRI at $11.5 million at the time of the acquisition. To complete the acquisition, Petra and Eagle contributed an additional $4,500,000 in purported "mezzanine loans." Once again, rather than using a new loan agreement for the BRI acquisition, Petra amended and restated its prior Loan and Security Agreement. BRI was added as a "Borrower" along with MSH, MST and JLab, and BRI's assets were added as additional security for the entire amount of the debt. BRI did not receive any of the proceeds from the "mezzanine loans" set forth above (e.g., $4,350,000 and $1,835,166, and $2,864,834), but it was nevertheless made jointly and severally liable for them. Likewise, neither MSH, MST, nor JLab received any of the proceeds for the $4,500,000 "mezzanine loan," but they were made jointly liable for it.

46. In sum, after the BRI acquisition, the full amount of the "mezzanine debt" was

approximately $13,550,000, with all four Debtors – MSH, MST, JLab, and BRI – jointly and severally liable for the full amount, and with all four Debtors' assets securing the full amount.

47.     The Managers and Officers failed to make any effort to consider the propriety of obligating each of MST, JLab, and BRI for the entirety of the "mezzanine debt" and encumbering their assets with that debt, despite the fact that, in the aggregate, the debt exceeded the value of JLab and BRI's assets.

48.     Defendants Womack and Fife were responsible for running BRI on a day-to-day basis.

### iv.     Petra and Eagle's "Mezzanine Debt" Was Really Equity.

49.     True mezzanine debt is a hybrid between debt and equity. It can be considered a subordinated debt or a preferred equity instrument, carries an interest rate higher than secured debt, and is senior only to that of common shares or units. Petra and Eagle, with cooperation and consent from TCP and the Managers and Officers, structured their mezzanine debt to have it both ways.[3]

50.     What the Debtors, Petra, and Eagle referred to as "mezzanine debt" was not true mezzanine debt; it was senior to everything except the Debtors' bank revolver, it provided control over the Debtors via a seat on the Board of Managers (which is atypical of ordinary secured debt), it was secured by all assets of each of the Debtors (even though each was a distinct legal entity which received only a portion of the funds), and it provided an extraordinarily high return, typically associated with an equity investment.

51.     As set forth above, Petra and Eagle's mezzanine debt was secured on all of the assets of each of the Debtors, even though each company was a distinct legal entity and even though each company received only a portion of the funds. By securing their mezzanine debt in

---

[3] MSH's external auditors, the accounting firm Montgomery Coscia Greilich LLP, classified Petra's mezzanine debt as "related party notes payable."

this fashion, Petra and Eagle positioned themselves ahead of each of the Debtor's trade creditors (who actually provided value to the respective debtor with whom they dealt) to the full extent of its "mezzanine debt," in the event any Debtor's businesses failed.

52.     Petra and Eagle's so-called mezzanine debt carried a stated interest rate between 13% and 19%, and Petra and Eagle were also provided warrants for common units of MSH. The stated interest rate, plus the equity kicker, brought the anticipated return of the "mezzanine debt" to an excess of 30%. Thus, in the event of a successful exit, Petra and Eagle could share in the profits.

53.     In short, Petra and Eagle's so-called "mezzanine debt" provided them a substantial upside should the investment prosper and security in the event the investment failed.   Petra and Eagle also positioned themselves to exert control over the Debtors.  As a result, Petra and Eagle's "mezzanine debt" was truly equity, and should have been subordinate to the Debtors' trade creditors, not in front of them.

## B.     The Managers and Officers Never Recognized the Separateness of the Debtors and Instead Operated them as "Divisions" of Apollo Brands.

54.     MSH was the sole Member-Manager of its three subsidiaries: MST, JLab, and BRI. Thus, MSH owed fiduciary duties to MST, JLab, and BRI.  According to its Limited Liability Company Agreement, which was amended and restated from time-to-time, MSH was controlled by its Managers.  The Managers owed fiduciary duties to MSH.  TCP had the right to designate five Managers and Petra, Howells, Rosenfeld, and Womack each had the right to designate one Manager.

55.     The Managers of MSH were the individuals who controlled the operations of all four Debtors.  In some instances, the Managers of MSH also acted as Officers of one or more of the Debtors.

56. The Managers developed the trade name "Apollo Brands," which was used to collectively refer to all of the Debtors. The Managers thought of and referred to Apollo Brands as a single entity with three separate divisions – the Consumer Electronic Products division (MST tablets and media players), the Consumer Audio Products division (JLab earbuds), and the Outdoor and Recreational Products division (BRI). The Managers and Officers also commingled the Debtors' cash and other assets; in fact, Apollo Brands used one bank account for all disbursements.

57. In addition, in many instances, the Managers and Officers caused each of the Debtors to become jointly and severally liable for debt and encumbered each company's assets to secure the full amount of the debt. Despite the Managers and Officers disregard of the Debtors' separateness and their commingling of the Debtors' assets and certain liabilities, no formal changes were made to the Debtors' corporate structure. MSH, MST, JLab, and BRI remained separate legal entities and ostensibly had trade liabilities of their own. In light of the fact that the Managers and Officers burdened each of the Debtors with substantial debt that was not its own and that it did not benefit from, each company was insolvent by at least June 2012.

**C.** **In 2014, the Managers and Officers Recklessly Gambled All the Debtors' Assets on Expanding MST's Tablet Business Without Being Fully Informed of the Attendant Risks or Even Considering the Impact of their Decision on JLab and BRI.**

58. MST's tablet business was Apollo Brands' riskiest line of business. It required significantly more working capital relative to the businesses of JLab and BRI. For example, whereas JLab and BRI each needed a working capital credit facility in the $5 million range, MST needed a much larger working capital credit facility, in the tens of millions of dollars.

59. At the beginning of 2014, the Managers and Officers sought to grow MST's tablet business, particularly with a new 4G tablet, called the Trio AXS tablet, that was going to be sold in Walmart and on the QVC television network. There were serious risks attendant with both of

these new potential tablet programs. For example, there were no assurances Walmart would in fact purchase any tablets, much less enough tablets to make the program profitable or even break even. Walmart also could lower the price point of the tablet or unilaterally cancel the tablet program at any time. Moreover, MST was not prepared to take on a new tablet program. Product returns for 2013 were already higher than expected, the company did not have a sophisticated inventory management software system to manage and track its inventory, and no one at Apollo Brands had performed a market analysis for the new tablets; the Managers and Officers were relying on Walmart's projections and expectations.

60.     The new tablet program was also going to require substantial additional working capital for MST. Apollo Brands' revolving credit facility with Comerica was already maxed out at $32 million and could not be increased. Thus, a new tablet program was going to require finding a new working capital credit facility.

61.     Nevertheless, the Managers and Officers decided to ignore the serious and obvious risks and proceed with the new tablet program. Even worse, the Managers and Officers risked BRI and JLab (in addition to MST) for MST's new tablet program, even though BRI and JLab did not stand to benefit from it.

62.     Petra and Eagle and certain Managers gave Apollo Brands a bridge loan of $11.84 million to initially fund the new tablet programs until Apollo Brands secured its new working capital credit facility. After a few months of delay, in August 2014 the Debtors finally closed a new credit facility with Wells Fargo. The new credit facility allowed advances up to $50 million at any given time. MSH, MST, JLab, and BRI were all borrowers under the credit facility and were jointly and severally liable for all advances, irrespective of which entity actually received the working capital. Thus, if loan proceeds were disbursed to MST under the loan agreement, JLab

and BRI became liable for the advance, despite not receiving it or benefitting from it. Likewise, each company's assets were encumbered by the Wells Fargo credit facility.

63. The Managers and Officers failed to make any effort to consider the propriety of obligating JLab and BRI to the entirety of the Wells Fargo debt and encumbering their assets with that debt, despite the devastating effect that liability would have on JLab and BRI's ability to fund their own operations. With respect to JLab and BRI, the Managers and Officers all possessed information indicating: (1) prior to the Wells Fargo loan, JLab and BRI were each in need of their own working capital; (2) potential lenders would have viewed very negatively JLab and BRI's joint and several liability on the Wells Fargo loan, effectively precluding JLab and BRI's ability to obtain their own, separate and distinct lines of operating capital; (3) without their own separate and distinct lines of operating capital, JLab and BRI would be unable to fulfill their full potential; and (4) if the tablet program were to fail, Wells Fargo would look to the assets of all three operating companies, leaving JLab and BRI to suffer for the failure of MST. The Debtors' records show the Managers and Officers failed to weigh any of these considerations before obligating JLab and BRI to the entirety of the Wells Fargo loan.

64. The Managers and Officers likewise failed to obtain any independent outside legal or financial advisor regarding the effect or wisdom of making JLab and BRI jointly and severally liable on the entirety of the Wells Fargo debt.

65. In effect, the Managers and Officers gambled the assets of JLab and BRI on MST's new tablet program, such that JLab and BRI had everything to lose and nothing to gain. After being saddled with the entirety of the Wells Fargo debt, if the tablet program did not succeed, it was virtually inevitable that JLab and BRI would encounter severe liquidity problems and struggle to survive as going concerns, irrespective of the success of their own operations.

66.     The 4G Trio AXS tablet program with Wal-Mart was a disaster from the beginning. Wal-Mart stores were slow to place the product in in-store-displays, and Wal-Mart also determined the original $179 price point was too high for the Wal-Mart consumer and reduced the price point to $149. Apollo Brands was not prepared for such a price reduction and scrambled to re-source the manufacturing of the tablet. Apollo Brands was left with bad margins on a poor-quality tablet.

67.     The QVC tablet program also did not go as planned, due primarily to the Managers and Officers failing to inform themselves regarding the attendant risks. The Managers and Officers agreed to provide a substantial number of the 4G Trio AXS tablets (*e.g.*, 150,000) for QVC to offer for sale on Black Friday. The Managers and Officers hoped QVC would advertise and sell all of the 4G Trio AXS tablets provided, although it does not appear QVC had any obligations to do so. When QVC experienced lower interest in and higher customer returns for the 4G Trio AXS tablets, it predictably stopped advertising and attempting to sell the product.

68.     The complete failures of the 4G Trio AXS tablet programs with Wal-mart and QVC, especially in light of the significant investment Apollo Brands had made to fund those programs, was devastating for all three companies. Unfortunately for JLab and BRI, the Managers and Officers had tied their finances and fate to MST. In a year, two growing businesses were in financial distress due to MST's failed new tablet program.

**D.      In 2015, the Managers and Officers Implement their "Exit Strategy" – a Series of Sales to Insiders that Benefit Themselves to the Detriment of JLab, BRI, and their Trade Creditors.**

69.     At the beginning of 2015, instead of having excess cash to manage through the first part of the year, like normal, Apollo Brands (specifically MST) had returned inventory that needed liquidating and no excess liquidity. Wells Fargo was owed $48 million on its line of credit. The Managers prohibited any expenses being incurred without CEO or CFO approval and, at Wells

Fargo's insistence, decided to focus on cash flow, working capital and liquidity, rather than revenue. Though JLab and BRI were successful businesses at the time, they were necessarily included in Apollo Brands' new "strategy" due to their joint and several liability on the Wells Fargo debt. The Managers and Officers were considering a number of different scenarios to generate cash, including selling assets.

70.     In February 2015, the Managers voted to retain a restructuring firm to assist in a restructuring. The Managers ultimately decided to hire from within and retained Catalyst, a new venture founded by Defendant DeMartino, to be Apollo Brands "Chief Administrative Officer" or CAO. In this position, DeMartino and Catalyst effectively acted as the CEO of Apollo Brands; all positions reported to Catalyst (DeMartino), who in turn reported to the Board (a majority of which were his partners in TCP). Catalyst was paid $25,000 per month, including a $75,000 retainer. Catalyst also could earn a "success fee" if certain targets were hit during liquidation sales. The documents in the Trustee's possession offer no suggestion that the Mangers and Officers considered the propriety of engaging DeMartino and Catalyst to act on behalf of MST, JLab, and BRI, or whether each company might benefit from independent representation in light of its insolvency.

71.     The Managers and Officers prepared and considered various scenarios for which assets should be sold. First, the Managers and Officers decided to liquidate the assets of MST's tablet business. In April 2015, the Managers and Officers sold MST's remaining assets to Defendant Howells' new entity, Inspire Technology Group, for $1,183,000, of which $250,000 was a forgiveness of an alleged debt owed to Howells. Howells did not assume MST's accounts payable. The only valuation, appraisal, or fairness opinion obtained by the Managers and Officers was for MST's intellectual property.

72.     Around the same time, the Managers and Officers sold the BRI business to a newco called Bear River Holdings, which is owned and controlled by Catalyst, Womack and Fife. The Managers and Officers had previously projected selling BRI for $8 million, but Catalyst, Womack, and Fife's new business paid a friendly purchase price of $1,600,000. As with the MST transaction, Catalyst, Womack, and Fife did not assume BRI's accounts payable, and the only valuation, appraisal, or fairness opinion obtained by the Managers and Officers was for BRI's intellectual property. Thus, BRI and its creditors bore the ultimate burden of the failure of MST's tablet business.

73.     JLab, a profitable business that the Officers and Managers expected was worth at least $25 million, remained for a few months, but it was saddled with a significant amount of debt that was not even its own – *i.e.*, the obligations of MST and BRI that had not been assumed in the sales of those businesses. The Wells Fargo line of credit had been substantially paid down, and by June 2015 Wells Fargo was only owed approximately $2.5 million. There was almost $25 million of unsecured insider "debt" that was largely attributable to entities other than JLab – *e.g.*, the acquisition of MST, the acquisition of BRI, and MST's failed tablet programs. Vendors of MST were starting to file suit and would eventually look to JLab for payment.

74.     Rather continuing to operate and grow JLab or selling it for maximum value – JLab had previously been valued at $25 million, with an upside scenario of $30 million – Petra, Eagle and Catalyst decided to take JLab for themselves with the help of the Managers and Officers (*e.g.* Messrs. Baldwin, Cramer, etc.), who stood to personally benefit from the transaction.

75.     In late July or early August, 2015, Petra and Eagle began making arrangements to form a "newco" consisting of the assets and employees of JLab, but without JLab's attendant trade creditor liabilities. They formed PEAG, which is owned and managed by Petra, Eagle, and

Catalyst. They also recruited Win Cramer, the current CEO of PEAG, to work for PEAG while he was still a Manager and Officer of the Debtors. Petra even prepared various forecasts or pro formas showing its intent to wipe out JLab's trade creditors (see spreadsheet entitled "*Apollo Exit Scenario – No AP*") and preserve JLab's upside for themselves.

76.    To accomplish their plan, Petra and Eagle "foreclosed" on their so-called mezzanine debt, which at this time was up to $18.5 million, and feigned an auction of JLab, depriving the company of any real chance of realizing its true value (which, again, was at least $25 million according to the Managers' and Officers' own documents).

77.    In actuality, Petra and Eagle's "lien" was not foreclosed, and no auction ever took place. Instead, the Managers and Officers agreed to transfer JLab's assets to a new entity, Defendant PEAG, for effectively no consideration. The Debtors, Petra, and PEAG entered into a "Foreclosure and Sale Agreement" which set forth the terms by which PEAG was acquiring JLab's assets.

78.    The Foreclosure and Sale Agreement also provided for PEAG to assume the Debtors' obligations under Petra and Eagle's Loan and Security Agreement and certain other liabilities necessary to continue JLab's business.[4]    Concurrent with the execution of the Foreclosure and Sale Agreement, PEAG entered a new Loan and Security Agreement with Petra, Eagle, and TCP dated August 6, 2015. Petra has filed a UCC financing statement that covers all of PEAG's assets. The continued existence of Petra's so-called "secured, mezzanine debt" shows there was no "foreclosure" of Petra and Eagle's "lien."

79.    Petra, Eagle and Catalyst continue to profitably operate JLab's business through

---

[4] The Foreclosure and Sale Agreement also contained a merger clause which provided that all prior agreements and understandings with respect to the subject matter of the Foreclosure and Sale Agreement (*e.g.*, the Petra and Eagle Loan and Security Agreement) were superseded by the Foreclosure and Sale Agreement.

PEAG. Petra and Eagle even receive interest payments in excess of $100,000/month from PEAG; those funds rightfully belong to JLab. JLab's business is continuing to grow, and Petra, Eagle, and Catalyst plan to unjustly enrich themselves from a sale of PEAG in the near future.

## V.     CAUSES OF ACTION

80.     The Trustee hereby sues Defendants for each of the following claims and causes of action in Counts 1 – 17.

### COUNT 1: BREACH OF FIDUCIARY DUTY

81.     The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

82.     The Managers and Officers owed fiduciary duties to the Debtors, including the duties of care, good faith, and loyalty. The Managers and Officers breached their fiduciary duties to the Debtors, including but not limited to the duties of care, good faith, and loyalty by, among other things:

a.     Disregarding the separateness of the Debtors;

b.     Encumbering JLab and BRI, and their assets, with debt they received no benefit from;

c.     Committing to new capital-intensive tablet programs with Walmart and QVC without informing themselves of the risks attendant with such programs;

d.     Effectively gambling the assets of BRI and JLab on the MST tablets program;

e.     Hiring an insider, Kevyn DeMartino and Catalyst, as CAO;

f.     Selling BRI to insiders, Womak, Fife, and Catalyst, for below fair value; and

g.     Selling JLab to Petra, Eagle, and Catalyst, for below fair value.

83.     The above-referenced acts, errors and omissions of the Managers and Officers were the proximate cause of damages to the Debtors and its creditors. The Plaintiff hereby sues the

ORIGINAL PETITION                                                                                          PAGE 19

Managers and Officers to recover said damages, for a constructive trust over the assets transferred, for rescission of Petra and Eagle's so-called mezzanine debt and the sales of BRI and JLab, and for disgorgement of any profits the Managers and Officers realized on account of the above-referenced acts, errors and omissions.

## COUNT 2:  BREACH OF TRUST FUND DUTIES

84.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

85.    While insolvent, the Managers and Officers became obligated as trustees to safeguard the Debtors' assets for the benefit of its creditors.

86.    As trustees, the Managers and Officers owed fiduciary duties to the Debtors' creditors not to divest or dissipate or manage assets necessary to satisfy the claims of the creditors. Managers and Officers violated those fiduciary duties by, among other things:

a.    Disregarding the separateness of the Debtors;

b.    Encumbering JLab and BRI, and their assets, with debt they received no benefit from;

c.    Committing to new capital-intensive tablet programs with Walmart and QVC without informing themselves of the risks attendant with such programs;

d.    Hiring an insider, Kevyn DeMartino and Catalyst, as CAO;

e.    Selling BRI to insiders, Womak, Fife, and Catalyst, for below fair value; and

f.    Selling JLab to Petra, Eagle, and Catalyst, for below fair value.

87.    The Managers and Officers committed the foregoing actions and inactions recklessly and with conscious disregard of their duties to the Debtors and clearly favored themselves and others over the Debtors and their creditors.  Considering the circumstances known to the Managers and Officers, their conduct involves a gross deviation from the standard of conduct

ORIGINAL PETITION                                                                    PAGE 20

that a law-abiding person would observe in their situation.

88.     The above-referenced acts, errors and omissions of the Managers and Officers were the proximate cause of damages to the Debtors and thier creditors. The Plaintiff hereby sues the Managers and Officers to recover said damages, for a constructive trust over the assets transferred, for rescission of Petra and Eagle's so-called mezzanine debt and the sales of BRI and JLab, and for disgorgement of any profits the Managers and Officers realized on account of the above-referenced acts, errors and omissions.

## COUNT 3: AIDING & ABETTING BREACH OF FIDUCIARY DUTY

89.     The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

90.     As discussed in Counts 1 and 2 above, the Managers and Officers owed fiduciary duties to the Debtors, including the duties of care, loyalty, and good faith.

91.     In addition, or in alternative, to breaching their fiduciary duties to the Debtors, the Managers and Officers aided and abetted each of the other's breach of his fiduciary duties to the Debtors, as set forth above; thus, the Managers and Officers are jointly liable for each of the other's breach of his/its fiduciary duties.

92.     In addition, Defendants Petra, Catalyst, Eagle, TCP, PEAG, and Bear River Holdings aided and abetted the Managers and Officers in connection with the breaching of their fiduciary duties to the Debtors, as set forth above.

93.     As a result, they too are jointly liable for the Managers and Officers' breach of their fiduciary duties.

## COUNT 4: NEGLIGENCE, GROSS NEGLIGENCE AND WASTE

94.     The Trustee repeats and realleges the allegations set forth in all preceding

paragraphs of this Petition, as if fully set forth herein.

95.    As set forth in further detail above, the Managers and Officers committed the following actions in connection with their management of the Debtors:

      a.    Disregarding the separateness of the Debtors;

      b.    Encumbering JLab and BRI, and their assets, with debt they received no benefit from;

      c.    Committing to new capital-intensive tablet programs with Walmart and QVC without informing themselves of the risks attendant with such programs;

      d.    Hiring an insider, Kevyn DeMartino and Catalyst, as CAO;

      e.    Selling BRI to insiders, Womak, Fife, and Catalyst, for below fair value; and

      f.    Selling JLab to Petra, Eagle, and Catalyst, for below fair value

96.    The Managers and Officers did not consider or exercise any real business judgment with respect to the to these actions. The Managers and Officers' actions not only constitute waste, but also negligence and gross negligence. The Managers and Officers acted with conscious indifference to their corporate responsibilities to the Debtors and their creditors, instead choosing a course of action that benefitted themselves and their affiliates – *i.e.*, TCP, Petra, Eagle, Catalyst, Bear River Holdings, and PEAG.

97.    These acts caused substantial damages to the Debtors and their creditors for which the Trustee hereby sues.

## COUNT 5: BREACH OF LIMITED LIABILITY COMPANY AGREEMENTS

98.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

99.    The Debtors were limited liability companies and each Debtor had its own Company Agreement that set forth the terms by which the company would be managed.

100.    The Company Agreements for MST, JLab, and BRI each provided that MSH, as the sole Member, would manage the company.  The Company Agreements for MST, JLab, and BRI also afforded the sole Member, MSH, the right to appoint one or more officers of the company.

101.    The Managers of MSH were responsible for the operation and management of the business of MSH and for the implementation of all acts and actions of the company and to perform such duties and possess all rights and powers generally conferred by applicable law.

102.    As to the liability of the Managers, the MSH Company Agreement stated as follows: "Each Manager shall perform his/her duties under this Agreement in good faith, with ordinary prudence and in a manner reasonable under the circumstances in light of its duties to the Company and the holders of Units."

103.    The Managers and Officers breached the Debtors' Company Agreements by:

    a.    Disregarding the separateness of the Debtors;

    b.    Encumbering JLab and BRI, and their assets, with debt they received no benefit from;

    c.    Committing to new capital-intensive tablet programs with Walmart and QVC without informing themselves of the risks attendant with such programs;

    d.    Hiring an insider, Kevyn DeMartino and Catalyst, as CAO;

    e.    Selling BRI to insiders, Womak, Fife, and Catalyst, for below fair value; and

    f.    Selling JLab to Petra, Eagle, and Catalyst, for below fair value.

104.    The Debtors suffered actual damage or loss on account of this conduct by the Managers and Officers, and the Trustee hereby sues the Managers and Officers for such actual damages, as well as any profits the Managers and Officers realized on account of such conduct.

## COUNT 6:  AIDING AND ABETTING BREACH OF
## LIMITED LIABILITY COMPANY AGREEMENTS

105.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

106.    The Managers and Officers breached the Debtors' Company Agreement for the reasons set forth in Count 5 above.

107.    In addition to breaching the Company Agreements of the Debtors, the Managers and Officers aided and abetted each of the other's breach of said Company Agreements, as set forth above; thus, the Managers and Officers are jointly liable for each of the other's breaches of the Debtors' Company Agreements.

108.    In addition, Defendants Petra, Catalyst, Eagle, TCP, PEAG, and Bear River Holdings aided and abetted and benefited from the Managers and Officers breaching of the Debtors' Company Agreements, as set forth above.

109.    As a result, they too are jointly liable for the Managers and Officers' breach of their fiduciary duties.

110.    As a result of these actions, the Debtors suffered damages, and the Defendants are each joint and severally liable for all acts done by any of them in furtherance of the unlawful combination.

## COUNT 7:  TRANSFERS TO HINDER, DELAY OR DEFRAUD
## (TEX. BUS. & COM. CODE § 24.001 et seq.)

111.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

112.    The Debtors had their principal place of business in Texas.  Within four years prior to the filing of the Debtors' bankruptcy cases, the Managers and Officers and Defendants Petra, Catalyst, Eagle, and TCP participated in, facilitated, and benefited from the transfers of interests

of the Debtors in property in the form of the BRI and JLab's assets to Bear River Holdings and PEAG, respectively, with actual intent to hinder, delay, or defraud the Debtors' trade creditors.

113.    Numerous "badges of fraud" surround the transfers of the BRI and JLab's assets, including: (1) the Debtors received no or grossly insufficient consideration for or benefit from said transfers; (2) the transfers were made to benefit insiders and related entities; (3) the transfers were facilitated and caused by insiders of the Debtors; (4) without the transfers, the Debtors could have continued operating BRI and JLab; (5) the transfers of BRI and JLab's assets involved a substantial amount of the Debtors' assets; (6) the transfers were made without seeking and/or following the advice of independent, disinterested professionals; (7) the transfers were made without input from the Debtors' trade creditors; and (8) Petra, TCP, Eagle, Womack, Fife, Cramer and Catalyst were present on both sides of the transactions.

114.    There are unsecured creditors of the Debtors whose claims against the Debtors arose before or within a reasonable time after the transfer was made or the obligation was incurred, who could avoid the transfer or obligation under applicable state law.    Plaintiff hereby sues Defendants, pursuant to the Texas Uniform Fraudulent Transfer Act – TEX. BUS. & COM. CODE § 24.001 *et seq.*, for the value of the transfers made or obligations incurred.

### COUNT 8: FRAUDULENT TRANSFERS NOT FOR REASONABLY EQUIVALENT VALUE (TEX. BUS. & COM. CODE § 24.001 et seq.)

115.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

116.    The Debtors had their principal place of business in Texas.    Within four years prior to the filing of the bankruptcy case, the Managers and Officers and Defendants Petra, Catalyst, Eagle, and TCP, participated in transfers of interests of the Debtors in property to Bear River Holdings and PEAG in the form of BRI and JLab's assets.    The Debtors were insolvent at the time

ORIGINAL PETITION                                                                                    PAGE 25

they made such transfers and received no or insufficient consideration in exchange for the transfers of BRI and JLab's assets.

117.    The transfers of BRI and JLab's assets were made to or for the benefit of insiders of the Debtors (*e.g.*, Petra, Eagle, Catalyst, Womack, and Fife) for an alleged antecedent debt, while the Debtors were insolvent, and the insiders had reasonable cause to believe that the Debtors were insolvent.

118.    There are unsecured creditors of the Debtors whose claims against the Debtors arose before or within a reasonable time after the transfer was made or the obligation was incurred, who could avoid the transfer or obligation under applicable state law.    Plaintiff hereby sues Defendants, pursuant to the Texas Uniform Fraudulent Transfer Act – TEX. BUS. & COM. CODE § 24.001 *et seq.*, for the value of the transfers made or obligations incurred.

## COUNT 9: OBLIGATIONS INCURRED NOT FOR REASONABLY EQUIVALENT VALUE (TEX. BUS. & COM. CODE § 24.001 et seq.)

119.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

120.    Within four years of the Debtors' bankruptcy filing MST, BRI, and JLab incurred obligations to Petra and Eagle in the amount of approximately $13,550,000 (*i.e.* the "mezzanine loans" described above).    JLab incurred obligations of approximately $8.85 million, for which it received no benefit; BRI incurred obligations of approximately $8.95 million, for which it received no benefit; and MST incurred obligations of approximately $9.1 million, for which it received no benefit.

121.    Each of the obligations was incurred without receiving a reasonably equivalent value in exchange for the obligation, and each Debtor: (1) was engaged or was about to engage in a business or transaction for which the remaining assets of each Debtor were unreasonably small

in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that each Debtor would incur, debts beyond each Debtor's ability to pay as they became due.

122.    As set forth above, the "mezzanine debts" constitute avoidable obligations to the extent each respective Debtor did not receive loan proceeds.  Pursuant to TEX. BUS. & COM. CODE § 24.005(a)(2) & (b), the Trustee asks the Court to avoid the obligations as voidable fraudulent transfers under applicable state law.

## COUNT 10:  RECHARACTERIZATION OF "MEZZANINE DEBT"

123.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

124.    Recharacterization of debt to equity requires an application of state law.  *See In re Lothian Oil Inc.*, 650 F.3d 539, 543 (5th Cir. 2011).

125.    When characterizing an interest as debt versus equity, both federal and state courts generally consider a multi-factor test from federal tax law.  The factors are:

        a.    The intent of the parties;

        b.    The identity between creditors and shareholders;

        c.    The extent of participation in management by holder of the instrument;

        d.    The ability of the entity to obtain funds from outside sources;

        e.    The "thinness" of the capital structure in relation to debt;

        f.    The risk involved;

        g.    The formal indicia of the arrangement;

        h.    The relative position of the obligees as to other creditors regarding the

payment of interest and principal;

i.     The voting power of the holder of the instrument;

j.     The provision of a fixed rate of interest;

k.     A contingency on the obligation to repay;

l.     The source of interest payments;

m.     The presence of absence of a fixed maturity date;

n.     A provision for redemption by the corporation;

o.     A provision for redemption at the option of the holder; and

p.     The timing of the advance with reference to the organization of the entity.

126.    In applying the multi-factor test, courts consider all factors and weigh the evidence favoring characterization of the interest as debt or equity, while also realizing that the factors are not necessarily of equal significance and that no one factor is controlling.

127.    Applying the foregoing factors to Petra and Eagle's so-called mezzanine debt shows that such "debt" should be recharacterized as equity.

128.    For example, clearly Petra and Eagle's investments were intended to acquire assets for a new business.    Petra and Eagle were also intended to participate in management of the Debtors and, in the event of an exit, to have the upside of an equity investor.  In other words, Petra and Eagle's "mezzanine debt" was improperly afforded the best of both debt and equity: it was secured on all assets of the Debtors making it less risky, and it bore the upside benefits of equity, such as a high return and participation in management.  Notably, the maturity date of the "mezzanine debts" was not based on a realistic amortization schedule, but rather was made to coincide TCP and Petra's anticipated exit of the business.

129.    Further, because the "debt" at issue was used to acquire assets for a new entity, it

is unlikely the new entity would have been able to obtain a traditional bank loan for such purpose.

130.    Petra and Eagle also had substantial ownership interests in the Debtors, actively participated in management of the Debtors, and in fact, through Petra's close relationship with TCP, controlled the management of the Debtors.

131.    The Debtors' capital structure was *extremely* thin in relation to its debt.

132.    In addition, Petra and Eagle were given a preferred return over other legitimate creditors, such as the Debtors' trade vendors.

133.    For these and other reasons, Petra and Eagle's "mezzanine debt" should be recharacterized as equity.

## COUNT 11: INJUNCTION

134.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

135.    The Trustee has alleged causes of action against Defendants related to the improper transfer of assets of BRI and JLab's businesses to Bear River Holdings and PEAG.  In connection with such causes of action, the Trustee seeks, among other relief, a constructive trust regarding these assets.

136.    Bear River Holdings and PEAG's exit strategy is to sell, transfer, and/or encumber the assets of BRI and JLab to a third party.  Any such sale, transfer, and/or encumbrance will likely prejudice the Trustee's ability to recover the assets of BRI and JLab.

137.    Accordingly, the Trustee hereby seeks a temporary injunction enjoining the Defendants from selling, transferring, or encumbering the assets of BRI and JLab that were transferred to Bear River Holdings and PEAG.

138.    The Trustee is entitled to a temporary injunction because she has a probable right of recovery and likelihood of success on the merits.  Additionally, as set forth herein, the Trustee

and the Debtors' bankruptcy estates will suffer imminent harm without court intervention and they have no adequate remedy at law.

## COUNT 12: CONSTRUCTIVE TRUST

139.    A party seeking to impose a constructive trust must establish (1) breach of a special trust or fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the wrongdoer, and (3) an identifiable res, or proceeds or revenues therefrom, that can be traced back to the original property.  *In re Hayward*, 480 S.W.3d 48, 52 (Tex. App. – Fort Worth 2015).

140.    The Trustee pleads for a constructive trust over all assets of PEAG and Bear River Holdings.  The imposition of a constructive trust is appropriate because:

- <u>Breach of Trust or Fiduciary Relationship</u>: The assets of JLab and BRI were transferred to PEAG and Bear River Holdings, respectively, in breach of the Managers' and Officers' fiduciary duties to JLab and BRI, and the Managers and Officers personally benefited from the transaction.  The action was also carried out for the benefit of insiders – Petra, Eagle, Catalyst, Womack and Fife.

- <u>Unjust Enrichment of the Wrongdoer</u>: Petra, Eagle, Catalyst, Womack and Fife were and continue to be unjustly enriched by looting JLab and BRI's assets and placing them in PEAG and Bear River Holdings, respectively.  As set forth above, JLab and BRI are prospering.  For example, Petra and Eagle are receiving in excess of $100,000/month as a purported "interest" payment, and Petra, Eagle, and Catalyst all stand to realize substantial upside upon a sale of PEAG.

- <u>Identifiable Res and Proceeds Therefrom</u>: The res of the trust is identified, in part, in the agreements transferring JLab and BRI's assets to PEAG and Bear River Holdings, respectively – *e.g.*, in the Foreclosure and Sale Agreement whereby JLab's assets were placed in PEAG (without an actual foreclosure and sale even taking place).  The Trustee further pleads for a constructive trust over the balance of PEAG and Bear River Holdings' assets since they are directly traceable to the assets of JLab and BRI.

## COUNT 13: APPLICATION FOR APPOINTMENT OF RECEIVER

141.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

142.    An appointment of a receiver is governed by TEX. CIV. PRAC. & REM. CODE §§

64.001 *et seq.*   The decision to appoint a receiver rests in the sound discretion of the trial court.

*See O & G Carriers, Inc. v. Smith Energy 1986-A P'ship*, 826 S.W.2d 703, 707 (Tex.App.-Houston

[1st Dist.] 1992, no writ).

143.   Pursuant TEX. CIV. PRAC. & REM. CODE § 64.001(a)(1), (2), and (6), the

appointment of a receiver for Bear River Holdings and PEAG is appropriate here because:

> a.   The Trustee, as representative of the Debtors' bankruptcy estates, brings this suit to, among other things, vacate and recover the transfers of the assets of BRI and JLab to Bear River Holdings and PEAG, respectively.
>
> b.   The Trustee is seeking to subject the assets of Bear River Holdings and PEAG to her claims.
>
> c.   The appointment of a receiver for Bear River Holdings and PEAG is appropriate pursuant to the rules of equity because there is imminent danger that the assets of BRI and JLab, which now reside in Bear River Holdings and PEAG, are in danger of being lost, removed, or materially injured.  As set forth above, the exit strategy is to sell, transfer, or encumber the assets of Bear River Holdings and PEAG to a third party.  Moreover, PEAG is paying Petra and Eagle over $100,000 every month, which money belongs to the Trustee.

144.   Accordingly, the Trustee hereby sues for the appointment of a receiver over Bear

River Holdings and JLab.

## COUNT 14: APPLICATION TO DEPOSIT FUNDS INTO REGISTRY OF COURT

145.   A trial court is granted broad discretion to enter orders appropriate for the conduct

of a case pending in its court.  "A court has all powers necessary for the exercise of its jurisdiction

and the enforcement of its lawful orders, including authority to issue the writs and orders necessary

or proper in aid of its jurisdiction."  TEX. GOV'T CODE § 21.001(a).   This includes a court's

inherent authority to order a party to deposit disputed property into the court's registry if the

property is in danger of being lost or depleted.  *See, e.g., Castilleja v. Camero*, 414 S.W.2d 431,

433 (Tex. 1967).

146.   Defendants PEAG and Petra have admitted that PEAG is transferring over

$100,000 every month to Petra, superficially labeled "interest" on the so-called mezzanine debt. These funds are generated from the JLab business assets that belong to the Trustee and for which the Trustee is suing to recover. Thus, these funds are at the center of this dispute.

147. The funds are in danger of being lost or depleted. PEAG is located inside Texas and, therefore, its assets are directly recoverable pursuant to the orders and judgments from this Court. Petra and Eagle, in contrast, are located outside of Texas, making their assets less recoverable pursuant to the orders and judgments from this Court. Moreover, Petra and Eagle and in the business of investing available capital, making tracing and recovery of the funds received from JLab even harder.

148. Accordingly, an order directing PEAG to deposit the funds it would otherwise transfer to Petra and/or Eagle into the registry of the Court pending the final resolution of this suit is appropriate under these circumstances.

## COUNT 15: ACCOUNTING

149. The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

150. As set for above, the Managers and Officers owed fiduciary duties to the Debtors and breached such fiduciary duties by, among other things, transferring the assets of BRI and JLab to Bear River Holdings and PEAG, respectively, for below fair value.

151. The owners and principals of Bear River Holdings (Catalyst, Womack, and Fife) and PEAG (Catalyst, Petra, and Eagle) are either former Managers and Officers of the Debtors or affiliated with former Managers and Officers of the Debtors. Bear River Holdings and PEAG have used the assets of BRI and JLab, respectively, to generate cash flow from which Bear River Holdings and PEAG have paid the above-referenced owners and principals from time-to-time.

152. Accordingly, the Trustee seeks an accounting of the assets transferred to Bear River

Holdings and PEAG; the profits Bear River Holdings and PEAG have realized from such assets; the transfers Bear River Holdings has made to Catalyst, Womack, or Fife; and the transfers PEAG has made to Petra, Eagle, or Catalyst.

## COUNT 16: DAMAGES

153.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

154.    Plaintiff hereby sues Defendants, jointly and severally, for monetary damages of at least $54 million.

## COUNT 17: EXEMPLARY DAMAGES

155.    The Trustee repeats and realleges the allegations set forth in all preceding paragraphs of this Petition, as if fully set forth herein.

156.    Defendants have caused significant harm to the Debtors and their creditors as a result of their malicious, willful, and fraudulent conduct and/or gross negligence.  Hence, Plaintiff is entitled to an award of exemplary damages.

## VI.    DEMAND FOR JURY

157.    The Trustee hereby incorporates the foregoing paragraphs as though fully set forth herein.

158.    The Trustee demands a jury trial.

## VII.    PRAYER

159.    WHEREFORE, premises considered, the Trustee prays that Defendants be cited to appear herein as provided by law and that, upon hearing, the Court:

1.    Award the Trustee monetary damages, including without limitation disgorgement of profits Defendants realized on account of their conduct;

2.    Avoid the fraudulent transfers of the assets of BRI and JLab to Bear River Holdings

and PEAG, respectively;

3.  Avoid the fraudulent incurrence of obligations (*e.g.*, the "secured, mezzanine debt") to Petra and Eagle;

4.  Impose a constructive trust on the assets of BRI and JLab that were transferred to Bear River Holdings and PEAG and any profits such assets have produced;

5.  Rescind Petra and Eagle's so-called mezzanine debt and the sales of BRI and JLab's assets;

6.  Enjoin Bear River Holdings and PEAG from selling, transferring, or encumbering their assets until the Trustee's claims are fully and finally adjudicated;

7.  Appoint a Receiver of Bear River Holdings and PEAG;

8.  Order PEAG to deposit the funds it would otherwise transfer to Petra and/or Eagle into the registry of the Court pending the final resolution of this suit;

9.  Order Bear River Holdings and PEAG to provide an accounting of the assets they received from BRI and JLab, respectively, including without limitation any profits that have been realized from such assets;

10.  Award the Trustee exemplary damages, as appropriate;

11.  Assess pre- and post-judgment interest on all sums awarded herein at the highest lawful rate;

12.  Assess all costs of court against Defendants; and

13.  Award the Trustee such other and further relief to which she may show herself justly entitled, either at law or in equity.

Dated: *9/29/17*

Respectfully submitted,

By: _____

Jerry C. Alexander
Texas Bar No. 00993500
alexanderj@passmanjones.com
Christopher A. Robison
Texas Bar No. 24035720
robisonc@passmanjones.com
Kyle B. Mandeville
Texas Bar No. 24065669
mandevillek@passmanjones.com
PASSMAN & JONES, A PROFESSIONAL
CORPORATION
1201 Elm Street, Suite 2500
Dallas, Texas 75270
Telephone:  (214) 742-2121
Telecopier:  (214) 748-7949

Sean J. McCaffity
Texas Bar No. 24013122
smccaffity@textrial.com
Andrew Sommerman
Texas Bar No. 18842150
Andrew@textrial.com
SOMMERMAN, MCCAFFITY & QUESADA, LLP
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas
Telephone: (214) 720-0720
Telecopier: (214) 720-0184

**ATTORNEYS   FOR   MICHELLE   CHOW,
CHAPTER 7 TRUSTEE**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

MICHELLE CHOW, Chapter 7 Trustee of the Consolidated Bankruptcy Estates of MACH SPEED HOLDINGS, LLC, MACH SPEED TECHNOLOGIES, LLC, JLAB, LLC, and BEAR RIVER INTERNATIONAL, LLC,

Plaintiffs,

v.

RICK BALDWIN, an individual; PEAG, LLC, a Delaware limited liability company; EAGLE PRIVATE CAPITAL, LLC, a Missouri limited liability company, CATALYST HOLDCO INVESTMENTS, LLC, a Texas limited liability company; BEAR RIVER HOLDINGS, LLC, a Texas limited liability company; TRANSITION CAPITAL PARTNERS, LLC, a Texas limited liability company; THE TCP GROUP, a Texas limited liability company; PETRA CAPITAL PARTNERS, LLC, a Georgia limited liability company; PETRA GROWTH FUND II, LP, a Delaware limited partnership; PETRA PARTNERS II, LLC, a Georgia limited liability company; KEVYN DEMARTINO, an individual; AARON WOMACK, an individual; ROBERT SMITH, an individual; JIM FIFE, an individual; WILLIAM "BILL" HOWELLS, an individual; WIN CRAMER, an individual; JOSH ROSENFELD, an individual; DOUG LANE, an individual; KEITH DRISCOLL, an individual; JASON FAUCETT, an individual; ROBERT NISTICO, an individual; LAWRENCE "LARRY" MONDRY, an individual; JEROME "JERRY" KOLLAR, an individual; and RANDY BARRON, an individual,

Defendants.

Cause No. 17-3056

Certificate of Interested Parties                                                                      1

# Certificate of Interested Parties

Pursuant to Fed. R. Civ. P. 7.1 and LR 3.2(e), LR 7.4, LR 81.1(a)(4)(D), and LR 81.2, Defendants Petra Capital Partners, LLC; Petra Growth Fund II, LP; Petra Partners II, LLC; Eagle Private Capital, LLC; and PEAG, LLC (collectively, the "Defendants") provide the following information:

For a nongovernmental corporate party, the name(s) of its parent corporation and any publicly held corporation that owns 10% or more of its stock:

None.

A complete list of all persons, associations of persons, firms, partnerships, corporations, guarantors, insurers, affiliates, parent or subsidiary corporations, or other legal entities that are financially interested in the outcome of the case:

Michelle Chow
Rick Baldwin
PEAG, LLC
Eagle Private Capital, LLC
Catalyst Holdco Investments, LLC
Bear River Holdings, LLC
Transition Capital Partners, LLC
The TCP Group
Petra Capital Partners, LLC
Petra Growth Fund II, LP
Petra Partners II, LLC
Kevyn DeMartino
Aaron Womack
Robert Smith
Jim Fife
William "Bill" Howells
Win Cramer
Josh Rosenfeld
Doug Lane
Keith Driscoll
Jason Faucett
Robert Nistico
Lawrence "Larry" Mondry
Jerome "Jerry" Kollar
Randy Barron

Date: November 6, 2017                          Respectfully submitted,

                                                /s/ Todd Murray
                                                Marcus Helt, Bar No. 24052187
                                                Todd Murray, Bar No. 00794350
                                                Andrew A. Howell, Bar No. 24072818
                                                **GARDERE WYNNE SEWELL LLP**
                                                2021 McKinney Avenue, Suite 1600
                                                Dallas, TX 75201
                                                Telephone: 214.999.3000
                                                Facsimile: 214.999.4667
                                                mhelt@gardere.com
                                                tmurray@gardere.com
                                                ahowell@gardere.com

                                                **Counsel for Petra Capital Partners,
                                                LLC; Petra Growth Fund II, LP;
                                                Petra Partners II, LLC; Eagle Private
                                                Capital, LLC; and PEAG, LLC**

## Certificate of Service

This is to certify that a true and correct copy of the foregoing document has been forwarded by electronic filing on this 6th day of November, 2017 to the following counsel of record:

| | |
|---|---|
| Jerry C. Alexander<br>Texas Bar No. 00993500<br>alexanderj@passmanjones.com<br>Christopher A. Robison<br>Texas Bar No. 24035720<br>robisonc@passmanjones.com<br>Kyle B. Mandeville<br>Texas Bar No. 24065669<br>mandevillek@passmanjones.com<br>**PASSMAN & JONES, A PROFESSIONAL CORPORATION**<br>1201 Elm Street, Suite 2500<br>Dallas, Texas 75270<br>Telephone:    (214) 742-2121<br>Telecopier:    (214) 748-7949 | Sean J. McCaffity<br>Texas Bar No. 24013122<br>smccaffity@textrial.com<br>Andrew Sommerman<br>Texas Bar No. 18842150<br>Andrew@textrial.com<br>**SOMMERMAN,   MCCAFFITY   &   QUESADA, LLP**<br>3811 Turtle Creek Blvd., Suite 1400<br>Dallas, Texas<br>Telephone:    (214) 720-0720<br>Telecopier:    (214) 720-0184 |

/s/ Todd Murray

_____

Todd Murray