

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 3, 2026

**BY ECF**
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> **Re:    *United States v. Daniel Chu & David Goodgame*, 25 Cr. 579 (PKC)**

Dear Judge Castel:

The Government writes to respectfully oppose the defendants' motion to compel discovery and to adjourn the October 19, 2026, trial date. (ECF Doc. 50) (the "Motion" or "Mot."). The defendants' Motion should be denied in all respects. The Government has been meeting—and will continue to meet—its disclosure and production obligations. By October, the defendants will have had as much time to prepare for trial (or more) as Samuel Bankman-Fried, William Walters, David Blaszczak, and many other defendants in complex white-collar cases in this District. Adjourning the trial date, which is still more than four months away, is unnecessary and would be deeply unjust to the public, the defendants' victims, and the other creditors in Tricolor's bankruptcy proceedings who are all awaiting a prompt resolution of this criminal case.

## I.        The Defendants' Motion to Compel *Brady* Material Should Be Denied.

On February 19, 2026, the Government sent the defendants a six-page letter summarizing certain statements made by 12 witnesses (the "February Disclosure Letter"). (*See* Ex. 19).[1] The Government sent the letter "[m]indful of its obligations," including "those under *Brady v. Maryland*, 373 U.S. 83 (1963), and out of an abundance of caution." *Id.* To assist the defendants, the February Disclosure Letter includes the names of the witnesses and, where applicable, their counsel information. *Id.* The defendants now request "the full FBI 302 reports and underlying witness notes for every meeting with those witnesses identified in" the February Disclosure Letter, Mot. at 2, speculating that the full reports and notes may contain additional *Brady* material.

The defendants' request should be denied because the Government has already complied with its *Brady* obligations with respect to the reports and notes that the defendants seek. The Government has reviewed the reports and notes at issue, and, taking a generous view of its

---

[1] All references to "Ex. __" refer to exhibits appended to the Declaration of Matthew L. Schwartz in Support of Chu's Initial Pretrial Motions, dated May 20, 2026. (*See* ECF Doc. 44).

Hon. P. Kevin Castel
June 3, 2026
Page 2

disclosure obligations, summarized certain witness statements that might be helpful for the defendants in the February Disclosure Letter. *Brady* requires nothing more at this point.

In any event, the defendants will receive the specific materials they seek ("the full FBI 302 reports and underlying witness notes") by September 18, 2026, when the Government produces Jencks Act material a month before trial, as the parties agreed and as the Court ordered. (*See* ECF Doc. 32, 34, 35). The defendants have no basis to seek early Jencks Act/*Giglio* material in advance of the schedule to which they agreed and that the Court has already set.[2] The defendants do not explain why they sat on the Government's February Disclosure Letter for nearly three months before requesting the full reports and notes in May. Nor do they explain why they raised no objections during the March 19, 2026, conference when the Court accepted the September 18, 2026, Jencks Act deadline the Government proposed. (*See* ECF Doc. 32, 34, 35). After staying quiet about the Government's February Disclosure Letter for months and raising no objection to the Court's pretrial schedule, the defendants cannot be heard to complain now.

Furthermore, the existing disclosure schedule does not prejudice the defendants. Until the September 18 Jencks Act deadline, the defendants are free to investigate the information in the February Disclosure Letter, to attempt to interview any of the witnesses mentioned in the letter, and, ultimately, to subpoena any of the witnesses if they believe their testimony would be helpful for the defendants at trial. The defendants offer no more than speculation that, in light of the February Disclosure Letter, the Government must be in possession of undisclosed exculpatory information from these witnesses. As stated above, the Government has been meeting—and will continue to meet—its disclosure obligations. That ends the inquiry.

Finally, the defendants suggest in their request that the materials they seek are "critical" because the Government's "documentary proof is so deficient" that its case "rises and falls on Kollar and Seibold." (Mot. at 2). This assessment amounts to little more than wishful thinking by the defendants. The Indictment is replete with written messages to and from the defendants about the fraud. (*See* ECF Doc. 2 at ¶¶ 11, 12, 14, 15, and 16). Furthermore, as alleged in the Indictment, the defendants were caught discussing and trying to cover up the fraud in a series of secretly recorded phone calls. (*See* ECF Doc. 2 at ¶¶ 19-24). For example, the jury will hear audio recordings in which (1) Chu proposes a plan for defrauding Tricolor's auditors, *id.* at ¶ 19; (2) Chu fabricates a "Trump administration deferment" policy that did not exist to try and cover up the fraud, *id.* at ¶ 19; (3) Chu berates Seibold, not for committing fraud, but for getting caught, *id.* at ¶ 22; (4) Chu recounts falsely telling a victim lender that his fraud was really a "systems issue," *id.* at ¶ 23; and (5) Chu laughing while comparing his fraud, which cost more than 1,000 Tricolor employees their jobs (while Chu walked away with a $15 million bonus in crime proceeds), to Enron, one of the most notorious corporate frauds in United States history, *id.* at ¶¶ 24, 25. The defendants cannot pretend that this evidence does not exist as part of their effort to improperly obtain early Jencks Act/*Giglio* material.

---

[2] In this District, *Giglio* material is typically disclosed together with Jencks Act material. *See, e.g.*, *United States v. Gomez*, 17 Cr. 602 (JMF), 2018 WL 501607, at *4 (S.D.N.Y. Jan. 19, 2018) (*Giglio* material may be produced at the same time as Jencks Act material).

Hon. P. Kevin Castel
June 3, 2026
Page 3

### II.    The Defendants' Motion to Compel Rule 16 Material Should Be Denied.

Turning to Rule 16 discovery, the defendants complain that the Government has produced both too much discovery and not enough. In fact, the Government has simply been meeting—and will continue to meet—its Rule 16 obligations.[3] The Government acknowledges that the discovery in this case has been substantial and that it continues to receive substantial productions from third parties, most notably the Chapter 7 bankruptcy trustee for Tricolor. But as the Government comes into possession of new material, the Government has been having it processed and produced to the defendants. There is no basis to prevent the Government from obtaining additional material as part of its ongoing investigation. There is also no basis to compel the Government to go out and obtain additional material that is not in the possession of the prosecution team, but rather in the possession of the third parties. The Government addresses each of the defendants' Rule 16 grievances in turn.

**Chu's Devices Seized Pursuant to Search Warrants**. In October 2025, the Government seized 21 of Chu's electronic devices pursuant to search warrants. To date, the Government has been able to access and image ten of those devices. Four months ago, on February 3, 2026, the Government produced those ten full images to Chu. With respect to the other 11 devices seized from Chu, the Government has either been unable to access the devices or has returned the devices to Chu without imaging them.

With respect to the ten images of Chu devices that the Government has produced, Chu purports to be clueless as to how he can possibly find relevant materials from his own devices. (Mot. at 4). This is difficult to believe. To start, these devices were, after all, *Chu's* own devices. Even if Chu were wholly unfamiliar with the devices or their contents (and as they are his devices, he is not), Chu has many sophisticated lawyers at his disposal—five senior attorneys from two international law firms who have filed notices of appearances in this case, supported by an untold number of associate attorneys. Chu and his lawyers are more than capable of using not only basic keyword searches to find relevant material but also, as Chu's lawyers boast, more sophisticated e-discovery tools like "AI-assisted document review" to review discovery and prepare for trial.[4] Such resources being deployed by sophisticated counsel on a set of data that they have had for the past four months and that Chu is already personally familiar with affords more than sufficient time to prepare for trial.

Of the ten Chu devices that the Government has imaged, the Government has completed its responsiveness review of five devices—a voice recorder (Item 1B3), an iPhone (Item 1B4), a MacBook (Item 1B10), and two iPads (Items 1B15 and 1B19)—and has produced any responsive records from those devices to the defendants, which represents a subset of the full images already produced to Chu. The Government has not completed its responsiveness review of the other five devices—three iPhones (Items 1B1, 1B5, and 1B21), a MacBook (Item 1B2), and an iPad (Item 1B7); however, the Government has identified and produced to the defendants approximately

---

[3] The Motion references "government[ ] misconduct" and discovery violations. (Mot. at 7). To be clear, neither has occurred.

[4] https://www.bsfllp.com/practices/litigation/E-Discovery.html (last visited June 3, 2026).

Hon. P. Kevin Castel
June 3, 2026
Page 4

67,000 documents from three of those devices. The Government will endeavor to complete its responsiveness review of these five devices as reasonably quickly as possible and it will commit to completing its responsiveness review of Chu's primary phone (1B21) within two weeks from today, June 17, 2026.[5] It is likely that there will be duplication among the remaining devices, given that the content of multiple devices is often synced with cloud storage. Accordingly, prioritizing the phone that Chu most recently used (1B21) is likely to identify the most responsive materials.

In summary, Chu has what he needs from his devices. He has had since February (four months ago) the same ten images of his devices that the Government has. The Government will complete its responsiveness review of Chu's primary phone by June 17, 2026, continue its responsiveness review of the other four Chu devices, and, in accordance with the Court's schedule, it will identify for the defendants an initial trial exhibit list, including materials from Chu's devices, by September 18, 2026, one month before trial. (ECF Doc. 35).[6]

**Goodgame's Device Seized Pursuant to a Search Warrant**. In connection with his arrest in December 2025, the Government seized one phone from Goodgame. On March 27, 2026, the Government produced an image of that phone to Goodgame, and on May 19, 2026, the Government produced 784 responsive documents from that phone to the defendants.[7] The Government will commit to completing its responsiveness review of this phone by June 17, 2026.

---

[5] On May 18, 2026, the Government filed a motion seeking the release to the case team of certain materials that are being withheld on the basis of Chu's assertion of personal privilege. (ECF No. 41). If the Court grants the Government's motion and, as a result, if materials from Chu's seized devices that were previously withheld as potentially privileged are released to the Government's case team, those materials will be reviewed for responsiveness.

[6] Chu gestures at an argument that the Government's ongoing responsiveness review runs afoul of the Fourth Amendment, Mot. at 4, but he stops short of actually making it. The Government is required to conduct its responsiveness review in a reasonable amount of time. Reasonableness, however, accounts for the facts and circumstances of each case and there is not an upper limit for the amount of time that is reasonable to conduct a review. *See* Fed. R. Crim. P. 41 Advisory Committee's Note (2009) ("there is no basis for a 'one size fits all' presumptive period" for the time in which a review must take place because "[a] substantial amount of time can be involved in the forensic imaging and review of information . . . due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs."); *United States v. Wey*, 256 F. Supp. 3d 355, 383 (S.D.N.Y. 2017) (There is "no established upper limit as to when the government must review seized electronic data to determine whether evidence falls within the scope of a warrant." (citation omitted)). Indeed, based on case-specific factors, courts have blessed reviews that have taken months, and sometimes years. *See United States v. Jarman*, 847 F.3d 259, 267 (5th Cir. 2017) (Numerous courts have held that "a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of it is reasonable."). Here, given all the facts and circumstances of this case, the Government's responsiveness review has been reasonable.

[7] The statements in the Motion about the Government not having produced responsive records from Goodgame's phone (Mot. at 4) are not accurate.

Hon. P. Kevin Castel
June 3, 2026
Page 5

**Documents the Defendants Requested from the SEC**. The defendants do not dispute that the U.S. Securities and Exchange Commission ("SEC") is not part of the prosecution team in this case and, therefore, that the Government had no obligation to obtain any documents from the SEC and produce them to the defendants. Nonetheless, as a courtesy to the defendants, the Government asked the SEC to provide a list of third parties who produced documents to the SEC along with approximate document and page counts, which information the Government received and then provided to the defendants. After reviewing that list, the defendants then requested that the Government obtain more than 100,000 documents from the SEC, which the Government did. The Government produced those documents to Chu on May 26, 2026, and to Goodgame on June 3, 2026. Accordingly, the defendants' request on this point is moot.

Given that the Government had no obligation to obtain these documents in the first instance and that the defendants knew the volume of materials they were requesting, any burden created by the timing of this production is attributable to the strategic choices of the defendants, not the Government.

**Grand Jury Subpoena Returns and Voluntarily Produced Documents**. To date, the Government has produced to the defendants approximately 1.1 million documents of grand jury subpoena returns and voluntarily produced documents. The Government continues to receive these types of documents from third parties, process them for production, and produce them to the defendants.

The Government is currently preparing for production to the defendants approximately 420,000 documents that were recently produced to the Government, most of which came from the Tricolor Chapter 7 trustee. The vast majority of these documents are the results of a series of searches that the trustee performed over the email and Teams data of 13 Tricolor custodians. Notably, however, the Government produced in January of this year to the defendants images of the Tricolor laptops of 10 of these 13 custodians, suggesting that the recent productions from the trustee may contain significant duplication with respect to what the defendants already have.

**The Defendants' Requests for Archived Tricolor Email Accounts and Dealer Management System Data**. The defendants ask the Court to "order" that "the government must attempt to obtain and produce" (1) the "full, archived Tricolor email accounts of Jerome Kollar, Ameryn Seibold, David Goodgame, Andy Mata, Mauricio Delgado, Katie Kollar, Alex Velasquez, Jordan Easley, Reed Crow dating back to 2018," and (2) the "full data set underlying Tricolor's dealer management system along with all audit trails/system activity logs between January 1, 2018 and the present." (Mot. at 6). These requests are meritless. It is difficult to imagine a more egregious example of a fishing expedition than requesting every single email that nine people sent and received over an eight-year period. More fundamentally, there is no legal basis to compel the Government to "attempt to obtain" materials that are not in the possession of the prosecution team, but rather in the possession of a third party (here, Tricolor's Chapter 7 trustee).

Rule 16 extends only to materials "within the government's possession, custody or control." Fed. R. Crim. P. 16(a)(1)(E); *see also United States v. Chalmers*, 410 F. Supp. 2d 278, 289-90 (S.D.N.Y. 2006) ("the Court is not persuaded that the 'government' for purposes of Rule

Hon. P. Kevin Castel
June 3, 2026
Page 6

16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases"). "Clearly the government cannot be required to produce that which it does not control and never possessed or inspected." *United States v. Hutcher*, 622 F.2d 1083, 1088 (2d Cir. 1980) (quoting *United States v. Canniff*, 521 F.2d 565, 573 (2d Cir. 1975)).

"In the Second Circuit," the prosecution team includes only those individuals or entities that are "an arm of the prosecutor." *United States v. Meregildo*, 920 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2013) (quoting *United States v. Morell*, 524 F.2d 550, 555 (2d Cir. 1975)). That is, discovery and disclosure obligations only extend to those "who perform investigative duties or make strategic decisions about *the prosecution of the case*," including those "who *submit to the direction of the prosecutor and participate in the investigation*." *United States v. Barcelo*, 628 F. App'x 36, 38 (2d Cir. 2015) (emphases added); *see also United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (holding that "the relevant inquiry" for determining whether someone is an "arm of the prosecutor" is "what the person did, not who the person is").

The defendants cannot bring themselves to actually argue that Tricolor's Chapter 7 bankruptcy trustee is part of the prosecution team in this case, because such an argument would be frivolous. Consider all the factors that courts typically apply when conducting a "prosecution team" analysis: Tricolor's Chapter 7 trustee did not participate in the prosecution's witness interviews, was not involved in presenting the case to the grand jury, has not received document productions from the prosecution, has not played a role in the development of prosecutorial strategy, and has not accompanied the prosecution to court proceedings. *See United States v. Middendorf*, 18 Cr. 36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (*citing United States v. Blaszczak*, 308 F. Supp. 3d 736, 741-42 (S.D.N.Y. 2018)).[8] The defendants seem to think that, because Tricolor's Chapter 7 trustee has produced documents to the Government pursuant to a grand jury subpoena and other requests, Tricolor's Chapter 7 trustee is part of the prosecution team. There is no authority to support that breathtaking position. Indeed, in an analogous case, Judge Kaplan held that the FTX bankruptcy estate was not part of the prosecution team in the case against Samuel Bankman-Fried. *See United States v. Bankman-Fried*, 22 Cr. 673 (LAK), ECF Doc. 166 (S.D.N.Y. June 23, 2023). The same holds true here.

In short, the Government's prosecution team does not possess the materials that the defendants seek and there is no basis to compel the Government to "attempt to obtain" materials from any person or entity that is not a part of the prosecution team. If the defendants wish to obtain these documents, they may attempt to obtain them from Tricolor's Chapter 7 trustee. The Government has no obligation, however, to assist the defendants in their attempted fishing expedition for, among other things, every email sent or received by nine people over eight years.

---

[8] The defendants' citations to *Kyles* and *Hunter*, Mot. at 5, are meaningless because the defendants do not and cannot argue that Tricolor's Chapter 7 trustee is part of the prosecution team in this case, which *Kyles* and *Hunter* demand. *See United States v. Hunter*, 32 F.4th 22, 36 (2d Cir. 2022) ("[W]hile a prosecutor has a duty under *Kyles* to learn information when that information is possessed by others on the 'prosecution team,' undisclosed information that is not known to anyone on that team does not give rise to a *Brady* violation.").

Hon. P. Kevin Castel
June 3, 2026
Page 7

### III.    The Defendants' Request to Adjourn the Trial Date Should Be Denied.

The defendants' request to adjourn the October 19, 2026, trial date should be denied. The volume of discovery is substantial, but the defendants have not demonstrated that they do not have sufficient time and resources to review it and prepare for trial.

Chu, in particular, has retained two sophisticated and well-resourced law firms equal to the task of reviewing the discovery and preparing for trial, which is still more than four months away. As described above, five senior attorneys from two international law firms have filed notices of appearances in this case for Chu. In addition, multiple law firm associates have appeared on correspondence with the Government. The discovery is largely text-searchable and in computerized formats that can be efficiently reviewed through traditional document review programs or even more quickly through "AI-assisted document review" of the kind that Chu's lawyers publicly boast of using.[9] The detailed Indictment in this matter describes the conduct that will feature at the trial. The Government's additional pretrial disclosures, including its pretrial production of Jencks Act material and exhibits, will further assist the defendants in efficiently preparing for trial.

While the Government has not declared its productions complete, nor given a date certain by which production will be complete, that is because the Government cannot give such assurance when it continues to receive records responsive to grand jury subpoenas. Consistent with its Rule 16 and *Brady* obligations, the Government will continue to produce those materials to defense counsel. In every case, the Government is entitled to continue its investigation through trial. This case is no different.

Maintaining the current trial date would be consistent with other complex white-collar cases in this District with comparable amounts of discovery. For example, in the most recent complex white-collar trial in this District, defendant Bradley Heppner was arrested on November 5, 2025, on charges relating to an accounting fraud and misappropriation scheme and then tried on those charges approximately five months later, starting on April 21, 2026. *See United States v. Heppner*, 25 Cr. 503 (JSR) (S.D.N.Y.). Notably, Judge Rakoff denied a defense request for a multi-month adjournment even though the Government had produced 1.6 million documents of subpoena returns and voluntarily produced documents at the outset of the case, plus another 125,000 such documents three months before trial, not to mention the "dozen electronic devices" the Government seized. *See id.* at ECF Doc. 36 at 4; *id.* at ECF Doc. 16 at 3-5. When pressing the defense on its adjournment request, Judge Rakoff noted that, while "there are lots of documents that need to be reviewed[,] [t]hat's not uncommon in a case like this." *Id.* at 5. He then appropriately inquired of defense counsel, "how many lawyers in your law firm?" *Id.*

Here, Chu has more than enough lawyers and more than enough time to prepare for trial. The amount of discovery in this case is comparable to the discovery in *Heppner*. By October 19, 2026, Chu will have had ten months since his arrest on December 17, 2025 to prepare for trial—more than twice the time that the defendant in *Heppner* had. Indeed, many of the District's most

---

[9] https://www.bsfllp.com/practices/litigation/E-Discovery.html (last visited June 3, 2026).

Hon. P. Kevin Castel
June 3, 2026
Page 8

complex white-collar cases with voluminous discovery were brought to trial in ten months or less. *See, e.g., United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (less than ten months between defendant's initial appearance in the District and trial); *United States v. Walters*, 16 Cr. 338 (PKC) (less than ten months between defendant's initial appearance in the District and trial); *United States v. Blaszczak*, 17 Cr. 357 (LAK) (ten months between defendant's initial appearance in the District and trial).

The defendants' account of *United States v. James*, 26 Cr. 29 (AT) (S.D.N.Y.), pending before Judge Torres, *see* Mot. at 8, is incomplete and fails to account for the fact that Judge Torres could not set a new trial date in that matter comparable to the trial date in this case because of defense counsel's unavailability. At the initial conference in that case, on February 2, 2026, Judge Torres set a trial date for July 13, 2026—about five and a half months after the defendants' arrest. On April 10, 2026, the defendants sought an adjournment. *See* 26 Cr. 29 (AT) Dkt. 43. Critically, however, defense counsel in that case stated that "a fall 2026 trial date [about 8-10 months after indictment, which is the same length of time at issue in this case] is not feasible because key members of the defense team have pre-existing trial commitments in other matters in September and November 2026." *See* 26 Cr. 29 (AT) Dkt. 43 at n. 6. Accordingly, it is no surprise that Judge Torres did not set a trial date comparable to the trial date in this case.

Chu's other arguments for an adjournment also lack merit. Chu contends that the relative infrequency of Count One's continuing financial crimes enterprise charge favors adjournment. (Mot at 7). But Chu was charged with Count One when the Court set the October trial date in the first place, and the Court did so having been advised that the Government may supersede with additional charges related to the same conduct. Moreover, Chu has *already* filed a pending motion to dismiss Count One or, alternatively, for a bill of particulars with respect to it, and he does not explain why the charges warrant any more time before trial. If anything, the fact that Chu's egregious conduct warranted charging him under the financial kingpin statute simply underscores why the interests of justice favor a speedy resolution of his case, as discussed below. Chu also argues that the pretrial motion schedule demonstrates that the trial date is "impossibl[e]," noting that the briefing schedule "extended just over two months." (Mot. at 7). But that leisurely briefing schedule was proposed by the defendants and the Government accommodated it. To the extent additional motion practice is called for, the parties are more than capable of briefing matters expeditiously for efficient resolution by the Court.

Finally, it bears emphasis that delaying the trial is contrary to the public interest. The victims in this case have suffered substantial financial losses, while bankruptcy proceedings (such as an adversary proceeding by the Chapter 7 trustee against Chu and others) are awaiting this trial. Private plaintiffs have filed lawsuits related to the fraud at Tricolor. This case therefore stands apart from cases where there is no parallel bankruptcy proceeding or other related civil litigations. The public interest in the swift administration of justice is at its apex in a case like this one, where the scale of fraud is massive, the harm to victims is substantial, and proceedings around Tricolor's collapse are actively unfolding. The arguments in favor of an adjournment are, therefore, outweighed by the concrete and compounding prejudice that delay would visit upon the victims of these offenses and the Tricolor bankruptcy estate.

Hon. P. Kevin Castel
June 3, 2026
Page 9

\* \* \* \* \*

For the reasons set forth above, the defendants' Motion should be denied in its entirety.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: _____
Micah F. Fergenson
Justin V. Rodriguez
Assistant United States Attorneys
(212) 637-2190/-2591

cc: Counsel of Record (by ECF)