**BOIES SCHILLER FLEXNER**

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 29, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

> **Re:** ***United States v. Chu & Goodgame*,**
> **Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu. We write, in advance of the conference scheduled for 3:00 PM tomorrow [ECF No. 73], to set out in writing some of the substantial developments in this case since the last conference in mid-March. As explained below, based on these developments, the defense will ask the Court to set a briefing schedule for Mr. Chu's pre-trial motions directed at the discovery the government produced after February 19, 2026, as well as at the just-returned superseding indictment. This letter also supplies further grounds for the pending motion to adjourn trial, which the Court indicated it would take up at tomorrow's conference. [ECF No. 71].

### Status of Discovery

Mr. Chu was indicted on or about December 15, 2025. [ECF No. 1]. The indictment was unsealed, Mr. Chu was arrested, and he was first presented on December 17th. [ECF Nos. 2, 3, 12]. His first appearance before Your Honor was on January 13, 2026. [ECF No. 28]. At that initial conference, the Court stated that it intended to schedule a first round of pretrial motions "directed to the face of the indictment or to discovery that's produced by . . . February 19th . . . ." [*Id.* at 9]. The Court expressly noted that, because discovery would not be complete by February 19, the defense in its initial motions "cannot address the issue of privilege, you cannot address the issue of responsiveness, relevance responsiveness, because you don't have that." [*Id*]. Mr. Chu filed his first round of motions on May 20, 2026, and on the current schedule they will be fully briefed on July 17, 2026.

In the meantime, the government has continued to dump massive productions on the defense—not only after February 19, but even after Mr. Chu's first-round motions were filed on May 20. True, the government produced a significant volume of *data* before February 19— although much of that was not Rule 16 material at all; it consisted of voluminous unfiltered images of electronic devices that the government seized wholesale—but a huge amount of the government's discovery has come after that date.



The numbers tell the story. By February 19, the government made 13 separate productions comprising 972,509 documents, including 12.21 terabytes of non-Rule 16 material such as those complete images of various devices seized from Mr. Chu. After February 19, the government has thus far made 13 more productions comprising another 954,448 documents, including productions of 104 gigabytes of unprocessed data from David Goodgame's cellphone on June 17, and 400,184 documents from third parties on June 19 alone. And based on the government's representations, still more is coming, including further records it claims are responsive to the warrants.

### Recent Developments

On June 24, 2026, a grand jury returned an eight-count superseding indictment naming Mr. Chu alone. [ECF No. 77].

The superseding indictment transforms the case. It adds four new counts: two counts for bank fraud and wire fraud affecting a financial institution arising from the SPV5 warehouse facility (Counts Five and Six), and two entirely new securities fraud counts: conspiracy to commit securities fraud (Count Seven) and substantive securities fraud (Count Eight). [*Id.* ¶¶ 38–47]. The securities fraud charges, unlike the bank and wire fraud charges in the previous indictment, are premised on alleged misrepresentations to investors in Tricolor's asset-backed securities, and thus inject an entirely new set of alleged victims and misrepresentations into the case. [*See, e.g., id.* ¶ 17]. The new charges also necessarily rest on an entirely new and distinct body of evidence (including offering documents, sale-and-servicing agreements, trustee reports, and communications with underwriters, rating agencies, and investors), and on new specialized legal and factual issues (including materiality to securities investors and the contents of investor-facing disclosures) that have no counterpart in the lender-focused charges that had defined this case until last week.

On the same day, Mr. Chu's codefendant David Goodgame pled guilty to a six-count information and agreed to cooperate with the government. [*See* June 24, 2026 Hr'g Tr. at 28–30; ECF No. 78 (superseding information)]. Goodgame pled guilty to (1) conspiracy to commit bank fraud and wire fraud affecting a financial institution; (2) bank fraud (3) wire fraud affecting a financial institution; (4) conspiracy to commit securities fraud; (5) securities fraud; and (6) making materially false statements to FBI agents on or about October 20, 2025 concerning the existence, nature, and value of Tricolor's pledged collateral. [*See id*].

Goodgame's allocution to the charges focused on the role of the "finance department" in the fraud. [June 24, 2026 Hr'g Tr. at 20–21]. Goodgame allocuted: "I know th[at] Jerry Kollar, [Ameryn] Seibold, and others were manipulating the data related to these loans, and in doing so, this was defrauding the banks." [*Id.* at 22]. Following the plea, Goodgame's attorney said in a statement that his client "pled guilty to a number of federal violations, in each of which his role was minor."[1] He added: "This is a reminder of how broadly the federal conspiracy laws can be applied." *Id*.

---

[1]    Hailey Konnath, *Tricolor's Ex-COO Cops to Fraud Charges Tied to Collapse*, Law360 (June 24, 2026), available at https://www.law360.com/articles/2493598.



**Anticipated Additional Motion Practice**

Even with discovery still incomplete, Mr. Chu anticipates filing additional pretrial motions on at least two broad fronts: (i) the government's post-February 19 productions, and (ii) the June 24 superseding indictment.

*First,* the government's so-called responsiveness review continues to be a mess. On May 19, 2026—not coincidentally, the day before first-round motions were due—the government finally produced some of what it called "responsive" documents from three of Mr. Chu's seized iPhones and Goodgame's seized cellphone. That production consists of 20,170 emails (with attachments, totaling 67,889 files), comprising only a portion of what the government claims to be "responsive." Even now the government does not claim its review of Mr. Chu's devices is complete; its review remains open.

Based on what it has produced so far, it is impossible to see how the government conducted any genuine review, or how it could have believed the documents it produced as "responsive" were authorized by a warrant concerned solely with the alleged fraud at Tricolor. [ECF No. 44-4]. At least a full 20% of the "responsive" documents are junk or mass emails. Many contain no readable text at all. That is not harmless as a matter of law—and, much more importantly, demonstrates that the government never conducted a real responsiveness review.

Of the "responsive" documents that *do* have substance, many are plainly non-responsive, irrelevant, and intrude on Mr. Chu's privacy. Some are also privileged, such as emails between Mr. Chu and his wife. For example, among the "responsive" documents identified by the government are communications between Mr. and Mrs. Chu about a blood transfusion, their son's medical condition, and their search for a nanny for the couple's then-infant son. The government also produced as "responsive" non-privileged but equally irrelevant emails concerning Mr. Chu's medical care. In addition, the government produced as "responsive" photos and videos of Mr. Chu's then-newborn son, as well as communications with and about his adult children discussing their careers, dating lives, and other sensitive personal issues.

It is impossible to believe that any human being—let alone a federal prosecutor—could have believed these documents were responsive, much less in such staggering volumes. Nor can the production be excused as errant search-term hits that the government failed to manually review: documents containing no readable text could not have hit on any search term in the first place. Perhaps, in its rush to finish the review (though it's still not done, eight months after seizing the devices) and protect the October trial date, the government simply outsourced its constitutional obligations to AI. Who knows? Whatever the explanation, the result is the same: the government has abandoned its obligation to seize only material responsive to the judicially authorized warrant, in violation of Mr. Chu's Fourth Amendment rights. This will necessarily give rise to additional motion practice.

Moreover, by the government's own description, the discovery it has just produced but which will take days to load, may contain some of the key documents that Mr. Chu has sought for months, including (i) communications from Mr. Chu, Goodgame, Kollar, Seibold, and other



potential trial witnesses or members of the alleged "continuing financial crimes enterprise" that Mr. Chu allegedly directed, (ii) records related to Tricolor's dealer management system, and (iii) internal communications from third-party lenders. This discovery, as well as additional discovery yet to be produced from the government's open-ended subpoena requests (and/or confirmation of certain records not produced) may also give rise to additional motion practice.

*Second*, Mr. Chu anticipates filing additional motions relating to the superseding indictment. Although our review of the new allegations is ongoing, we expect, at a minimum, to seek a bill of particulars on the new charges. The superseding indictment, for example, does not identify a single specific misstatement in the alleged securities fraud scheme, who made it, or to whom it was directed. Mr. Chu also intends to renew certain of his motions aimed at the original indictment, which the government argues were mooted by the return of the superseding indictment. [ECF No. 83 at 33, 35].

The defense is contemplating additional motion practice as well, including whether the securities fraud charges should be severed, and whether it is appropriate to raise motions relating to the grand jury presentation for those charges. As noted above, the responsiveness reviews for the search warrants of Mr. Chu's devices have been conducted improperly and have compromised Mr. Chu's constitutional rights in the process. Any evidence from those searches that was presented to the grand jury in support of the superseding indictment was the fruit of a constitutionally deficient process and may have undermined the grand jury's determination of probable cause.

At the June 30 conference, therefore, Mr. Chu expects to ask the Court to set a motion schedule based on the government's post-February 19 productions and the superseding indictment. An appropriate schedule would give Mr. Chu 30 days to file his motions after the government finally completes production of allegedly responsive material from his devices, as well as any subpoena returns then in its possession. Such a schedule will afford the defense sufficient time to load and de-dupe such productions—which, given the volume of data involved in this case, typically takes a week or more—and review it sufficiently for purposes of motion practice.

### Timing of Trial

Finally, the defense has received the Court's June 17, 2026 Order indicating that, while the Court does not currently anticipate moving the trial date, it would take up the issue at this conference. [ECF No. 71]. The Court should absolutely move the trial date; there is no good reason not to, and the grounds for adjournment have gotten materially stronger since Mr. Chu first made his application. [ECF No. 50]. Even since the Court issued its June 17 order, the grounds for adjournment have continued to mount. In the last two weeks alone, the government obtained its superseding indictment, turned Goodgame into a cooperator, and produced 104 gigabytes of unprocessed data and more than 400,000 other documents.

When the Court set the October 19 trial date, it did so "in reliance on the expectation that the government will do what it has said it is doing as ongoing review, and will complete it in a



time which is sufficient for the defense to prepare for trial." [ECF No. 44-21 at 14:24–25, 15:1–2]. That expectation has simply not been met.

Given recent events—including the superseding indictment; Goodgame's guilty plea; the status, timing, and volume of the government's productions; the ongoing briefing of Mr. Chu's first round of pre-trial motions and the government's motion to release privileged material to the trial team for further review; and the need to litigate a second round of substantial pre-trial motions—Mr. Chu respectfully submits that an adjournment is absolutely necessary to ensure that he can prepare for trial and that his due process and Sixth Amendment rights to effective counsel are protected.

The superseding indictment fundamentally alters the scope of the case. The government will surely argue that the superseding indictment's speaking allegations largely mirror those in the original. That is beside the point; the task of preparing for trial has changed dramatically. The new indictment adds four new counts and an entirely new securities fraud scheme premised on alleged misrepresentations to bond investors—just four months before the scheduled trial date. The new securities fraud counts allege a scheme spanning at least seven years and dramatically expand the potential universe of alleged misrepresentations, and concern an entirely new class of alleged victims. Whereas the original bank and wire fraud scheme rested on alleged misrepresentations to Tricolor's warehouse lenders, the securities fraud charges are premised on alleged misrepresentations to a distinct group: potential bond investors and others involved in Tricolor's securitizations. To meet these new charges, Mr. Chu will need time to re-review the discovery relating to the securitization transactions, to pursue his own discovery through Rule 17 subpoenas and witness interviews directed at the new charges, to consider retaining and consulting with securities and securitization experts, and to prepare and brief additional pretrial motions.

Goodgame's guilty plea and cooperation further compounds the need for additional time. Just weeks ago, Goodgame was a codefendant engaged in coordinated defense motion practice; now he is a cooperating witness. That about-face forces the defense to undertake substantial new investigation and to develop material to cross-examine and impeach yet another cooperating witness. Despite the massive amount of material the government has produced in discovery, this is now a three-cooperator case, and much of the key evidence will come solely from those cooperators, each of whom has obvious and substantial incentives to testify that Mr. Chu not only knew about, but "directed," the fraud. As Goodgame's attorney's comments demonstrate, each of the cooperators has a direct personal motivation to lay their crimes at Mr. Chu's feet, and to characterize their own role as "minor," and much of the evidence will turn on their testimony. For example, as detailed in the defense motions, there is virtually no documentary evidence corroborating the notion that the bank and wire fraud scheme started in 2018, as charged. The government's opposition does not bother to address the fact that the "fictitious portfolio company" referenced in paragraph 10 of the original indictment is not mentioned a single time in the discovery, [*see* ECF No. 46 at 10 ("there are precisely *zero* references to that entity anywhere in the discovery produced to date")], and instead points to Kollar's statement to law enforcement "that the loan misrepresentations at Tricolor 'began in or about 2018 at the direction of Chu,'" [ECF No. 83 at 31]. The credibility of the cooperators—each of whom has also pleaded to a false statement or destruction of evidence count and as to whom the government has already produced



some *Brady* material regarding their prior statements to law enforcement that are exculpatory of Mr. Chu—is therefore absolutely critical for the defense to fully explore in preparation for trial.

Separately, the Court should know that many of the very justifications the government invoked for an early trial date have fallen away. For example, at the March 19, 2026 status conference, the government stated that it was "prepared to try this case as early as July" based, in part, on "several other litigations or proceedings, including the Chapter 7 bankruptcy of Tricolor, [and] including two federal civil plaintiffs' actions, one assigned to Judge Rakoff, one assigned to Judge Vargas, that are, we expect, going to be waiting on this criminal proceeding to come to conclusion. I flagged in particular the Judge Rakoff case, your Honor, which, according to an order he's issued there, is to be trial ready by the end of August. You know, we are prepared to try the case before then." [ECF No. 44-22 at 12:3–21].

Start with the obvious: the government is in no position to try this case in July—it was still producing hundreds of thousands of documents as recently as June 19, with more to come. But even setting that aside, none of the "other litigations or proceedings" the government invoked is actually awaiting the resolution of this one.

The case the government "flagged in particular" is not pending at all. On June 10, Judge Rakoff granted the defendants' motions to dismiss "in their entirety," with an opinion and final judgment to follow. *See* Order, *One William Street Cap. Master Fund Ltd., et al. v. JPMorgan Chase Bank, Nat'l Ass'n. et al.*, No. 26-cv-1622 (S.D.N.Y.), ECF No. 98. That case is no reason to rush Mr. Chu to trial.

Nor is the case before Judge Vargas waiting on this one. On June 5, Judge Vargas remanded the matter before her to New York State Supreme Court, Commercial Division. *See One William Street Cap. Master Fund Ltd. et al. v. Wilmington Trust, Nat'l Ass'n. et al.*, No. 26-cv-1123 (S.D.N.Y.), ECF No. 51. That matter continues, but not in any way contingent on the proceedings here. As Judge Vargas made clear, that case—which was brought by investors in Tricolor notes against Wilmington Trust as Indenture Trustee over the trusts that held bundled Tricolor auto loan receivables, and which in turn issued notes to investors like the plaintiff, and Vervent, the backup servicer on those loans—concerns only breach of contract and fiduciary duty claims that are totally distinct from, for example, "any issue that is now being litigated in Bankruptcy Court." *Id.* at 14. Judge Vargas's opinion does not even mention the existence of this case, or the other criminal cases against Kollar or Seibold. *Id.* To the contrary, the parties there are litigating unabated, having just set a motion-to-dismiss briefing schedule that runs through the end of the summer. *See One William Street Cap. Master Fund Ltd. et al. v. Wilmington Trust, Nat'l Ass'n. et al.*, Index No. 650228/2026 (N.Y.S. Sup. Ct., N.Y. Cty.), NYSCEF Doc. No. 21 (motions due July 14; opposition due August 12; replies due August 28).

Finally, the Chapter 7 bankruptcy is plainly not waiting on this case. The Bankruptcy Court is actively administering Tricolor's liquidation, and the Trustee is litigating every claim and issue in the ordinary course. In the last few weeks alone, dozens of docket entries have hit that case— orders on turnover of property, motions by creditors on various issues such as seeking relief from the automatic stay, and Trustee motions and stipulations concerning, for example, third party



discovery.  *See In re Tricolor Holdings, LLC*, Case No. 25-33487 (Bankr. N. D. Tex.), ECF Nos. 1241–1280.

The *only* thing that is awaiting the outcome of this case is the Trustee's adversary proceeding against the four criminal defendants, which is stayed on motion of the government. *See Burns v. Chu*, Case No. 25-03126 (Bankr. N. D. Tex.), ECF Nos. 50, 170.  To state the obvious, the government cannot manufacture delay with its own stay motion and then invoke that delay to prejudice Mr. Chu.  In any event, that stay causes no prejudice to anyone else, given the ongoing administration of the Tricolor bankruptcy.  The stay of the trustee's adversary proceeding is analogous to the routine situation in which a parallel SEC enforcement action is stayed pending resolution of a criminal case.  No one could reasonably argue that the pendency of the SEC action was a reason to rush to trial in the criminal case.  So too here.

In short, whatever may once have been true of "several other litigations or proceedings . . . waiting on this criminal proceeding to come to conclusion," it is not true now.  What is true is that Mr. Chu now faces a dramatically different case: new charges, a new securities fraud theory, and a new cooperating witness who just weeks ago stood beside him in coordinated defense motion practice.  Those changes, layered on top of the government's ongoing discovery failures, make an adjournment essential to a fair trial. These changed circumstances are precisely the kind the Court contemplated when it stated it would "always be open to the possibility that events can arise" and that it would entertain an application if "the government fails to give you adequate time . . . objectively [an] unreasonable amount of time."  [ECF No. 44-21 at 15:14–20].

Mr. Chu respectfully requests that the Court adjourn the October 19, 2026 trial date and set a new schedule that affords the defense adequate time both to prepare to meet the new charges in the superseding indictment and to gather and review the exculpatory evidence described above. The defense respectfully submits that a trial date no earlier than the second quarter of 2027 is warranted—a modest request given four new counts and an entirely new securities fraud theory, and a conservative one given the more than six months the government itself took to bring these new charges after first announcing its intention to, eventually, supersede.  Setting a trial in the second quarter would still mean that Mr. Chu would get the speedy trial he desires—a trial well sooner than the median time to trial for all criminal cases in this District (25.6 months, regardless of complexity)[2] not to mention the nationwide median time to trial for fraud cases (33.3 months; 35.2 for fraud conspiracy cases)[3]—but at the same time, a fair trial that he can adequately prepare for.

---

[2]    https://www.uscourts.gov/sites/default/files/document/jb_d6_0930.2025.pdf

[3]    https://www.uscourts.gov/sites/default/files/document/jb_d10_0930.2025.pdf



Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
      cwenner@bsfllp.com
      jkelly@bsfllp.com

WEIL, GOTSHAL & MANGES LLP

Adam Fee
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
E-mail: Adam.Fee@weil.com

*Attorneys for Daniel Chu*