**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    v.

DANIEL CHU,

        Defendant.

Case No. 25 Cr. 579 (PKC)

**DANIEL CHU'S OMNIBUS REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF HIS SECOND PRETRIAL MOTIONS**

BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Daniel Chu*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT....................................................................................................................... 4

    I.   RENEWED MOTION TO DISMISS COUNT ONE OR, ALTERNATIVELY,
        FOR A BILL OF PARTICULARS AS TO COUNT ONE............................................. 4

        A.    The Superseding Indictment Does Not Adequately Allege An "Enterprise."...... 6

        B.    The Superseding Indictment Does Not Allege Who Acted "In Concert"
              With Mr. Chu to Comprise the Enterprise............................................................. 7

        C.    The Alleged Duration of the Enterprise, Eight Years, Compounds the
              Problem................................................................................................................. 10

        D.    The Superseding Indictment Also Does Not Adequately Allege That Mr.
              Chu Organized, Managed, or Supervised the "Enterprise," as Opposed to
              the Company.......................................................................................................... 11

        E.    The Superseding Indictment Fails to Adequately Allege the Gross Receipts
              Element of Count One. ......................................................................................... 12

    II.   MOTION FOR A BILL OF PARTICULARS ON COUNTS TWO TO EIGHT .......... 13

    III.  RENEWED MOTION TO UNSEAL AND DISCLOSE GRAND JURY
         RECORDS OR, ALTERNATIVELY, FOR *IN CAMERA* REVIEW ........................... 14

    IV.  MOTION TO PRECLUDE EVIDENCE AND QUASH SUBPOENAS BASED
         ON ABUSE OF THE GRAND JURY PROCESS....................................................... 18

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
   767 F.2d 26 (2d Cir. 1985) ................................................................................................ 19

*In re Terrorist Bombings of U.S. Embassies in E. Afr.*,
   552 F.3d 93 (2d Cir. 2008) ................................................................................................ 13

*United States v. Alegria*,
   980 F.2d 830 (2d Cir. 1992) .............................................................................................. 22

*United States v. Bin Laden*,
   92 F. Supp. 2d 225 (S.D.N.Y. 2000) ............................................................................... 9, 13

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) ............................................................................................ 4, 13

*United States v. Chalmers*,
   410 F. Supp. 2d 278 (S.D.N.Y. 2006) ................................................................................. 5

*United States v. Daugerdas,*
   837 F.3d 212 (2d Cir. 2016) ............................................................................................... 4

*United States v. Davidoff,*
   845 F.2d 1151 (2d Cir. 1988) .......................................................................................... 5, 14

*United States v. Estepa*,
   471 F.2d 1132 (2d Cir. 1972) ........................................................................................... 17

*United States v. Harris*,
   1993 WL 300052 (S.D.N.Y. July 30, 1993) ..................................................................... 12

*United States v. Harris*,
   79 F.3d 223 (2d Cir. 1996) ............................................................................................... 12

*United States v. Hennessy*,
   1993 WL 137766 (S.D.N.Y. Apr. 23, 1993) ...................................................................... 9

*United States v. Ho*,
   2009 WL 2591345 (D. Haw. Aug. 20, 2009) .................................................................... 18

*United States v. Hoey*,
   2014 WL 2998523 (S.D.N.Y. July 2, 2014) ..................................................................... 18

*United States v. Hogan,*
   712 F. 2d 757 (2d Cir. 1983) .......................................................................................... 16, 17

*United States v. Hundley*,
   2003 WL 21415394 (S.D.N.Y. June 19, 2003) ................................................................. 22

*United States v. Kanekar*,
   2020 WL 730353 (E.D.N.Y. Feb. 12, 2020) ...................................................................... 9

*United States v. Lino*,
2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ................................................................. 9, 13

*United States v. Lopez*,
2019 WL 4733603 (S.D.N.Y. Sept. 27, 2019) ........................................................... 11

*United States v. Murgio*,
209 F. Supp. 3d 698 (S.D.N.Y. 2016) ....................................................................... 7

*United States v. Pinto-Thomaz*,
352 F. Supp. 3d 287 (S.D.N.Y. 2018) ....................................................................... 9

*United States v. Punn*,
737 F.3d 1 (2d Cir. 2013) ........................................................................................ 19

*United States v. Rajaratnam*,
2010 WL 2788168 (S.D.N.Y. July 13, 2010) ............................................................. 9

*United States v. Raphael*,
786 F. Supp. 355 (S.D.N.Y.) .................................................................................... 22

*United States v. Reddy*,
190 F. Supp. 2d 558 (S.D.N.Y. 2002) .................................................................. 4, 13

*United States v. Rodrigues,*
2024 WL 113744 (S.D.N.Y. Jan. 10, 2024) ................................................................ 4

*United States v. Rosenthal*,
1991 WL 267767 (S.D.N.Y. Dec. 3, 1991) ................................................................. 9

*United States v. Santiago*,
174 F. Supp. 2d 16 (S.D.N.Y. 2001) .......................................................................... 5

*United States v. Savin*,
2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ................................................................. 9

*United States v. Velastegui,*
199 F.3d 590 (2d Cir. 1999) ...................................................................................... 4

*United States v. Walters,*
910 F.3d 11 (2d Cir. 2018) ........................................................................................ 4

**Statutes**

18 U.S.C. § 225 ..................................................................................... 3, 5, 7, 11

21 U.S.C. § 848 ................................................................................................ 3, 7

**Rules**

Fed. R. Crim. P. 12(b)(3)(B) ............................................................................. 3

Daniel Chu respectfully submits this reply memorandum of law in further support of his second set of pretrial motions (i) to dismiss Count One or, alternatively, for a bill of particulars as to Count One; (ii) for a bill of particulars on Counts Two through Eight; (iii) to unseal and disclose grand jury records or, alternatively, for *in camera* review; and (iv) to preclude evidence and quash subpoenas based on abuse of the grand jury process. For the reasons set forth below, those motions should be granted in their entirety.

## PRELIMINARY STATEMENT

The government's opposition, ECF No. 113 ("Opp."), fails to reckon with the fact that it charged a barely-ever used statute about which there is scant case law and which carries the most severe sanctions possible for a financial crime, but treats the charge as if it is a garden variety conspiracy charge. It isn't. Section 225, the continuing financial crimes enterprise statute, requires the government to plead and prove the defendant's role as "organize[r], manage[r], or supervis[or]" of an "enterprise"—defined as a "series of [specified] violations . . . committed by at least 4 persons acting in concert"—and that he have received certain gross receipts "from such enterprise."

The Superseding Indictment simply does not allege these elements in a way that fairly apprises Mr. Chu of the charges against him.[1] The statutory language in Count One, for example, contains a non-exhaustive list of violations, and does not identify *anyone* who committed those violations. That language, and the government's refusal to provide any particulars, leave open (among other problems) the very real possibility that it could attempt to prove at trial, and convict

---

[1] Capitalized terms not defined herein have the same meaning as in Daniel Chu's Omnibus Memorandum of Law in Support of His Second Pretrial Motions, ECF No. 99 ("Chu Br."). All references to "July 16 Schwartz Decl." refer to the Declaration of Matthew L. Schwartz in Support of Daniel Chu's Second Pretrial Motions, dated July 16, 2026, ECF No. 98. All references to "Ex. __" refer to exhibits to the Declaration of Matthew L. Schwartz in Support of Daniel Chu's Second Pretrial Motions, dated August 3, 2026.

Mr. Chu on, violations not identified in the Superseding Indictment, committed by people not identified in the Superseding Indictment. Mr. Chu cannot possibly prepare for trial while the basic elements of the Count One offense remain a mystery. Because the government has not sufficiently alleged key elements of the charge, Count One should be dismissed, or at least further particularized.

The remaining counts likewise require particulars. The Superseding Indictment charges sprawling schemes that go back eight-plus years, and as to which there is little documentary evidence (even as the volume of discovery overall is massive). To allow Mr. Chu to fairly meet the charges against him, he is entitled to basic particulars, such as the identity of his alleged co-conspirators. After being given a second opportunity, the government again declined to engage with the factors relevant to that analysis, but the fact is that in situations like this, bills of particulars are common—and for good reason.

It is perhaps not surprising that the government does not want to provide all of these particulars. Having obtained the original indictment against Mr. Chu before conducting any meaningful investigation apart from taking the word of its cooperators, and having obtained the Superseding Indictment without reviewing all of the evidence seized by warrant or responsive to grand jury subpoenas, the government understandably may not want to be pinned down; it doesn't know what the evidence is yet. But as understandable as the government's strategic desire to maintain maximal flexibility is, it doesn't accord with due process. Mr. Chu is entitled to understand the charges against him and to prepare his defense to *those* charges, not ones that may shift in unforeseeable ways as the government finally starts to learn its case.

The government's charge-first, investigate-later approach to this case raises other substantial issues. Its inexplicable omission of its cooperating witness' exculpatory statements

2

from the Search Warrant Affidavits requires the unsealing and disclosure of the grand jury records or, at least, *in camera* review. Mr. Chu acknowledges the general principle of grand jury secrecy, but the government's conduct in this case fits comfortably into exceptions. There is plenty of reason to believe—given the exculpatory statements that the cooperators made to the government, their now-unsealed plea transcripts, and statements made by other witnesses—that at the time the government obtained both the original and Superseding Indictments, it was well aware of material that directly undermined evidence it was presenting to the grand jury. And while the government need not present all exculpatory information to the grand jury, it at least has an obligation not to mislead it. The circumstances of this case raise a legitimate question as to whether the grand jury may have been misled, justifying unsealing of the minutes. Entirely separately, disclosure of the grand jury records is necessary to ensure that the government did not instruct the grand jury based on a flawed legal interpretation of the rarely-used Section 225 charge.

Finally, the government's abuse of the grand jury process—by issuing subpoenas after returning the indictment, leaving subpoenas open indefinitely, and conducting an "iterative process" for the search and production of documents from subpoena recipients—warrants an order precluding evidence obtained solely for use at trial and quashing subpoenas issued after return of the original indictment. The government's statements at last week's hearing only further muddled the picture regarding its grand jury investigation and related subpoenas. Because Mr. Chu cannot sufficiently describe all the problems with the government's conduct based on the limited information available to him, the Court should compel the government to provide clarity and suppress any evidence improperly obtained through grand jury process.

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS COUNT ONE OR, AT A MINIMUM, ORDER THE GOVERNMENT TO PROVIDE A BILL OF PARTICULARS**

The continuing financial crimes enterprise charged in Count One of the Superseding Indictment is extraordinarily broad, encompassing an alleged multi-object scheme that spanned nearly a decade.  The Section 225 charge is fundamentally different than the bank, wire, and securities fraud conspiracies charged elsewhere, and routinely charged in this District.  There is scant caselaw interpreting its elements and no model jury instructions to provide guidance on how the government must attempt to prove it.  Without any indication as to how the government may attempt to prove the charge at trial, Mr. Chu cannot adequately prepare his defense.  *See* Fed. R. Crim. P. 12(b)(3)(B); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States v. Reddy*, 190 F. Supp. 2d 558, 565 (S.D.N.Y. 2002).[2]

And while the drug kingpin statute, 21 U.S.C. § 848, may have been the legislative motivation for enacting a somewhat analogous financial crimes statute, there are important differences between the text of the two statutes that make the government's wholesale reliance on drug cases inappropriate.  *Compare, e.g.,* 18 U.S.C. § 225 (requiring that the defendant "organizes,

---

[2]    As the text of the Federal Rules makes clear, "lack of specificity" or "failure to state an offense" are legitimate grounds on which to dismiss an indictment.  Fed. R. Crim. P. 12(b)(3)(B)(iii) & (v).  The government largely relies on the wrong caselaw in suggesting (at 7 and 12) a different standard.  *United States v. Daugerdas* was decided on a post-conviction motion arguing the indictment was constructively amended.  837 F.3d 212, 225 (2d Cir. 2016).  *United States v. Walters* involved a motion to dismiss based on the government's leak of confidential grand jury information, not whether the government adequately alleged the essential elements of the offense.  910 F.3d 11, 26–27 (2d Cir. 2018) (holding that "deterrence is an inappropriate basis for reversal where means more narrowly tailored to deter objectional prosecutorial conduct are available.").  *United States v. Velastegui* enunciated the applicable standard on "the government's appeal from an order dismissing an indictment."  199 F.3d 590, 592 (2d Cir. 1999).  And *United States v. Rodrigues* recognized that "[t]here are occasions, however, where more is required" of an indictment, like here, "[w]hen one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly . . . ."  2024 WL 113744, at *2 (S.D.N.Y. Jan. 10, 2024).

manages, or supervises a continuing financial crimes enterprise" and "receives $5,000,000 or more in gross receipts from such enterprise during any 24-month period"), *with* 21 U.S.C. § 848 (requiring that the defendant "occupies a position of organizer, a supervisory position, or any other position of management" "with respect to" "five or more other persons" and that "the enterprise," not the defendant, "received $10 million dollars in gross receipts during any twelve-month period of its existence").

If Count One is not dismissed outright, a bill of particulars is especially needed here where, despite pages and pages of factual allegations and millions of pages of discovery, Mr. Chu's particular alleged role in the offense remains highly ambiguous—defined only by conclusory allegations that he directed a fraud carried out by Kollar and Seibold.  For example, the Second Circuit held in *United States v. Davidoff* that the ordinary standard for a bill of particulars "must be applied with some care" when the Government charges criminal offenses under broad statutes. 845 F.2d 1151, 1154 (2d Cir. 1988) (finding in the context of a RICO offense that "[w]ith the wide latitude accorded the prosecution to frame a charge that a defendant has 'conspired' to promote the affairs of an 'enterprise' through a 'pattern of racketeering activity' comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.").  While the government tries to cast this holding as limited to the RICO statute, it is not:  courts regularly consider "the complexity of the offense" in determining whether a bill of particulars is warranted.  *See, e.g.*, *United States v. Chalmers*, 410 F. Supp. 2d 278, 283 (S.D.N.Y. 2006); *United States v. Santiago*, 174 F. Supp. 2d 16, 34 (S.D.N.Y. 2001). Here, the Section 225 offense as charged by the government could not be broader or more complex, spanning eight years, unspecified misrepresentations, and an undisclosed number of co-conspirators.  The Superseding Indictment does not provide the notice required to enable Mr. Chu

to defend against this rare charge or the government's unclear theories about it. Therefore, Count One must be dismissed or adequately particularized.

### A.    The Superseding Indictment Does Not Adequately Allege An "Enterprise."

The government's continued refusal to particularize what the "enterprise" is that's charged in Count One requires dismissal. Despite being given the chance during a meet and confer and in two rounds of briefing, the government has failed to allege an essential element of Count One. *See* May 20 Schwartz Decl. ¶¶ 39, 41, 50; Initial Opposition at 11; Opp. at 9–10.

In response, the government asserts—without a single citation—that Mr. Chu is misinterpreting the definition of a continuing financial crimes enterprise. *See* Opp. at 9–10. Even the government's direct reference to Section 225 omits half of the text: the statute defines a "continuing financial crimes enterprise" as not just a "series of violations" (Opp. at 9), but a "series of violations" "committed by at least 4 persons acting in concert." 18 U.S.C. § 225(b).

To adequately allege the enterprise, therefore, the indictment must specify both the specific violations that comprise the "series," and the identities of the people who acted "in concert." The indictment here does neither. It identifies *some* violations, but the government expressly reserves the right to prove up entirely different ones. The government's brief says the enterprise is "five violations of bank fraud and five violations of wire fraud." Opp. at 10. But the Superseding Indictment does not say that; it says "the series of violations, as defined by Title 18, United States Code, Section 225, *includes*" those violations. Superseding Indictment ¶ 27; *see also id.* ("the defendant, knowingly organized, managed, and supervised a continuing financial crimes enterprise, in that the defendant committed violations of Title 18, United States Code, Section 1343 and 1344, *including* violations one through ten set forth below. . . ."). And although the indictment certainly elsewhere mentions Kollar, Seibold, and Goodgame, the charging language

6

for Count One does not mention *anyone* who allegedly "acted in concert" with Mr. Chu in connection with those ten violations.

The government could easily have said that it will limit its proof to the ten violations identified in the charging language, and to the four individuals identified by name elsewhere in the indictment, but it did not do so. The Superseding Indictment, in other words, leaves open the very real possibility that the government will argue at trial that the Count One enterprise consisted of different violations, or different people, as to which Mr. Chu has had absolutely no notice. Without sufficient particularity as to these allegations, Count One must be dismissed. *See, e.g., United States v. Murgio*, 209 F. Supp. 3d 698, 720 (S.D.N.Y. 2016) (requiring government to provide bill of particulars identifying the laws or duties that a co-defendant violated as part of a bribery scheme, and finding that the government's representation that it would prove, "among other things," violations of certain credit union regulations was inadequate because it preserved the government's ability to rely at trial on undisclosed legal requirements).

### B. The Superseding Indictment Does Not Allege Who Acted "In Concert" With Mr. Chu to Comprise the Enterprise.

The pleading deficiency as to the enterprise is compounded by the government's refusal to identify the individuals alleged to be the "at least 4 persons acting in concert" required by Count One. The government's response on this front is that it has identified the three cooperating witnesses, but at the same time, it refuses to commit to those being the only three members of the enterprise it will attempt to prove at trial. *See* Chu Br. at 20 (citing May 20 Schwartz Decl. ¶¶ 39, 41, 49). The government thereby leaves open the possibility that it will attempt to prove violations by enterprise members who are not identified and of which Mr. Chu has no knowledge whatsoever. In fact, the government expressly left open the possibility that it will rely on proof that people other than the three cooperators allegedly "acted in concert" with Mr. Chu when it stated that to

"act in concert," it is not necessary that someone have co-conspirator or aiding-and-abetting liability.  The government has even stated, and has not since recanted, that it may attempt to prove *factually innocent* persons were among those "acting in concert" to commit the offense.  May 20 Schwartz Decl. ¶ 49.  Since the three cooperators have each admitted their guilt to the conspiracy and substantive fraud charges against them, the government must have had in mind other people who "acted in concert" but are innocent non-conspirators—but it has not identified them.  That leaves far too much ambiguity about an essential element of the charge.  The government must, at the very least, identify all people who allegedly "acted in concert" as part of the Count One enterprise—including all unindicted co-conspirators—or confirm that it will rely only upon the three co-defendants poised to benefit from their agreements to cooperate against Mr. Chu.

In completely avoiding the relevant analysis, *see* Chu Br. at 21–22, the government solely relies on cases decided under the drug statute, 21 U.S.C. § 848.  Opp. at 11.  But the "in concert" element in that statute is so facially different from Section 225 that the caselaw interpreting it is of no help.  Section 848, on its face, requires that the charged defendant be a participant in each of the series of violations: "a *person* is engaged in a continuing criminal enterprise if . . . such violation is a part of a continuing series of violations . . . which are undertaken *by such person* in concert with five or more other persons . . . ."  21 U.S.C. § 848(c) (emphases added).  On the other hand, Section 225 requires that the "series of violations" be "committed by at least 4 persons acting in concert," and does not explicitly speak to the charged defendant's role—if any—in each of those violations.  18 U.S.C. § 225.  Therefore, it is not clear, without more specificity in the pleadings, if the defendant himself is alleged to have committed each underlying violation.  Because the two statutes' text diverge on this element, the government's reliance on *Polanco*, *Young*, and *Phibbs*—

8

all of which concern the idea that the charged defendant in an 848 count need not be conspiring with all four other members at the same time—is in error. *See* Opp. at 11.

And even if the government were correct about the way the statute works, it would still be appropriate to particularize the people who "acted in concert" here. For all of the reasons given in Mr. Chu's motion, which the government fails to address entirely, the factors that courts routinely look to in granting particulars with respect to unindicted co-conspirators counsel in favor of disclosure here. *See* Chu Br. at 21–22. "Requests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *United States v. Lino*, 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001); *accord United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) (same); *see also, e.g., United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (granting "bill of particulars as to the identities of unindicted co-conspirators"); *United States v. Rajaratnam*, 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010) (ordering government to identify tipper in insider-trading conspiracy); *United States v. Savin*, 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (defendant was "entitled to a list of known unindicted co-conspirators"); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) (ordering government to provide "the identities, including all aliases and code names, of all unindicted co-conspirators to whom it will refer at trial"); *United States v. Hennessy*, 1993 WL 137766, at *3 (S.D.N.Y. Apr. 23, 1993) (requiring bill of particulars to identify victims of each allegedly unlawful act taken in furtherance of conspiracy); *United States v. Rosenthal*, 1991 WL 267767, at *7 (S.D.N.Y. Dec. 3, 1991) ("To the extent that the government knows of other persons who took part in the charged offenses with the intent of furthering the illegal goals alleged, the government is ordered to disclose their identities and a general description of each of their alleged roles.").

Moreover, because the government may take the position that a Section 225 charge can be proven even absent the defendant's direct participation in the violations—a position that Mr. Chu would strongly dispute—the need for particularity regarding this element is even more critical. Mr. Chu is entitled to a bill of particulars specifying who exactly was acting in concert with whom while committing each of the alleged violations making up the "series." Otherwise, Count One must be dismissed.

### C. The Alleged Duration of the Enterprise, Eight Years, Compounds the Problem.

Nowhere does the government address Mr. Chu's concerns regarding the exceedingly broad scope of the alleged enterprise. That the government's cooperating witness apparently manufactured certain allegations from whole cloth, such as the so-called "fictitious company," Chu Br. at 23–24, should concern the Court. So should the government's reliance on the same cooperator to backdate the charged enterprise to 2018. For example, at the last conference before the Court, the parties discussed an independent review of allegations of potential double-pledging at Tricolor undertaken in 2021 by the law firm of Davis Polk & Wardwell and the accounting firm Ernst & Young. That review concluded that the double-pledging issue was the product of a systems error, that it was inadvertent, and that it affected an immaterially small portion of the loans issued by the company. Ex. 15 (July 29, 2026 Hr'g Tr.) at 17:8-18:5. And yet the government maintains that the "approximate time period" identified for each and every one of the ten violations identified in the charging language of Count One began years—in some cases up to five years— earlier. *See* Ind. ¶¶ 28-29. With no documentary evidence to support these allegations, and compelling evidence to the contrary, Mr. Chu is left to guess what conduct the government believes the indictment covers.

10

By the trial date, the alleged enterprise will have started nine years prior, but the vast majority of discovery—and even the speaking allegations in the indictment—concern a much narrower and more recent timeframe.  In the meantime, Mr. Chu is having to expend significant resources attempting to fill in the holes.  The government should not be allowed to generally allege such a lengthy period of conduct that it has no intention or likelihood of proving at trial.

**D.      The Superseding Indictment Also Does Not Adequately Allege That Mr. Chu Organized, Managed, or Supervised the "Enterprise," as Opposed to the Company.**

The Superseding Indictment also fails to adequately allege Mr. Chu's supposedly supervisory role in the enterprise.  The government's "bullet-point lists," Opp. at 11 (citing Initial Opposition at 13–15, 21–22) cannot provide notice where they are also vague and conclusory.  *See United States v. Lopez*, 2019 WL 4733603, at *2 (S.D.N.Y. Sept. 27, 2019) ("Although the language of the statute may be used to describe the offense, the description 'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'").

The examples excerpted by the government allege in the most general of terms Mr. Chu's direction of the alleged scheme.  *See, e.g.*, Initial Opposition at 13 ("At CHU's direction, multiple Tricolor executives repeatedly defrauded lenders using various fraudulent schemes"); *id.* at 14 ("At CHU's direction …, Kollar and Seibold, sometimes with the assistance of others, executed the schemes to defraud Tricolor's lenders by submitting fraudulent borrowing base reports."); *id.* at 22 ("To minimize the risks of discovery . . . and with the knowledge of DANIEL CHU, the defendant, and Goodgame, Kollar and Seibold fabricated and falsified backup records . . .").  The only detail concerns how Kollar and Seibold carried out the fraud, not Mr. Chu's alleged role.  The government cannot rely on these conclusory allegations.  To provide adequate notice, it must allege how Mr. Chu allegedly directed the specific fraudulent schemes.  That it cannot do so reveals the

11

central problem with the Superseding Indictment:  it seeks to pin responsibility on Mr. Chu for what was done and directed by Kollar.

> **E.  The Superseding Indictment Fails to Adequately Allege the Gross Receipts Element of Count One.**

The government also gets it wrong as to the gross receipts element of Count One.  The district court opinion in *United States v. Harris*, 1993 WL 300052, at *8 (S.D.N.Y. July 30, 1993), cited in Opp. at 12, is not binding on this Court and, Mr. Chu respectfully submits, reflects an incorrect reading of the statute.  Section 225 refers to the "gross receipts" that are "receive[d] . . . from such enterprise."  18 U.S.C. § 225(a)(2).  A plain reading of that provision therefore requires that the gross receipts arise *from* the enterprise, *i.e.*, from the "series of violations . . . committed by at least 4 persons acting in concert."  18 U.S.C. § 225(b).  The statute does not contemplate a reading of gross receipts that includes legitimate salary and bonuses, even if (as on the government's theory) the company's ability to award that legitimate salary and bonus was a byproduct of the charged scheme.

The Second Circuit in fact denied Harris' *ex post facto* claim and upheld the jury instructions in that case precisely because the government "tied" Harris' gross receipts "to the series of violations."  *United States v. Harris*, 79 F.3d 223, 230 (2d Cir. 1996).  There, "the jury was instructed that, in order to find Harris guilty, it must determine that he received $5 million or more in gross receipts *from the series of violations* during any 24–month period."  *Id.* (emphasis added).  Although the court ultimately rejected Harris' challenge, it did so because the jury instructions required that the jury only consider money unlawfully obtained "*as a result of the series of violations* consisting of wire and bank fraud."  *Id.* (emphasis added).  The government must similarly allege that Mr. Chu's receipts are tied to the violations, not generally to his leadership of Tricolor, and its proof at trial must be limited in the same way.

12

**II.      MOTION FOR A BILL OF PARTICULARS ON COUNTS TWO TO EIGHT**

The government must adequately particularize the remaining counts in the Superseding Indictment.  The government asserts that Mr. Chu has received adequate notice from (1) "the Superseding Indictment," (2) "discovery produced to date," and (3) "additional information that the Government has provided and will provide . . . ."  Opp. at 15.  Not so.

*First*, the Superseding Indictment does not provide adequate notice, including for the reasons described above.  Beyond the two overt acts alleged in Count Seven, Counts Two through Eight simply recite the statutory elements.  *See* Superseding Indictment ¶¶ 30–47.  The government ignores *Lino* and its recognition that courts "routinely award" bills of particulars identifying each false statement the government may attempt to prove at trial.  2001 WL 8356, at *6 (collecting cases).

*Second*, the "mountains of documents" provided by the government "do[] 'not fulfill its obligations.'"  *United States v. Reddy*, 190 F. Supp. 2d 558, 565 (S.D.N.Y. 2002) (quoting *Bortnovsky*, 820 F.2d at 575).  To the contrary, "sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."  *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008).  As demonstrated elsewhere, the government has produced millions of documents in discovery, much of it entirely irrelevant.  *See* July 16 Schwartz Decl. ¶ 16; Chu Br. at 9; ECF No. 111.  Far from shedding light on the allegations in the Superseding Indictment, the volume and nature of discovery has actually served to obscure them.

*Third*, the government has not provided any additional information regarding Counts Two through Six.  *See* Chu Br. at 12.  The government's refusal to do so thus far further suggests that its pretrial disclosures will be similarly imprecise.  In addition, the information provided on Counts Seven and Eight is wholly inadequate to satisfy its pleading obligations.  The government's "non-

exhaustive" offering, *see id.*, necessarily fails to provide notice as to the conduct the government omitted from its letter. *See Davidoff*, 845 F.2d at 1155 ("Some of the transcripts of tapes that the Government now asserts provided notice of the Pandair extortion were not included on a list furnished the defense identifying tapes to be used at trial. If anything, this omission gave Davidoff some reason to believe that the prosecution would *not* seek to prove the Pandair extortion. The references in the tapes that were identified for use at trial are too oblique to provide notice of the Pandair extortion." (emphasis in original)). The potential that the government cherry-picked a fraction of the documents it intends to introduce, and may have selectively omitted other evidence it will seek to rely upon at trial as to one or more violations, warrants a bill of particulars.

## III.  THE COURT SHOULD ORDER DISCLOSURE OF THE GRAND JURY RECORDS OR AT LEAST REVIEW THEM *IN CAMERA*

The government misses the central premise of Mr. Chu's motion. This is not a routine request to pierce grand jury secrecy based on speculation. The unusual facts of this case give rise to serious questions about the integrity of the grand jury process that warrant disclosure or, at a minimum, *in camera* review.

*First*, the government argues that Mr. Chu's Renewed Motion is "substantially the same" as the motion pertaining to the original indictment. It isn't. This is not a case where the government uncovered exculpatory information only after obtaining an indictment. The government possessed information from its own principal witnesses—Kollar and Seibold—before it sought *either* indictment. As discussed in Mr. Chu's opening papers, the government learned from Kollar and Seibold in September 2025 that neither had information establishing that Mr. Chu knowingly participated in the alleged fraud. *See* Initial Motions at 3; July 16 Schwartz Decl. Ex. 1 (*Brady* Letter). Kollar reported that ████████████████████████ ████████████████, acknowledged that certain purportedly inculpatory communications may

14

have had innocent explanations, and described Mr. Chu appearing "shocked" when the misconduct was revealed. *Id*. at 4. Seibold likewise stated that he never witnessed discussions between Chu and Kollar concerning loan misrepresentations and never spoke to Chu about any such communications. *Id*. at 5.

Now armed with the transcripts of Kollar and Seibold's guilty plea hearings, Exs. 16 & 17, these concerns are even more acute. Although both men were signed up to cooperate against Mr. Chu, neither of them mentioned him at all, either by name or description. Kollar referred only to conspiring with "others," and does not mention acting under anyone else's supervision or direction. Ex. 16 at 29. Seibold, meanwhile, (correctly) laid the fraud at Kollar's feet:

> In the time that I was employed as a financial analyst and forward, I was instructed by others at the company, *including the CFO*, to become involved in double-pledging loans between credit warehouses, as well as pledging securitized loans to credit warehouses. This was done by taking loans already pledged to one credit warehouse, and pledging them again to another warehouse.
>
> I was also directed to - and did - send false documents via email and other electronic means to these financial institutions for funding requests on the credit warehouses. I was also involved in approving and releasing wires for these funding requests *that the CFO initiated* at the direction of others.
>
> When all of this was found out by the banks, *I was contacted by the CFO, and he instructed me to delete some messages* regarding the fraudulent scheme, at which point I deleted the messages to impede any investigation and was afraid to go to jail.
>
> I agree that I committed all the essential elements of what I have been charged with in each count. I admit that I willfully agreed and I joined a group of people at the company, Tricolor, *including the CFO*, that had knowledge of and who participated in this fraudulent scheme.

Ex. 17 at 29–30 (emphases added).  These pleas took place the day after the government obtained an indictment for Mr. Chu, and were presumably the product of extensive proffers and negotiations.[3]

The government again fails to address whether any one of those facts were presented to the grand jury, or whether it supplemented the presentation with the previously identified exculpatory information in obtaining the Superseding Indictment.  Instead, the government argues that it was under no obligation to present those facts.  Opp. at 20.

But Mr. Chu's motion does not ask the Court to impose a freestanding obligation on the government to present all exculpatory evidence to the grand jury.  *See* Opp. at 20.  Instead, the motion is grounded in the government's demonstrated pattern of selective and misleading reliance on cooperator hearsay that is not backed up by independent, reliable evidence—the same pattern that infected the Search Warrant Affidavits.  The government fails to grapple with the fact that long before either indictment was returned, it possessed information from its own witnesses that undermined its theory that Mr. Chu knowingly directed the charged fraud.

Mr. Chu's motion does not contend that the government had a generalized obligation to gather and present all arguably exculpatory material, rather it invokes the government's separate duty to avoid deceiving the grand jury as to the reliability of the evidence it chose to present.  Here, the government chose to infect the grand jury's determination by selectively presenting partial cooperator narratives that omitted contemporaneous statements by the same cooperators that materially contradicted the government's theory.  *See United States v. Hogan,* 712 F. 2d 757, 761 (2d Cir. 1983).

---

[3]     As noted in Mr. Chu's opening brief, David Goodgame's recent plea and statements to the government likewise were inconsistent with Mr. Chu's guilt, let alone the notion that he directed a continuing financial crimes enterprise.  *See* Chu Br. at 8.

16

*Second*, the government also fails to engage with the fact that its own examples of Mr. Chu's purported involvement are dependent almost entirely on Seibold's account of events or interpretations of conduct allegedly communicated through Seibold and other cooperating witnesses. *See* Chu Br. at 35. That omission is critical because Seibold contemporaneously stated he never witnessed discussions between Mr. Chu and Kollar about loan misrepresentations and never spoke with Mr. Chu about such matters. *See* July 16 Schwartz Decl. Ex. 1 (*Brady* Letter) at 5. If Seibold's testimony formed an important basis for the grand jury's probable cause determination, then how the government characterized his knowledge to the grand jury matters enormously. *United States v. Estepa*, 471 F.2d 1132, 1134–37 (2d Cir. 1972) (dismissing indictment after finding that sole grand jury witness, a police officer with severely limited personal knowledge of a drug transaction, testified "at length and in detail" about events he had not seen or heard without any indication to the grand jury of the limits on his knowledge); *see also Hogan,* 712 F. 2d at 761 ("[O]ur decision in [*Estepa*] indicates that extensive reliance on hearsay testimony is disfavored" and "the government prosecutor, in presenting hearsay evidence to the grand jury, must not deceive the jurors as to the quality of the testimony they hear").

*Third*, Mr. Chu independently seeks review of the grand jury instructions on the elements of Count One, a ground wholly unrelated to the presentation of exculpatory evidence. Even if the Court were to reject every argument concerning the cooperators' statements—which given the egregiousness of the conduct here it should not—*in camera* review would still be independently warranted because of the government's apparent misunderstanding of crucial elements of the charged offense.

As set out in Mr. Chu's opening papers, courts have ordered dismissal or conducted *in camera* review where there was reason to question whether a grand jury received proper legal

instructions. *See United States v. Hoey*, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (Castel, *J.*) (ordering *in camera* review of grand jury instructions because a significant "change in the law" made it possible that "the grand jury did not receive the proper instructions"); *United States v. Ho*, 2009 WL 2591345, at *3–5 (D. Haw. Aug. 20, 2009) (inspecting grand jury instructions *in camera* because the prosecutor had made "on-the-record statements" reflecting a misunderstanding of a necessary element and, as a result, the court could not "rule out that the government did not properly instruct the grand jury"). The government's opposition makes clear why that need is particularly acute here. It is clear the parties sharply disagree about the meaning of key elements of Section 225, and the government's opposition devotes substantial discussion to those questions, relying almost entirely on analogies to drug cases because direct authority interpreting Section 225 is exceptionally limited. *See, e.g.*, Opp. at 11. Given that there are no model jury instructions for the charge, it is especially important to know how the grand jury was instructed, and *whether* they were instructed on each of the statute's elements. *See Hoey*, 2014 WL 2998523, at *3. Therefore, at a minimum, the Court should conduct an *in camera* review of the grand jury instructions and the testimony relating to Mr. Chu's alleged knowledge, intent, and supervisory role.

## IV.    THE COURT SHOULD PRECLUDE EVIDENCE AND QUASH SUBPOENAS BASED ON ABUSE OF THE GRAND JURY PROCESS

At the most recent status conference, the government confirmed Mr. Chu's concerns with respect to its abuse of the grand jury process. Counsel for the government told the Court that it has been engaged in "an iterative process with the [Tricolor] trustee where if we did believe there were materials missing, we requested them." Ex. 15 (July 29, 2026 Hr'g Tr.) at 16. In other words, the government admits that it has used open-ended subpoena return dates to direct and shape the scope of its subpoena returns from the Tricolor trustee for many months after the original indictment, long after the jury's charging function was complete.

18

The government's opposition does not dispute that this "iterative process" occurred, but fails to explain how continuing to negotiate the scope of subpoena compliance with the Tricolor trustee for the better part of a year, and for many months post-indictment, is consistent with the rule that the grand jury may not be used "for the sole or dominant purpose of preparing an already pending indictment for trial." *United States v. Punn*, 737 F.3d 1, 6 (2d Cir. 2013) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 29 (2d Cir. 1985)).

To be clear, Mr. Chu is not arguing that the government could never receive another document after the original indictment was returned in December 2025. Mr. Chu does not generally object to rolling productions, or to the ordinary back-and-forth that accompanies subpoena compliance where voluminous documents are concerned.

Rather, the government's abuse lies in maintaining open-ended, "iterative" negotiations with subpoena recipients to continue building its trial evidence on the already pending charges. The government's own description of that process, offered explicitly at the July 29 conference, confirms exactly what the defense feared: the government was not simply receiving compliance with a subpoena over time, but was actively requesting additional, unspecified categories of materials from the trustee as its trial preparation evolved. This is no different than issuing new grand jury subpoenas post-indictment: by leaving the original (presumably extraordinarily broad) subpoenas open, the government can accomplish the same end and complete the investigation it failed to do before rushing to the grand jury to indict.

Of course, Mr. Chu has no way of determining whether those continuing requests and responses were merely logistical, or whether they extended to substantive negotiations over which categories of documents would or would not be produced. It would be one thing if the "iterative" process identified sources of documents that had not been searched, like disaster-recovery copies,

19

documents at Iron Mountain, inboxes of former employees, or the like.  It would be quite another if, hypothetically, nearly a year after the indictment was returned, the government was asking the Trustee for documents on specific subject matters, or to rebut certain arguments, to develop its proof at trial.  And then there is what the government did not request from the Trustee, or even expressly asked not to possess, which raises serious *Brady*-related questions.

As counsel explained at the July 29 conference, there is a specific risk that the government may have been told about material bearing on Mr. Chu's knowledge and intent—for instance, materials relating to the 2021 whistleblower investigation into double-pledging conducted by Davis Polk and Ernst & Young—and either declined to pursue that material or treated it as outside the scope of what it wished to collect.  *See* Ex. 15 (July 29, 2026 Hr'g Tr.) at 17–18.  The Court described it as "at least peculiar, if not more" that the trustee, a bankruptcy fiduciary with every incentive to cooperate with the grand jury investigating the alleged fraud—would nonetheless assert a corporate privilege to withhold responsive materials while the government would "not make due inquiry" when it knew that the Trustee was making that assertion.  *Id.* at 14–15.  In other words, even the Court, working only from what the government disclosed at the status conference, could not tell whether the trustee's production was complete or what, if anything, had been carved out of the government's requests through months of back-and-forth.

That exchange confirms the concerns identified in Mr. Chu's opening brief.  If the government may issue extraordinarily broad subpoenas before an indictment, leave them open indefinitely, and then engage in continuing, iterative discussions with recipients about what additional materials it wishes to receive months or even a year later, there is no meaningful distinction between that practice and simply issuing new grand jury process to investigate already-charged conduct.  Under the government's theory, prosecutors could issue an expansive subpoena

before any charges are returned and then continue tailoring, refining, and expanding the resulting productions indefinitely through subsequent, off-the-record communications with the recipient—all under the cover of the grand jury's investigatory authority. Accepting that end-run practice would read the restriction on using the grand jury primarily to prepare a pending case for trial out of existence.

Nor does the government's proffered *ex parte* submission answer Mr. Chu's concerns. Whatever information the government may have provided to the court *ex parte*, the publicly available record demonstrates that the government continued receiving subpoena returns and continued engaging with subpoena recipients long after the original indictment. The government's own July 2026 productions include returns from Tricolor, JPMorgan, CBIZ and Ares—entities subpoenaed seven to ten months earlier. *See* July 16 Schwartz Decl. Exs. 7, 8, 9, 10; July 16 Schwartz Decl. ¶ 26–27.

Accordingly, the government's argument that any relief should be limited to the six specific subpoenas Mr. Chu has managed to identify should be rejected. Mr. Chu identified those subpoenas because they are the only subpoenas about which he presently has any information. But the entire premise of this motion is that the defense does not and cannot know the full scope of the government's grand jury activity in this case. The government cannot simultaneously invoke grand jury secrecy to withhold the universe of subpoenas it has issued and then fault Mr. Chu for failing to identify subpoenas he has no means of discovering.

At a minimum, the Court should require the government to provide a complete accounting, either to Mr. Chu or for *in camera* review, identifying: (1) each grand jury subpoena issued in connection with this investigation after September 2025; (2) the date each subpoena was issued; (3) the recipient of each subpoena; (4) whether productions were received in response; (5) the dates

21

of those productions; and (6) whether the government engaged in substantive communications with the recipient regarding the scope, prioritization, supplementation, narrowing, or withholding of responsive materials. The government's own submissions to the Court confirm that no such accounting presently exists in any form accessible to the defense: the government has repeatedly declined to say whether the grand jury continues to investigate, what conduct or individuals remain under investigation, or which grand jury or juries returned the two indictments in this case.

The Court should also conduct an *in camera* review of the communications between the government and its major subpoena recipients, particularly the Tricolor trustee and JPMorgan. Those communications bear directly on whether the government's "iterative process" amounted to little more than an ongoing, post-indictment investigative relationship through which prosecutors continued directing the collection of evidence relating to already-charged conduct. The existence, scope, and nature of the government's communications with the trustee and JPMorgan bear directly on whether subpoena compliance was in fact complete, and whether materials were being withheld, narrowed, or otherwise shaped through those ongoing discussions. Only through such review can the Court meaningfully assess whether the government's use of the grand jury remained an appropriate investigative tool or became an impermissible mechanism for continuing to investigate and prepare its already-pending case for trial. *United States v. Hundley*, 2003 WL 21415394 at *1 (S.D.N.Y. June 19, 2003) (requiring the prosecutor to submit the witness's grand jury testimony to the court for *in camera* review to determine "if the questioning has strayed into areas that appear to be trial preparation"); *United States v. Raphael*, 786 F. Supp. 355, 359 (S.D.N.Y.), *aff'd sub nom. United States v. Alegria*, 980 F.2d 830 (2d Cir. 1992) (ordering the government "to turn over all of the Grand Jury transcripts at issue to the Court for an *in camera* examination").

The government's second argument—that Mr. Chu's motion must be limited to the single post-indictment, pre-Superseding Indictment subpoena he was able to identify, the Dropbox subpoena—fails for the same reason discussed above:  it would require Mr. Chu to divine the existence of subpoenas that the government alone knows about and has declined to disclose.  The government cannot use the secrecy that Rule 6(e) affords it as both a shield against disclosure and a sword to defeat the very motion that secrecy necessitates.  At a minimum, the Court should order the government to identify every grand jury subpoena issued between the original indictment and the Superseding Indictment that sought evidence relating to the conduct charged in the original indictment, so that Mr. Chu and the Court can assess whether each was issued for a proper investigative purpose or to prepare the already-pending case against him for trial.

## CONCLUSION

For the foregoing reasons, Mr. Chu's motions should be granted in their entirety.

23

Dated:    August 3, 2026
          New York, New York

                              Respectfully Submitted,

                              /s/ *Matthew L. Schwartz*
                              Matthew L. Schwartz
                              Craig A. Wenner
                              Jacqueline C. Kelly
                              BOIES SCHILLER FLEXNER LLP
                              55 Hudson Yards
                              New York, New York 10001
                              Telephone: (212) 303-3646
                              E-mail: mlschwartz@bsfllp.com
                                      cwenner@bsfllp.com
                                      jkelly@bsfllp.com

                              Marshall Dore Louis
                              BOIES SCHILLER FLEXNER LLP
                              100 Southeast 2nd Street, Suite 2800
                              Miami, Florida 33131
                              Telephone: (305) 357-8438
                              Email: mlouis@bsfllp.com

                              Adam Fee
                              WEIL, GOTSHAL & MANGES LLP
                              1999 Avenue of the Stars, Suite 1800
                              Los Angeles, California 90067
                              Telephone: (213) 667-5100
                              E-mail: adam.fee@weil.com

                              *Attorneys for Daniel Chu*

24