BSF | BOIES SCHILLER FLEXNER

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

September 4, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

**Re: *United States v. Chu*,
Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu. We write, as directed by the Court during the July 29, 2026 conference, in further support of Mr. Chu's letter, ECF No. 139 ("Chu Ltr.") regarding the 20 documents from Mr. Chu's privilege logs that the government selected as exemplars (the "20 Exemplars") in connection with its letter motion of May 18, 2026 (the "Privilege Motion"), and in response to the government's letter of August 28, 2026, ECF No. 150 ("Gov't Ltr.").

## I. The Government Has Failed to Engage with Mr. Chu's Good Faith Assertions of Privilege

The government's latest submission fails entirely to engage with the document-by-document privilege assertions that the Court required. It was the Court that proposed the approach of having the government select 20 exemplar documents, with the idea being that the exemplar "documents go only to [the Court], and I'll rule. And based on those exemplar rulings, lawyers of good faith ought to be able to negotiate much of the rest." ECF No. 140-14 (July 29 Hr'g Tr.) at 28:21–24. The government's response unilaterally determines not to proceed in the way the Court ordered, and instead relies entirely on its categorical waiver arguments. The government, therefore, has waived any argument as to privilege other than those blanket ones.

Mr. Chu, on the other hand, carefully—and at not insignificant expense—complied with the Court's directive. In response to the Court's directive and in an effort to narrow the issues in dispute with respect to the Privilege Motion, Mr. Chu carefully reviewed the materials subject to the motion to assert privilege claims and offered on multiple occasions to confer further with the government as to any disputes. Mr. Chu: (1) timely provided two itemized privilege logs compliant with Local Rule 26.2, Chu Ltr. at 3; (2) conducted a follow-up, voluntary review resulting in his withdrawal of privilege claims over 109 documents, ECF No. 140 ¶ 31, and (3) currently asserts privilege over just 1,355 documents, after initially estimating the universe to be

BSF

closer to 5,000 documents,[1] Chu Ltr. at 4. As made clear in the privilege logs, the subject matter of these documents is related to personal legal advice rendered to Mr. Chu, and is unrelated to the factual allegations in the Superseding Indictment—except on the government's theory that anything having anything to do with money is evidence of motive. The legal advice relates primarily to Mr. Chu's family estate planning (especially in light of the birth of his two very young children) and other non-business matters. Nonetheless, the government wants to invade Mr. Chu's privilege to get more information about his financial status. Even after Mr. Chu provided more detailed, document-specific information about the communications in the second itemized log, the government refused to engage on a document-specific level with the assertions. This approach is starkly at odds with the Court's intended purpose here to narrow the issues in dispute.

The Court clearly explained the purpose of the privilege logs: "that way when I rule [on the Privilege Motion], I will have a narrower universe to do so." ECF No. 140-11 (June 30 Hr'g Tr.) at 21:17–23; *see also id.* at 13:22–14:6. And in ordering the present briefing regarding the 20 Exemplars, the Court reasoned that "the government knows the date ranges that they are potentially most interested in or most dubious of the propriety of a privilege, so the government gets to pick those." ECF No. 140-14 (July 29 Hr'g Tr.) at 28:11–16. Assuming the government would actually engage with the 20 Exemplars and argue "why those documents are not protected," *id.* at 31:6–12, the Court provided reasonable process by which the parties, through cooperation, could obviate the need for a ruling on the government's binary Privilege Motion: "based on those exemplar rulings, lawyers of good faith ought to be able to negotiate much of the rest." *Id.* at 28:17–24.

But the government is uninterested in any good faith negotiation. With respect to the specific exemplars that the government itself chose, it "does not contest" that the communications on Mr. Chu's privilege logs "include[] legal advice or requests for legal advice"—a commendable concession that is entirely consistent with Mr. Chu's careful assertion of privilege. Gov't Ltr. at 2. "Instead, the [g]overnment's challenge hinges on" only its sweeping, categorical arguments that Mr. Chu had no reasonable expectation of privacy based on a company handbook he had full authority over, or that he waived any privilege when he was compelled to turn over his laptop for imaging. *Id.* The government's demand for an all-or-nothing ruling demonstrates why its Privilege Motion should be denied outright. With over 1,355 admittedly-privileged documents at issue, concerning matters that are irrelevant to the charged offenses, there is no good reason to allow a wholesale invasion of Mr. Chu's privileged communications.

## II. The Government's Privilege Motion is Without Merit

As demonstrated in the initial opposition to the Privilege Motion, ECF No. 59; *see also* Chu Ltr. at 11–13, Mr. Chu had a reasonable expectation of privacy in his use of a company email address, and did not waive his privilege when his laptop was imaged. The additional points raised in the government's latest letter, Gov't Ltr. at 2–3, do not suggest otherwise.

---

[1] For comparison, on just the laptop imaged by A&M alone there is more than 13 gigabytes of data. Schwartz Reply Decl. ¶ 3.

BSF

*First*, the government contends that Mr. Chu has not carried his burden to establish privilege. Gov't Ltr. at 2. But Mr. Chu has done so by providing the information required under the local rules for supporting his privilege claims on the itemized logs. The government "does not contest" Mr. Chu's individual claims of privilege, and after Mr. Chu makes a threshold showing that the information is privileged, it is the government's burden to establish that "the evidence it uses to prosecute an individual was derived from legitimate, independent sources," *United States v. Schwimmer*, 924 F.2d 443, 446 (2d Cir. 1991), or that Mr. Chu waived privilege. *United States v. Finazzo*, 2013 WL 619572, at *6 (E.D.N.Y. Feb. 19, 2013) (internal quotation marks and citation omitted) (a defendant "need not take on the burdensome (and borderline impossible) task of showing he has not waived privilege until the government demonstrates facts suggesting there was a waiver"). Here, the government has not even attempted to contest Mr. Chu's individual claims of privilege and relies solely on erroneous all-encompassing arguments to attempt to get the Court to find waiver.

The government also contends that Mr. Chu could not adequately oppose the Privilege Motion without submitting an affidavit. Gov't Ltr. at 2. However, Mr. Chu has submitted documentary evidence that is more than sufficient to establish his reasonable expectation of privacy, and there is no specific requirement of an affidavit. For example, the evidence submitted by Mr. Chu establishes that the terms of his employment were exclusively established and governed by his unique Employment Agreement, not the terms of Tricolor's Employee Handbook applicable to other employees. Indeed, Mr. Chu's Employment Agreement makes no reference whatsoever to Tricolor's Employee Handbook at all. *See generally* ECF No. 60-1. In contrast, and as discussed further below, when employees *were* subject to the Employee Handbook, their employment agreement specifically referenced and incorporated the terms of the Handbook. *Compare* Ex. 1 at 2.[2] The government's assertion that the only way that Mr. Chu can substantiate his claim of privilege is to submit an affidavit is an unsupported attempt to force Mr. Chu to choose between waiving his valid privilege or submitting to cross-examination and potentially waiving his Fifth Amendment rights. Nothing requires that choice, particularly when there is more than sufficient evidence that the relevant communications were privileged in nature (as the government concedes) and that Mr. Chu was entitled to use his Tricolor email and Tricolor devices for personal communications.

The government's entire argument relies on the text of the Handbook—which, as we have pointed out before, permits employees to use their corporate email and devices for personal reasons. But putting that aside, the government points to *zero* evidence indicating the Handbook applied to Mr. Chu or was ever referenced or cited in connection with his employment. That is because there is no such evidence, and the Handbook did not apply to him as CEO—which is evident in multiple aspects of the Handbook. This dearth of evidence, combined with the

---

[2] All references to "Ex. __" refer to exhibits to the Reply Declaration of Matthew L. Schwartz in Further Support of Daniel Chu's Letter Regarding the Government's 20 Exemplar Documents Within the Scope of the Government's Privilege Motion, dated September 4, 2026 ("Schwartz Reply Decl.").

BSF

affirmative conditions of his employment set forth in the Employment Agreement, establishes that the Handbook did not apply to Mr. Chu. *See* ECF No. 59 at 9–10, 14 (setting forth conditions of employment). In comparison, Mr. Chu signed employment offer letters to others, including executives, stating expressly that the offeree would be bound by the Handbook—demonstrating both Mr. Chu's control over the enforcement of the Handbook, and that the Handbook explicitly applied to other employees, unlike Mr. Chu. For example, the offer letter Mr. Chu sent to a candidate for Vice President-Corporate Strategy—a senior position that reported directly to the CEO—expressly stated that [redacted] Ex. 1 at 2. Mr. Chu's Employment Agreement, ECF No. 60-1, on the other hand, did not reference the Handbook, nor did Mr. Chu ever acknowledge or sign that he was bound by it—because he wasn't.

Further, as Chief Executive Officer, Mr. Chu had full authority over the Employment Handbook, including modifications and amendments thereto. ECF No. 60-2 at 1 ("The Company may, at any time, in its sole discretion, modify or vary from anything stated in this handbook, with or without notice, except for the rights of the parties to terminate employment at will."). Even individuals outside the company understood Mr. Chu to be the ultimate decisionmaker with respect to the application and enforcement of the Handbook. *See* Ex. 2 [redacted] Ex. 3 [redacted] The government's focus on a single provision of the Handbook ignores this evidence altogether.

*Second*, the government is wholly mistaken in summarily asserting that the relevance of Mr. Chu's privileged communications has no bearing on its motion. Gov't Ltr. at 3. As the defense pointed out in its prior letter, Chu Ltr. at 2, 4 & n.4, and as the government entirely failed to address, although its original privilege motion was addressed to both the laptop image produced to it by subpoena (identified as 1B10) as well as materials on the devices obtained by search warrant, the materials listed on the privilege logs and *all* twenty of the exemplar documents come from devices the government seized by search warrant. As set forth in Mr. Chu's August 21, 2026 letter, 14 of the exemplars are from the seized computer image identified as 1B2, which is particularly vexing because that is the device that the government agreed not to review at all. Chu Ltr. at 6. The remaining 6 exemplars are from a seized cellphone identified as 1B1.

Because the documents at issue are not relevant and responsive to the search warrants that governed the seizure of the devices where those documents are found, the government has no right to the documents whatsoever. *United States v. Matias*, 836 F.2d 744, 747 (2d Cir. 1988) ("[W]hen items outside the scope of a valid warrant are seized, the normal remedy is suppression and return of those items."). The government argues only that Mr. Chu's privileged communications concerning "estate planning and properties *may* be relevant" to motive or efforts to conceal allegedly fraudulent proceeds. Gov't Ltr. at 3 (emphasis added). In other words, the government wants to comb through Mr. Chu's privileged communications for peripheral evidence it knows will not affirmatively prove the charges. Even by the government's account, the relevance of the

BSF

privileged communications is tangential, at best, and the Court should not give the government free reign over them. To the contrary, materials that are not relevant to the warrants should be excluded from the government's motion altogether. *In re Search Warrant for L. Offs. Executed on Mar. 19, 1992*, 153 F.R.D. 55, 58 (S.D.N.Y. 1994) ("The Government should return all such items which are irrelevant to the investigation, or which are conceded to be privileged intrinsically and without regard to where they were seized."). Accordingly, the government's back-of-the-hand response as to relevance is reason enough to deny the government's motion. Relevance is not merely a fact to consider within the *Asia Global* analysis, it is a gating issue that is dispositive of whether or not the government has any authority to seize or use those materials at all. This is especially true given that the majority of the documents chosen as exemplars by the government are sourced from a device they have already agreed not to review altogether.

*Third*, the government mischaracterizes the documentary evidence Mr. Chu submitted showing that he did not waive his personal privilege by allowing his laptop to be imaged in September 2025. Gov't Ltr. at 3. Mr. Chu sought, *and received*, assurances by those who imaged his laptop that any search of his communications would be limited to "relevant, not personal, information" and that there would be further discussion and agreement prior to any disclosure. ECF No. 82-3 at 2–3. That those steps did not occur before the company produced the image to the government is no fault of Mr. Chu's and is not evidence of waiver. The question for purposes of waiver is whether Mr. Chu took reasonable steps to maintain the confidentiality of privileged communications. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985). Faced with a request to image his laptop for purposes of preserving evidence, and wishing to cooperate with the investigation, Mr. Chu agreed to allow his laptop to be imaged *subject to assurances by both A&M and Sidley* that his personal communications and files would be protected. That those assurances weren't honored says nothing about whether Mr. Chu required them, and whether they were given to him.

Mr. Chu's reliance on Sidley and A&M's assurances was particularly and objectively reasonable in light of his prior experiences at the company—evidence that the government completely ignores. *See* ECF Nos. 59 at 13, 60-10, 60-11. In that prior instance in which Mr. Chu's emails were relevant to an internal investigation, from 2023, Mr. Chu likewise obtained and received assurances from outside counsel (in that case, K&L Gates) that his personal communications would not be compromised. *Id.* That is, not only did Mr. Chu take active steps to prevent a waiver in September 2025 when his laptop was imaged by A&M, but those steps were consistent with what he and others at Tricolor had previously and successfully done to protect his personal communications from unnecessary disclosure. Finally, the government does not dispute that after the laptop was imaged, it was returned to Mr. Chu for his personal use, including after he left Tricolor. Chu Ltr. at 1. That too is clear evidence that the laptop was viewed as his personal property even though it was used for business purposes as well.

The government asserts the relevant inquiry is whether Mr. Chu received "a promise that the contents of [his] imaged laptop would never be provided to a third party." Gov't Ltr. at 3. Not so: the government cites no authority for that idea because there isn't any. The relevant inquiry

BSF

is "the reasonableness of the party's actions to protect privileged information," which "should be measured in light of the risks *foreseeable* to that party at the time the precautions were taken." *United States v. Rigas*, 281 F. Supp. 2d 733, 738–39 (S.D.N.Y. 2003) (emphasis in original); *see also United States v. Inniss*, 2019 WL 6999912, at *17 (E.D.N.Y. Dec. 20, 2019). Mr. Chu took affirmative steps to protect his personal communications based on the information available at the time, including the assurances from Sidley and A&M that they "underst[ood] your concern over personal items that are on your phone" and would "only be focused on company specific matters." ECF No. 82-3 at 4. Mr. Chu's laptop was imaged before the company's bankruptcy and before the government had issued a grand jury subpoena. The assurances Mr. Chu received gave him the reasonable belief that his personal communications would be protected. Those firms' representations about preserving data for senior company leaders in no way undermines Mr. Chu's reasonable steps to protect his privileged information. The government's twisted interpretations otherwise are completely without merit.

In sum, the rehashed arguments put forward in the government's Privilege Motion—the only arguments it relies on regarding the 20 Exemplars and the remaining 1,335 privileged communications—are meritless and the Privilege Motion should be denied in full.

* * *

Thank you for your consideration.

Respectfully,

/s/ *Matthew L. Schwartz*

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
cwenner@bsfllp.com
jkelly@bsfllp.com

WEIL, GOTSHAL & MANGES LLP

Adam Fee
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
E-mail: Adam.Fee@weil.com
*Attorneys for Daniel Chu*