UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

25-cr-579 (PKC)

-against-

ORDER ON CHU PRIVILEGE RELATING TO MATERIAL ON TRICOLOR SYSTEMS

DANIEL CHU,

Defendant.
-----------------------------------------------------------x

CASTEL, Senior District Judge

The government is in possession of electronic devices and iCloud accounts seized from defendant Daniel Chu, former Chief Executive Officer of Tricolor Holdings, Inc. ("Tricolor"), pursuant to search warrants. (ECF 41.) Chu contends these materials contain information that is protected by the attorney-client privilege or work product doctrine. (Id.) The government seeks an order from this Court authorizing its case team to have access to the materials because, in the government's view, Chu "had no reasonable expectation of privacy" in his use of Tricolor electronic devices, accounts or systems. (Id.) Alternatively, the government seeks a finding that any privilege or protection was waived as to the contents of a laptop Chu voluntarily turned over to Alvarez & Marsal ("A&M"), a firm conducting an investigation at the behest of lawyers for a Tricolor special committee in the days before the company's collapse. (Id.)

For reasons to be explained, the government's motion is granted.

The Seizure Pursuant to Warrants

In September and October 2025, the government obtained search warrants for the contents of two of Chu's iCloud accounts and electronic devices in Chu's possession. (Id. at 4.) The iCloud accounts and electronic devices include emails from Chu's Tricolor email accounts. (Id.)

Based upon Chu's initial claim of privilege, the government utilized an internal filter team to segregate potentially privileged materials. (Id. at 2.) This segregation was based upon Chu's identification of attorneys and law firms with whom he had privileged communications. (Id. at 4–5.) Chu indicated a willingness to pare the list down to law firms and attorneys with whom he had a personal relationship. (Id.)

Without ruling on the respective positions of the parties on the disputed claims of privilege, the Court ordered Chu to provide a privilege log for all documents for which he was asserting a privilege. (July 29, 2026, Minute Entry.) Chu states that he is asserting the privilege as to 1,355 documents. (ECF 157 at 1.) From the universe of documents for which it is seeking a ruling, the government has excluded communications between Chu and members of seven law firms, as well as 45 items on the privilege log. (ECF 150-1.)

Per the Court's direction, the government has selected 20 items from the privilege log for in camera review. Thereafter, Chu's counsel furnished the selected documents to the Court *in camera* with support for the assertion of privilege.[1] The Court has reviewed the documents submitted for *in camera* review, which has been helpful in understanding the manner of Chu's use of the Tricolor systems in communicating with lawyers. Several of the selected

---

[1] As to Exemplar 20, the defense has withdrawn its claim of privilege which had been based on the good faith but erroneous belief that the document was a draft contract which, in fact, was a copy of the digitally executed final. (ECF 139 at 11.)

documents relate to estate planning, gifts of property, and real estate related matters. Each of the selected documents has been reviewed by this Court. However, because of the Court's ruling on the validity of the privilege, it is unnecessary to individually rule on the documents.

Attorney-Client Privilege

Federal common law, "as interpreted by United States courts in the light of reason and experience," governs the application of a privilege in this federal prosecution. Fed. R. Evid. 501. "A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007). "[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." Id.

"[A]s with all privileges, the person claiming the attorney-client privilege has the burden of establishing all essential elements." In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973). Therefore, a failure to demonstrate that the communication was "in fact kept confidential" would negate the privilege. In re County of Erie, 473 F.3d at 418–19.

Tricolor's Policies and Their Implications

Before the widespread use of electronic devices, the Supreme Court addressed an employee's reasonable expectation of privacy in personal documents kept in the employer's space within the employer's office. In O'Connor v Ortega, 480 U.S. 709 (1987), the Court concluded that the head of a hospital's professional education department had a reasonable expectation of privacy in personal papers he kept in a desk and file cabinets used exclusively by

him. The Court, in part, relied on the absence of a company policy prohibiting the storage of personal property in desks or file cabinets, although it noted that "the absence of such a policy does not create an expectation of privacy where it would not otherwise exist." Id. at 719.

Courts in this District have endeavored to follow the principles in O'Connor v. Ortega to corporate computer systems through the application of the factors cited in In re Asia Global Crossing, LTD, 322 B.R. 247, 257–58 (Bankr. S.D.N.Y. 2005) (Bernstein, C.J.). See, e.g., In re Reserve Fund Securities & Derivative Litig., 275 F.R.D. 154, 159–60 (S.D.N.Y. 2011) (Gardephe, J.). The factors have been applied to claims of privilege in communications stored or transmitted on an employer's system, focusing in part on the employer's policy on personal use of company computer systems. See id. at 161; United States v. Inniss, 18-cr-134 (KAM), 2019 WL 6999912, at *14 (E.D.N.Y. Dec. 20, 2019).

The four factors for a court's consideration are:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

Asia Global, 322 B.R. at 257 (footnote omitted).

The pertinent provisions of the Tricolor Handbook reflecting its policies on employee use of its communication and computer systems are as follows:

> Tricolor Auto Group, LLC communication and computer systems are intended primarily for business purposes; however limited personal usage is permitted if it does not hinder performance of job duties or violate any other Company policy. This includes voice mail, e-mail and Internet systems. Users have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems.
>
> [Tricolor] may review Internet usage to ensure that such use with Company property, or communications sent via the Internet with Company

> property, are appropriate. The reasons for which the Company may review employees' use of the Internet with Company property include, but are not limited to: maintaining the system; preventing or investigating allegations of system abuse or misuse; assuring compliance with software copyright laws; complying with legal and regulatory requests for information; and ensuring that Company operations continue appropriately during an employee's absence.

(ECF 60-2 at 38.)

As to the first Asia Global inquiry, Tricolor does not have a policy banning personal use of its systems. To the contrary, it generally permits personal usage, albeit with the limited exception that it must not "hinder performance of job duties or violate any other Company policy." The Court concludes that Chu's use of the Tricolor computer systems to communicate with lawyers on personal matters was not a violation of the Tricolor policy.

As to the second Asia Global inquiry, there is no evidence in the record of Tricolor actually monitoring employees' use of its systems. Some courts have found that where a company warns employees of its right to monitor employee systems but does not do so, employees may assume system is secure in using the system for personal matters. See United States v. Inniss, 2019 WL 6999912 at *15 (citing Curto v. Medical World Communications, Inc., 03-cv-6327(DRH)(MLO), 2006 WL 1318387, at *8 (E.D.N.Y. May 15, 2006)). But these cases are factually dissimilar. Rather than a broad and generalized right to monitor, Tricolor's policy lists specific reasons why it may "obtain communications within the systems without notice to users," including "but are not limited to; maintaining the system; preventing or investigating allegations of system abuse or misuse; assuring compliance with software copyright laws; complying with legal and regulatory requests for information; and ensuring that Company operations continue appropriately during an employee's absence." (ECF 60-2 at 38.) Judge Gardephe has concluded that an employer reserving the right to inspect is sufficient to tilt the

second factor against the party claiming a reasonable expectation of privacy. In re Reserve Fund Securities & Derivative Litig., 275 F.R.D. 154 at 163. Here the policy was explicit and fulsome, and this Court similarly concludes that it tilts the factor against Chu.

The third factor focuses on whether third parties have a right to access the Tricolor systems. While there is no evidence of such right of access granted to a third party, Judge Gardephe instead focuses on warnings or notices in company policy. Id. at 164. If the policy states that materials could be turned over to regulators, the third factor may be fulfilled. Id. Here, Tricolor disclosed that it may access the system to comply with "legal and regulatory requests for information." (ECF 60-2 at 38.) Tricolor's access to Chu's communications was to comply with a grand jury request, for information i.e. a "legal and regulatory request". Chu was the CEO of a corporation that obtained large loans from heavily regulated financial institutions and offered asset-back securities to investors. He would have had a heightened awareness that his communications on Tricolor systems could wind up in the hands of a prosecutor or regulator.

The fourth factor focuses on the individual's knowledge of the company's monitoring or access policies. Chu executed an Executive Employment Agreement with Tricolor, dated as of April 16, 2025 (the "Employment Agreement"), governing his employment as CEO. (ECF 60-1.) The Employment Agreement explicitly provides that "[t]he Executive [i.e. Chu] will follow all applicable Company policies and codes of conduct." (Id. at 2.) Chu's counsel has submitted the employee handbook for Tricolor Auto LLC, (ECF 60-2), describing it as "the Tricolor Employee Handbook." (ECF 60 at 1.) The Handbook applies to at-will employees of Tricolor, (ECF 60-2 at 53), and Chu was an at-will employee per the terms of his Employment Agreement. (ECF 60-1 at 2.)

There is no basis to conclude that Chu would have agreed to the terms of the Employment Agreement without knowing and understanding his obligations, including compliance with company policies as reflected in the Handbook. Chu's counsel concedes on his behalf that he "was generally aware of the Handbook[;] he also knew it did not mandate that employees' emails be monitored." (ECF 59, Ltr. of June 5, 2026, at 13.) Indeed, in a January 8, 2026, letter to the trustee in bankruptcy of Tricolor, Chu's counsel relied on, annexed, and quoted the Tricolor Handbook as claimed support for his privilege claim. (ECF 41-4 at 2.) The Court concludes that the Handbook was applicable to Chu, and he knew or was willfully blind to its contents.

The fourth factor — whether the corporation notified the employee, or the employee aware, of the use and monitoring policies — weighs against the reasonable expectation privacy in communications on the Tricolor system. The Court has considered an instance cited by Chu of the 2023 internal review of credit card account expenses in which he secured an agreement limiting the scope of the investigators' search, lest his privileged communications be compromised. The incident cuts both ways. It shows a willingness on the part of Tricolor, of which he was CEO, to accommodate his reasonable privacy requests. But it also shows that Chu knew his personal emails on the Tricolor system could be the subject of an internal investigation and that investigators needed the prior authorization of the Tricolor Audit Committee before sharing their proposed search terms and custodians with him. (ECF 60-11.) He could request a limitation on the scope of search, which was granted by Tricolor in this instance, but he had no right to such a limitation.

Finally, the plain text of the Tricolor Handbook also undermines Chu's privilege assertion: "Users have no legitimate expectation of privacy in regard to their use of the Tricolor Auto Group, LLC systems." (ECF 60-2 at 38.)

Balancing the factors and considering Chu's arguments in their entirety, the Court concludes that Chu has not demonstrated that he had a reasonable expectation of privacy in the communications on the Tricolor system. Because he had no such reasonable expectation, he cannot demonstrate that his communications were intended to be kept confidential.

Waiver of Privilege Based Upon Surrender of Laptop

Separately, the government argues that Chu waived any privilege as to materials saved on a Tricolor laptop that, on September 4, 2025, he voluntarily turned over to the investigative and consulting firm A&M, hired by Sidley Austin LLP, lawyers for a Special Committee of Tricolor. Upon learning of A&M's request that he turn over his laptop to them, Chu asked a Managing Director of A&M whether it would "share additional insight on the process once the email data is on your servers with respect to scope, keyword, etc. to ensure the search includes relevant, not personal, information. . . ." (ECF 60-5, email of Sept. 4, 2025, at 4:39pm.) A&M responded, "Right now we are only interested in preserving the books and records[,] as well as other pertinent information. Before we take any action with reviewing/search the data and information, we can provide and come to agreement on a protocol as to search terms, process, etc. The task at hand now is preservation." (Id., email of Sept. 4, 2025, at 4:57pm.) A&M followed up with an email that read, "Agreed. We just want to have a defensible preservation effort and ensure data for senior leaders is readily available if needed. If

you could please direct Hector to assist with our request we would appreciate it." (Id., email of Sept. 4, 2025, at 9:50pm.) On or about September 4, Chu turned over the laptop to A&M.

On September 10, 2025, Tricolor filed for bankruptcy protection. (ECF 85-1 at 2.) Thereafter, on or about September 17, 2025, pursuant to a grand jury subpoena, the bankruptcy trustee turned over forensic images of ten company laptops, including the one Chu had turned over to A&M. (ECF 85 at 2.) Chu does not dispute that the laptop was a company device used by him for dual purposes — business and personal. (ECF 59, Ltr. of June 5, 2026, at 15.)

The email exchange quoted above shows that A&M agreed it would endeavor "to come to agreement" on a search protocol for its review of the data. There is no claim here that A&M reviewed the data on the laptop without agreeing to a protocol. But there was a second, equally important, aspect to A&M's request: ensuring "data for senior leaders is readily available if needed." This statement was broad enough to encompass needs arising from regulatory inquiries, including subpoenas. Chu cannot demonstrate that the risk of a subpoena from a governmental authority or a private litigant was unforeseeable, nor that turning over the laptop was inadvertent. See United States v. Rigas, 281 F. Supp.2d 733, 739. (S.D.N.Y. 2003) (Sand, J.). As noted, the laptop was a company laptop used by Chu for business and personal reasons. Therefore, it was also subject to the Tricolor Handbook. One of the several reasons that Tricolor may access information on its computer systems is to comply with "legal and regulatory requests for information." (ECF 60-2 at 38.) As events turned out, a grand jury subpoena intervened, and a forensic image of the contents of the laptop was produced by Tricolor's bankruptcy trustee pursuant to the subpoena.

Considering the entirety of the record, the Court concludes that Chu has failed to show that any attorney-client communications on the laptop were "in fact kept confidential." In re County of Erie, 473 F.3d at 419.

Attorney Work Product

Chu has also invoked work product protection for documents stored or transmitted on the Tricolor systems. The voluntary disclosure of protected work product may waive its protection. In re Steinhardt Partners, L.P., 9 F.3d 230, 235-36 (2d Cir. 1993). Whether the protection is waived is an evaluation to be made on a case-by-case basis. Id. The work product on Chu's laptop and the other devices surrendered to A&M was voluntarily disclosed. Furthermore, as stated above, the purpose of the turn-over was to ensure that "data for senior leaders is readily available if needed, which the Court concludes encompassed subpoena compliance. (ECF 60-5, email of Sept. 4, 2025, at 9:50pm.) Thus, as to work product materials stored on Chu's laptop or other devices surrendered to A&M on or about September 4, 2025, the work product protection is waived.

As to other materials documents on Tricolor systems as to which Chu seeks work product protection, the Court will accept further argument from Chu within 7 days of this Order, and the government may respond 7 days thereafter.

CONCLUSION

The government has represented to the Court that it has utilized a filter team to "screen out any communications with Chu's current and former defense attorneys in this case and any documents created in anticipation of this criminal case that would otherwise been

protected by the work product doctrine." (ECF 41 at 2 n.1.) The Court holds the government to that representation, and nothing herein permits the case team to access any such materials.

The government case team is otherwise authorized to have access to any emails or other materials withheld by Chu on the grounds of the attorney-client privilege on (1) Chu's two iCloud accounts seized pursuant to search warrants in September 2025, including emails from Chu's Tricolor email accounts, and (2) the multiple electronic devices seized from Chu in October 2025 pursuant to search warrants. The Court will accept further briefing (from defendant within 7 days of this Order and from the government 7 days thereafter) on any previously made claim of work product protection as to any of the foregoing materials. The government case team may also access the contents of the forensic image of Chu's Tricolor laptop turned over by the bankruptcy trustee pursuant to grand jury subpoena on or about September 17, 2025, again limited by the government representation noted above.

The Clerk shall terminate the motion at ECF 41.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
September 16, 2026