BSF | BOIES SCHILLER FLEXNER

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

October 4, 2026

**VIA ECF**

Honorable P. Kevin Castel
United States District Judge
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, New York 10007

**Re:** ***United States v. Chu*,**
**Case No. 25 Cr. 579 (PKC)**

Dear Judge Castel:

We represent Daniel Chu and write in advance of the evidentiary hearing on Mr. Chu's motion to suppress scheduled for October 7, 2026, ECF No. 171, and in response to the government's letter of late Friday afternoon, ECF No. 175. Though the government's letter seeks no relief, its purpose is clear: to attempt to limit the scope of the hearing on Mr. Chu's motion, and to preemptively defend its correspondingly narrow pre-hearing disclosures. The Court should reject these attempts. The purpose of this week's hearing is to create a complete factual record in connection with Mr. Chu's motion, which argues that the government's execution of two search warrants was unconstitutional and that the fruits of those warrants should be suppressed. To do so, the parties must necessarily present evidence about *how* the responsiveness review took place, and *why* it resulted in the prosecution team improperly identifying thousands upon thousands of wholly irrelevant, and in some cases privileged, documents as responsive.

To that end, the Court should reject the government's apparent decision to withhold the materials required to be produced under Federal Rule of Criminal Procedure 26.2. Despite Mr. Chu's efforts to meet and confer regarding the scope of the required production of witness materials, the parties have not reached agreement. Based on our review of the materials produced late Friday and the content of the government's letter to the Court, we anticipate that the government is not prepared meet its obligations under the Rules. As described further below, the defense respectfully requests that the Court order the government to disclose every statement of the hearing witnesses "that is in their possession and that relates to the subject matter of the witness's testimony," as required by Rule 26.2. We agree with the government that this would not include "the Government's investigation writ large," [ECF No. 175 at 2], but it does include witness statements that relate to *how* and *why* each of the four agents seemingly tasked with the review tagged each of the documents marked responsive in the responsive sets.

## I. Relevant Background

### A. Mr. Chu's Motion to Suppress

In September and October 2025, the government applied for judicial authorization of search warrants of Mr. Chu's premises, where electronic evidence was sought, and of certain iCloud accounts. Those warrant applications were each supported by an agent affidavit and contained a description of the items permitted to be seized under each warrant. ECF No. 110-7 ("Premises Warrant Affidavit"); ECF No. 110-6 ("iCloud Warrant Affidavit"). Both the Premises Warrant Affidavit and the iCloud Warrant Affidavit were signed by FBI Special Agent Timothy Kash. *See id.* Based on the representations made in those affidavits, the government obtained and executed search warrants.

Apple produced the records called for by the iCloud Warrant on or about October 10, 2025. The Premises Warrant was executed on October 7, 2025 at Mr. Chu's residence in Miami. Nonetheless, the government produced zero responsive documents until February 9, 2026. And more than three months later, by May 18, 2026, the government had still only produced a grand total of 566 responsive documents. *See* ECF No. 111 at 5–6. After Mr. Chu raised the pace of the review with the Court, the government significantly sped up. *See* ECF No. 50. In the three and a half months that followed, the government has produced 221,506 additional "responsive" documents. *See id.*

According to the government, the only people involved in completing the responsiveness review were four agents that are part of its case team: Special Agents Timothy Kash and Nicholas Kroll of the FBI, and Jeremy Rosenman and Christopher O'Rourke of the FDIC-OIG. Curiously, Special Agent Kash—the agent who swore to the accompanying affidavits that included the explanation and representations to the authorizing judge of how the warrants would be executed and limited the categories of information to be seized—is the only one of the four agents missing from the government's witness list. ECF 175 at 2.

On July 24, Mr. Chu moved to suppress all evidence derived from electronic devices seized from his home and iCloud accounts (the "Chu Images"). *See* ECF Nos. 108, 111. The government opposed the motion and in support, submitted a declaration from Special Agent Kroll describing the review process (the "Kroll Declaration"), as well as a declaration from one of the prosecutors. ECF Nos. 124, 125, 126. The Kroll Declaration identified, among other things, that various platforms including Cellebrite, Axiom, and Relativity were used to review data from the search warrant returns, and that agents used "a number of different techniques to review data," such as "manual review," "search terms," the targeting of "key individuals," and "sampling," along with other undisclosed "quality control efforts." *See* ECF No. 125.

On September 24, the Court held oral argument on Mr. Chu's motion and shortly thereafter ordered this week's evidentiary hearing, *see* ECF No. 171.

BSF

**B. The Government Fails to Produce Relevant Material in Advance of the Suppression Hearing**

On September 29, counsel for Mr. Chu requested a meet and confer with the government to discuss potential fact stipulations, witnesses, and pre-hearing disclosures. On September 30 and October 1, the parties met and conferred regarding the hearing.

During the September 30 meet and confer, the government identified for the first time the four agents involved in the responsiveness review. The government indicated that it was still considering which witnesses to call, and said that with respect to any law enforcement personnel it did not elect to call as witnesses, Mr. Chu would likely have to go through the so-called *Touhy* process to obtain prior agency approval to call government personnel as a witness. *See generally United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 28 C.F.R. Part 16 (DOJ *Touhy* regulations); 12 C.F.R. Part 309 (FDIC *Touhy* regulations); Justice Manual § 1-6.100, *et seq.* The government also stated that it would produce Rule 26.2 material for the four agents identified as having completed the responsiveness review. The government further requested that the defense inform the government as to which facts the defense would agree to stipulate. Counsel for Mr. Chu pointed out that earlier disclosure of Rule 26.2 material would facilitate that discussion.

During the meet and confer, in the context of discussing the scope of disclosure, counsel for the defense asked whether there was a written review protocol for the search and, if so, when it would be produced. The government confirmed that there was no such written protocol, and that an "organic review" was conducted by the four agents, in consultation with the prosecutors. The government indicated that some communications regarding the formulation and use of search terms would be included in the Rule 26.2 material. Counsel for Mr. Chu stated that the factual issues in dispute extend further than to the formulation of search terms, including for instance each agent's specific assignments and the filter team's participation in the review process, especially with respect to the materials provided to the case team for the responsiveness review.

During the parties' meet and confer the next day, the government indicated that it intended to call agents Kroll, Roseman, and O'Rourke as witnesses, but not agent Kash. The government provided no explanation for that selection.

On Friday, October 2, at 4:00 PM, the government sent an email with a link to its production of Rule 26.2 materials. The production consists of 74 documents, including emails between the AUSAs and the four agents, records of remote meetings, notes of recent meetings with certain of the four agents, and excerpts of the Premises Warrant Affidavit and iCloud Warrant Affidavit. Many of the documents were redacted. Further, the production did not include many documents that one would have expected to be non-controversial on such a motion: reports of the execution of the warrants, notes of meetings or calls regarding the responsiveness review, or reports of investigation relied upon by the agents in making responsiveness determinations.

Ten minutes after sending that email, the government filed its letter with the Court, preemptively defending its choices. ECF No. 175.

## II. Legal Standards

Under Federal Rule of Criminal Procedure 12(h), "Rule 26.2 applies at a suppression hearing . . . ." *See also* Fed. R. Crim. P. 26.2(g). Rule 26.2, in turn, requires the government to produce "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). Rule 26.2 was designed to "place in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the Jencks Act)." Fed. R. Crim. P. 26.2 advisory committee's note to 1979 adoption.

A document reflects a "statement of the witness" if it is a writing signed or otherwise adopted by the witness (*e.g.*, a report or email authored by the witness), reflects his prior testimony (*e.g.*, to the grand jury), or if it is a contemporaneous record of his oral statement (*e.g.*, notes of a conversation or meeting). Fed. R. Crim. P. 26.2(f).

And a statement "relates to the subject matter of the witness's testimony" if it "relate[s] generally to the events and activities testified to," *United States v. Snyder*, 740 F. App'x 727, 729 (2d Cir. 2018) (quoting *United States v. Cardillo*, 316 F.2d 606, 615 (2d Cir. 1963)), so long as it is not truly "incidental or collateral" to the government agent's testimony, *Cardillo*, 316 F.2d at 616; *see also id.* at 615 ("if [a] statement deals only with the witness's general background and personal history and does not deal with the events and activities testified to on direct examination, it is not producible under the Act."). Further, "a statement may 'relate,' within the meaning of [the Jencks Act], not only to the witness' factual narrative, but also to impeachment of his direct testimony by showing bias and interest." *United States v. Bin Laden*, 397 F. Supp. 2d 465, 493 (S.D.N.Y. 2005) (quoting *United States v. James,* 609 F.2d 36, 48–49 (2d Cir.1979)), *aff'd sub nom. In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93 (2d Cir. 2008). In *Bin Laden*, Judge Duffy examined competing interpretations of what it means to "relate to the subject matter of the witness's testimony," concluding that the Second Circuit's "interpretation of 'relate to' is broad." *Id.* at 493. In that connection, the Second Circuit has cautioned prosecutors (and courts) to err on the side of disclosure "rather than risk reversal of a conviction because it played its cards too close to the vest." *United States v. Pacelli*, 491 F.2d 1108, 1118 (2d Cir. 1974) (citations omitted). *See also* Fed. R. Crim. P. 26.2(e) (discussing consequences for failure to make disclosure).

Where the government disputes whether a statement, or part of a statement, is disclosable, the Rule provides that "the court *must* inspect the statement in camera," and "[a]fter excising any privileged or unrelated portions, the court *must* order delivery of the redacted statement to the moving party." Fed. R. Crim. P. 26.2(c) (emphasis supplied). Any document or portion thereof that is not produced over the defense's objection must be preserved by the Court under seal as part of the record on appeal. *Id.*

## III. The Court Should Hear From All Four Agents Involved in the Responsiveness Review and Order the Government to Produce All Statements Required

In principle, the parties agree that this week's hearing is "about how agents identified 'responsive' material when executing the Warrants." [ECF No. 175 at 2]. But the government's disclosures, and its letter to the Court, take an inappropriately restrictive view of that question.

BSF

The government seems to want to confine the hearing to mechanical questions, like who was involved in the review, what platforms and techniques were used, and the like.

These are important topics, to be sure. But they are in service of the ultimate point of the hearing: how and why did the government mark as responsive so many clearly non-responsive documents? The government's letter omits any anticipated testimony about how and *why*—based on what protocol, discussions, instructions, or other information—the agents determined any particular documents were responsive or not. *Id.* at 2–3. The descriptions of anticipated testimony likewise do not extend to any guidance they received, or collaboration with each other, with respect to determining whether particular materials were responsive to the Warrants' categories. And perhaps because SA Kash is missing from the witness list, the anticipated testimony also does not extend to the language of the Warrants themselves, which, as discussed at oral argument and as set forth below, appears to have been the *only* written guidance provided to the agents for their review and may have been drafted and/or revised by SA Kash and others before he signed off on the warrants.

The issues relevant to the upcoming hearing are not complicated, and we agree that they are not all-encompassing. On the one hand, certain facts are not in dispute, including that the government's review resulted in the designation of thousands and thousands of personal and/or otherwise non-responsive records as responsive to the Warrants. On the other hand, the record to date falls far short of explaining how and why the agents' review was so infected with error. As the Court recognized in ordering the hearing, the critical issue about which the defense must be permitted to inquire is, *how* did this happen? As to each of the documents erroneously marked as responsive, *why* did the agent who tagged it believed it was responsive and authorized to be seized by the warrant?[1] What guidance or information informed those determinations?

The government has stated that no written protocol was created to guide the agents conducting the responsiveness review. The Search Warrant Affidavits don't say much more. The iCloud Warrant Affidavit is completely silent and the Premises Warrant Affidavit says only that "Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant." ECF No. 110-7 at -216. For now, the record is bereft of any evidence establishing what information or basis of knowledge informed the agents' erroneous designations. Mr. Chu must be able to examine all four agents—including SA Kash—on those topics.

Similarly, and in accordance with Rule 26.2, the government's production should include the witnesses' prior statements concerning those same topics, including statements relevant to the information that informed their review process, the creation of the list of search terms used (which, apparently, the agents devised themselves), and their ultimate designation of certain documents as responsive at each stage of their review including the information that informed their responsiveness decisions. Given that the review took place over multiple months, the information on which the agents relied may have evolved or developed and any statements by the reviewing agents concerning those developments also falls within the rule's requirements. By the same token,

---

[1] The defense of course has no intention of going document-by-document through the materials erroneously marked as responsive. Given the volume of such material, that would far exceed the allotted time.

BSF

the Rule 26.2 materials should include any prior statements regarding the selection or use of certain platforms for completing the review, why particular platforms were used for particular data sets, and the agents' training and understanding of those platforms' functions and limitations. The Court should reject the government's attempt to shield the agents' testimony or production of prior statements on these topics.

* * *

Thank you for your consideration of these requests.

Respectfully,

/s/ *Matthew L. Schwartz*

BOIES SCHILLER FLEXNER LLP

Matthew L. Schwartz
Craig A. Wenner
Jacqueline C. Kelly
55 Hudson Yards
New York, New York 10001
Telephone: (212) 303-3646
E-mail: mlschwartz@bsfllp.com
cwenner@bsfllp.com
jkelly@bsfllp.com

WEIL, GOTSHAL & MANGES LLP

Adam Fee
1999 Avenue of the Stars, Suite 1800
Los Angeles, CA 90067
Telephone: (213) 667-5100
E-mail: Adam.Fee@weil.com

*Attorneys for Daniel Chu*